**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. _____

**GISELA CASTILLA RODRIGUEZ**

Plaintiff,

**v.**

**MIAMI-DADE COUNTY, FLORIDA; ST. LUCIE COUNTY SHERIFF'S OFFICE; CITY OF WEST MIAMI, FLORIDA; CITY OF MIAMI BEACH, FLORIDA;** and **CITY OF NORTH MIAMI BEACH, FLORIDA,**

Defendants.

_____/

**COMPLAINT FOR DECLARATORY RELIEF**
**(28 U.S.C. §§ 2201-2202)**

## I.   INTRODUCTION

### A.   Case Summary — One Statute, Sixty-Seven Interpretations

A Florida driver buys a new car in South Miami, and the car dealer installs a standard license plate frame. The frame, which is identical to millions of others installed on Florida vehicles, partially covers the letter "S" on the words "Sunshine State" on the license plate.

The driver heads north on I-95 to visit her mother in Escambia County. The driver never exceeds the speed limit, and she never runs a red light. In fact, she drives perfectly without committing any moving violation, and her car is in perfect working condition. At the same time, depending upon which county she is travelling, she goes from committing a crime to not committing a crime.

How can this be?

The answer is simple.  Fla. Stat. 320.061 is so vague that it necessarily creates arbitrary and contradictory enforcement in violation of the Due Process Clause when it comes to license plate displays.  The statute criminalizes attaching material that "interferes with" the "legibility, angular visibility, or detectability of any feature or detail" of a license plate, but the statute: (a) provides no definition for any of these terms; and (b) no threshold for how much coverage constitutes "interference."

Consequently, in Miami-Dade, Broward, Lake, and Escambia Counties our driver is violating Fla. Stat. 320.061.  To be sure, the Pensacola police have publicly declared that "nothing can be obscured on the tag," including "Sunshine State."  By contrast in Seminole, Volusia, Orange, St. Lucie, Duval, and Leon Counties, so long as the alphanumeric characters and registration decal remain visible there is no violation.

In short, where you drive determines whether your standard license plate frame violates the law.

Moreover, the real-world consequences are not hypothetical or isolated.

In December 2025, Davie police arrested and jailed Demarquize Dawson because a decorative frame partially covered the letter "S" in "Sunshine" on her license plate.  The department later acknowledged the arrest was "invalid" and publicly admitted the statute's "wording was vague, unclear and appeared to be open for misinterpretation." The department's admission demonstrates the validity of this lawsuit.

More generally, police have consistently used Fla. Stat. 320.061 to justify coordinated enforcement operations in which insignificant plate-frame coverage leads to broad investigative action.

The result is untenable.  Every day, police departments across Florida apply identical statutory text and reach opposite conclusions from county to county.  By acting this way, they expose citizens to arbitrary criminal liability.  When a criminal statute lacks measurable standards and permits individual officers to define its boundary like this, the statute is vague, arbitrary, and unconstitutional.

A declaration is necessary and appropriate to restore Constitutional order on our roads.

Under the circumstances, this civil rights action challenges the facial constitutionality of Section 320.061, Florida Statutes, as amended by House Bill 253 (effective October 1, 2025).  Plaintiff seeks:

(a)     a declaration that Section 320.061 is unconstitutionally vague on its face in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

(b)     an injunction prohibiting enforcement of the statute statewide; and

(c)     an order vacating, expunging, or otherwise invalidating all prior arrests, citations, and convictions entered under Section 320.061 on the ground that a facially unconstitutional statute is void *ab initio* and confers no authority for criminal prosecution.

## II.     <u>JURISDICTION AND VENUE</u>

1.     This Court has original jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. §§ 2201-2202 (declaratory relief).  This action arises under the Fourteenth Amendment to the United States Constitution and seeks a declaration of the rights and legal relations of the parties with respect to the constitutionality of Section 320.061, Florida Statutes.

3

2.	Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in Miami-Dade County, Florida, including the issuance of 422 criminal citations under Section 320.061, and the enforcement policies and customs challenged herein.

3.	An actual controversy exists between Plaintiff and Defendants within the meaning of 28 U.S.C. § 2201.  Plaintiff contends that Section 320.061 is unconstitutionally vague on its face; Defendants have enforced and continue to enforce the statute.  The controversy is definite, concrete, and touches the legal relations of parties having adverse legal interests.

## III.	PARTIES

### A.	Plaintiff

4.	Plaintiff Gisela Castilla Rodriguez, a resident of Miami-Dade County, Florida, and a citizen of the United States, presents a textbook example of the problem.  She currently has a frame on her license plate and regularly drives through multiple counties.  She is in actual fear as to whether or not her frame violates Section 320.061.

### B.	Defendants

5.	Defendant MIAMI-DADE COUNTY, FLORIDA ("the County") is a political subdivision of the State of Florida.  The County is responsible for the policies, customs, and practices of its law enforcement agencies, including the Miami-Dade Police Department and the Miami-Dade County Sheriff's Office.  The County has a direct and substantial interest in the constitutionality of Section 320.061 because its agencies have issued 422 criminal citations under the statute in less than four months, including 195 citations issued after the Florida Department of Highway Safety and Motor Vehicles issued clarifying guidance on December 12, 2025.

6.     Defendant ST. LUCIE COUNTY SHERIFF'S OFFICE is a law enforcement agency of St. Lucie County, Florida.  On December 15, 2025, the St. Lucie County Sheriff's Office posted that "[l]icense plate frames that cover or partially block any letters, numbers, or the registration decal" are prohibited.  Its infographic showed covering "SUNSHINE STATE" as a violation—directly contradicting Seminole County's interpretation of the same FLHSMV guidance issued the same day.

7.     Defendant **CITY OF WEST MIAMI, FLORIDA** is a municipal corporation organized under the laws of the State of Florida.  The City of West Miami, through its police department (the "West Miami Police Department"), from October 2025 through January 2026, issued multiple citations for frames covering "Sunshine State" or "Florida," including citations described as "LICENSE PLATE HOLDER OBSCURING TAG" and "FRAME OBSCURING ISSUING STATE."

8.     Defendant CITY OF MIAMI BEACH, FLORIDA is a municipal corporation organized under the laws of the State of Florida.  The City of Miami Beach, through its police department (the "Miami Beach Police Department"), from October 2025 through January 2026, issued multiple citations for frames covering "Sunshine State" or "Florida," including citations described as "LICENSE PLATE HOLDER OBSCURING TAG" and "FRAME OBSCURING ISSUING STATE."

9.     Defendant CITY OF NORTH MIAMI BEACH, FLORIDA is a municipal corporation organized under the laws of the State of Florida.  The City of North Miami Beach, through its police department (the "North Miami Beach Police Department"), from October 2025 through January 2026, issued citations specifically for "Tag Frame Obscures Sunshine State Verbage"—the exact conduct that Seminole County explicitly declared legal.

5

10.     Each Defendant named herein has a direct, substantial, and adverse interest in the constitutionality of Section 320.061 by virtue of having enforced, interpreted, or applied the statute in ways that are irreconcilable with one another, thereby demonstrating the statute's facial vagueness and the existence of an actual controversy suitable for declaratory resolution.

## STATEMENT OF FACTS

**A.      The Statutory Framework**

11.     Section 320.061, Florida Statutes, as amended by House Bill 253 (effective October 1, 2025), provides in relevant part:

> a person may not apply or attach a substance, reflective matter, illuminated device, spray, coating, covering, or other material onto or around any license plate which interferes with the legibility, angular visibility, or detectability of any feature or detail on the license plate or interferes with the ability to record any feature or detail on the license plate.

12.     A violation of Section 320.061 is a second-degree misdemeanor punishable by up to 60 days in jail and a $500 fine.  Fla. Stat. § 775.083.

13.     The statute does not define "interferes with."  It does not define "legibility."  It does not define "angular visibility."  It does not define "detectability."  It does not define "feature or detail."  It does not specify which features or details are protected.  It establishes no objective standard by which a citizen or officer can determine whether a particular license plate frame violates the law.  It sets no threshold for what degree of "interference" triggers criminal liability.

**B.  Legislative Intent: Targeting Tag-Flipping Devices, Not Decorative Frames**

14.     Representative Doug Bankson, the bill's sponsor, filed an official statement with the Florida House stating: "this bill intends to define and impose penalties on the possession and use of license plate obscuring devices whether in the commitment of a crime or avoiding a traffic ticket.  There is currently not a law in Florida that defines and bans such devices."

6

15. The bill's Final Bill Analysis defined a "license plate obscuring device" as "a manual, electronic, or mechanical device designed or adapted to be installed on a motor vehicle for the purpose of: Switching between two or more license plates . . . Hiding a license plate from view by flipping the license plate so that the license plate number is not visible . . . ."

16. HB 253 passed the Florida House 115-0 and the Florida Senate 36-0, reflecting the legislature's understanding that it was voting for a narrow anti-fraud measure targeting criminal tag-flipping devices—not a broad criminalization of decorative frames used by millions of Floridians.

17. Following the enforcement chaos described below, Representative Bankson issued public statements attempting to correct law enforcement's interpretation:

> [N]o one is in danger for sporting their favorite frame, as long as their license number and sticker are uncovered. HB 253 did not change any existing rules related to standard license plate frames . . . . Yes, this is still the Free State of Florida!

## C. The Enforcement Chaos: Irreconcilable Interpretations

18. In the weeks following Section 320.061's October 1, 2025 effective date, Florida law enforcement agencies issued directly contradictory guidance about what conduct the statute prohibits. These are not subtle interpretive variations. They represent irreconcilable positions regarding identical conduct.

### i. Agencies Declaring Standard Frames LEGAL

19. Some Agencies declare that covering portions of a license plate is legal.

20. The Seminole County Sheriff's Office (December 15, 2025) published an official infographic stating that frames covering "SUNSHINE STATE" are "permissible," explaining: "The Florida Department of Highway Safety and Motor Vehicles does not consider the wording along the bottom of the plate to be a primary feature, and a frame can cover it."

21. The Volusia County Sheriff's Office (December 11, 2025) issued a legal bulletin to all deputies concluding: "[I]f the license plate including the alphanumeric designation and the registration decal are plainly visible and legible from 100 feet, there is no violation . . . . Therefore, if the license plate rim or plate does not obscure the license plate's alphanumerical designation or the registration decal, there is not a violation of Fla. Stat. 320.061, and a motorist should not be stopped based on this statute."

22. The Apopka Police Department issued public guidance consistent with the Seminole interpretation, declaring standard decorative frames lawful.

23. Ocoee Police Department issued public guidance consistent with the Seminole interpretation, declaring standard decorative frames lawful.

24. Casselberry Police Department issued public guidance consistent with the Seminole interpretation, declaring standard decorative frames lawful.

### ii. Agencies Declaring the SAME Conduct CRIMINAL

25. Others make the same conduct illegal.

26. The St. Lucie County Sheriff's Office (December 15, 2025) posted that "[l]icense plate frames that cover or partially block any letters, numbers, or the registration decal" are prohibited, showing frames covering "SUNSHINE STATE" as a violation—directly contradicting Seminole County's interpretation of the same Florida Department of Highway Safety and Motor Vehicles ("FLHSMV") guidance issued the same day.

27. The State Attorney's Office of the 12th Judicial Circuit (December 9, 2025) posted an image of a standard Volkswagen dealership frame, circled in red, as an example of conduct that "makes it illegal." This is the identical type of standard dealer frame that Seminole County, Volusia County, Apopka, Ocoee, and Casselberry declared lawful.

28.     The Miami Beach Police Department (October 2025–January 2026) issued multiple citations for frames covering "Sunshine State" or "Florida," including citations described as "LICENSE PLATE HOLDER OBSCURING TAG" and "FRAME OBSCURING ISSUING STATE."

29.     The North Miami Beach Police Department (October 2025–January 2026) issued citations specifically for "Tag Frame Obscures Sunshine State Verbage"—the exact conduct that Seminole County explicitly declared legal.

**D.     The Miami-Dade Enforcement Campaign: 422 Criminal Citations**

30.     Miami-Dade takes a particularly aggressive approach to the problem.

31.     Through a public records request, Plaintiff obtained data on all citations issued under Section 320.061 in Miami-Dade County from October 1, 2025 through January 24, 2026. The data reveals: (a) 422 criminal citations for alleged violations of Section 320.061; (b) 195 citations issued after the December 12, 2025 FLHSMV guidance; (c) multiple citations for dealer frames, including "PINK AUTONATION TAG FRAME COVERING FLORIDA" and "LARGO HONDA FRAME COVERING STATE READING"; and (d) multiple citations for covering "Sunshine State," including "Tag Frame Obscures Sunshine State Verbage" and "Plate Cover Obscuring Sunshine State."

32.     These citations were issued for the exact same conduct that Seminole County, Volusia County, Apopka, Ocoee, and Casselberry explicitly declared lawful. A motorist with an AutoNation dealer frame is a law-abiding citizen in Orlando but a criminal in Miami.

33.     The volume and persistence of these citations—422 in less than four months in a single county, with 195 issued after the state's own regulatory agency issued clarifying guidance—

demonstrates not isolated incidents of overzealous enforcement but a widespread, systematic policy or custom of enforcing Section 320.061 against standard decorative license plate frames.

### E.        The FLHSMV Guidance

34.        On December 12, 2025, the Florida Department of Highway Safety and Motor Vehicles ("FLHSMV") issued emergency guidance to all Florida law enforcement agencies: "this act does not prohibit the use of a license plate frame as long as the frame does not obscure visibility of the following: The alpha numeric plate identifier; The decal located in the top right hand corner of the license plate."

35.        At least 195 citations were issued in Miami-Dade County after this guidance, including citations for the exact type of frame depicted in the FLHSMV's own example of compliant conduct.  That four separate government entities—the DHSMV, the Florida Police Chiefs Association, the Seminole County Sheriff's Office, and the Miami-Dade County Tax Collector—each felt compelled to issue independent clarification documents proves that the statutory text does not provide the notice the Due Process Clause requires.

### F.        The Dawson Arrest and the Davie Police Admission

36.        Demarquize Dawson's arrest demonstrates how arbitrary the situation has become.

37.        On December 17, 2025, Davie Police Department arrested Demarquize Dawson because the decorative frame on his rental car partially covered the letter "S" in "Sunshine State." Mr. Dawson was jailed.  He subsequently suffered a panic attack and was hospitalized.  This arrest occurred two days after the DHSMV issued its statewide clarification memo.

38.        Following public outcry, the Davie Police Department issued a formal public statement containing this extraordinary admission: "the law was vague, unclear and appeared to be open for misinterpretation."

**G.       The Cuellar Incident: Pretextual Enforcement**

39.       The arbitrary enforcement has also allowed pretextual enforcement.

40.       On December 9, 2025, José Cuellar's seventeen-year-old U.S. citizen son was driving through Davie when a Florida Highway Patrol trooper stopped him, citing difficulty seeing the "Sunshine" letters on the truck's license plate. Before the driver could produce identification, five plainclothes ICE agents emerged and questioned occupants about their legal status. José Cuellar, a Salvadoran immigrant with 30 years in the United States and no criminal record, was detained and transported to a detention center in Colorado.

41.       The Cuellar case illustrates the statute's potential for arbitrary enforcement at its most extreme: a vague criminal statute providing officers with a standardless predicate for stops and detentions far beyond the misdemeanor penalty the statute prescribes.

**H.       Plaintiff Threat of Criminal Prosecution**

42.       By simply driving, Plaintiff faces pending criminal charges under a facially unconstitutional statute, mandatory court appearances, the threat of incarceration for up to 60 days, the threat of a permanent criminal record, and reputational harm arising from the false imputation that he committed a crime.

43.       The threat of prosecution facing Plaintiff is not speculative. It is concrete, imminent, and ongoing. The statute by its terms applies to their current, daily conduct. The state has demonstrated a persistent pattern of aggressive enforcement against identical conduct. The 422 citations in Miami-Dade County constitute an active, systematic enforcement campaign. No intervening discretionary act separates Plaintiff from prosecution—any officer who observes her license plate frames can, and under current enforcement patterns demonstrably does, issue a criminal citation at any time.

11

44.     Plaintiff's standing to seek declaratory relief is established under *Steffel v. Thompson*, 415 U.S. 452 (1974), which holds that a person facing a credible threat of prosecution under an allegedly unconstitutional statute has standing to seek federal declaratory relief without first exposing himself to actual prosecution.

## CLAIM FOR RELIEF

### COUNT I
### FEDERAL DECLARATORY JUDGMENT ACT 28 U.S.C. §§ 2201-2202
**(Against All Defendants)**

45.     Plaintiff realleges and incorporates by reference paragraphs 1 through 44 as though fully set forth herein.

46.     The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

47.     An actual, justiciable controversy exists between Plaintiff and Defendants concerning the constitutionality and lawful scope of Section 320.061, Florida Statutes, as amended by HB 253 (effective October 1, 2025).

48.     Plaintiff faces potential criminal prosecution under Section 320.061 in Miami-Dade County Court. Her interest in a judicial declaration of the statute's unconstitutionality is immediate, concrete, and adverse to Defendants' continued enforcement of the statute.

49.     The genuine threat of enforcement is not speculative.  It is established by: (a) the 422 criminal citations issued under Section 320.061 in Miami-Dade County alone in less than four months; (b) the arrest and jailing of Demarquize Dawson for conduct identical to Plaintiff's; (c) the continued issuance of 195 citations even after FLHSMV issued clarifying guidance on

12

December 12, 2025; and (d) the irreconcilable enforcement interpretations across Florida's sixty-seven counties, which render it impossible for any motorist to know whether his or her conduct is lawful at any given location.

50.     The Due Process Clause of the Fourteenth Amendment prohibits the enforcement of criminal statutes that are unconstitutionally vague.  A criminal statute is void for vagueness if it: (1) fails to give persons of ordinary intelligence fair notice of what conduct is prohibited; or (2) encourages arbitrary and discriminatory enforcement by failing to establish adequate standards to govern law enforcement.

51.     Section 320.061 fails both prongs.  The statute neither defines its operative terms: "interferes with," "legibility," "angular visibility," "detectability," and "feature or detail"; nor provides an objective threshold for when partial coverage becomes a criminal violation.  The statute combines indeterminacy about how to measure "interference" with indeterminacy about how much interference triggers criminal liability, presenting the dual indeterminacy condemned by courts.

52.     The statewide enforcement split described above—in which trained law enforcement agencies across Florida read identical statutory text and reached irreconcilable conclusions about what it prohibits—confirms that the statute fails to provide constitutionally adequate notice and delegates enforcement authority with literally zero meaningful standards.

53.     The Federal Declaratory Judgment Act "was designed to be available to test state criminal statutes in circumstances where an injunction would not be appropriate."  *Perez v. Ledesma*, 401 U.S. 82, 111-15 (1971) (Brennan, J., concurring in part and dissenting in part).  Congress enacted the statute with the express purpose of providing "a milder alternative to the

13

injunction remedy" and specifically anticipated that "the declaratory judgment procedure would be used by the federal courts to test the constitutionality of state criminal statutes." *Id.*

54. The controversy between Plaintiff and Defendants is ripe for adjudication. The statute is in effect. Enforcement is ongoing and aggressive. The constitutional deficiencies are apparent on the face of the statute and confirmed by the documented enforcement chaos across the State of Florida. No further factual development is necessary for this Court to resolve the purely legal question of whether Section 320.061 provides constitutionally adequate notice and standards.

55. No pending state proceeding bars this Court from exercising jurisdiction over the Plaintiff's claims.

56. Plaintiff is entitled to a declaration pursuant to 28 U.S.C. §§ 2201-2202 that Section 320.061, Florida Statutes, as amended by HB 253, is unconstitutionally vague on its face and void under the Due Process Clause of the Fourteenth Amendment, and that all arrests, citations, and convictions entered under the statute since its effective date of October 1, 2025, are void *ab initio* and without legal effect.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in their favor and against Defendants, and grant the following relief:

1. **Declaratory Relief.** A declaration, pursuant to 28 U.S.C. §§ 2201-2202, that Section 320.061, Florida Statutes, as amended by HB 253 (effective October 1, 2025), is facially unconstitutional and void under the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

2. **Injunctive Relief.** A preliminary injunction, and upon final adjudication a permanent injunction, prohibiting Defendants and their officers, agents, employees, successors,

and all persons acting in concert with them from enforcing Section 320.061, Florida Statutes, against any person in the State of Florida;

3.  **Vacatur and Expungement.**  An order declaring that all arrests, citations, criminal charges, and convictions entered under Section 320.061, Florida Statutes, since its effective date of October 1, 2025, are void *ab initio* and without legal effect; directing that all such arrests, citations, charges, and convictions be vacated and expunged from all criminal records; and ordering Defendants to take all steps necessary to effectuate the vacatur and expungement of such records, including notification to all affected individuals and to any state or federal databases in which such records appear;

4.  **Costs.**  Costs of suit as permitted by law;

5.  **Further Relief.**  Such other and further relief as this Court deems just and proper.

Dated: February 27, 2026

Respectfully submitted,

| | |
|---|---|
| /s/ Charles E. Whorton | /s/ Stephen Binhak |
| Charles E. Whorton | Stephen Binhak |
| Anna D. Quesada | The Law Office of Stephen James Binhak, |
| Ticket Toro Law Firm | P.L.L.C. |
| 5757 Waterford District Drive | One Southeast Third Ave., Suite 2600 |
| Suite 110 | Miami, Florida 33131 |
| Miami, FL 33126 | (305) 361-5500 |
| Charlie@TicketToro.ai | (305) 428-9532 fax |
| Anna@TicketToro.ai | binhaks@binhaklaw.com |

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 27, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.


/s/ Charles E. Whorton