IN THE COUNTY COURT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA
CRIMINAL DIVISION

Citation No:  AL5OJ0E

STATE OF FLORIDA,
Plaintiff,

v.

YOFREN PEREZ GUERRA,
Defendant.

_____/

## DEFENDANT'S MOTION FOR RECONSIDERATION OF COURT'S DENIAL TO CERTIFY QUESTION OF GREAT PUBLIC IMPORTANCE

### A.  Summary of this Motion

This Court has the power to certify this question. It should.  In this County, between March 1 and March 15, an additional 39 people have been cited under section 320.061, Florida Statutes.

The State dismissed this case by *nolle prosequi* the moment a constitutional challenge to section 320.061, Florida Statutes, was set for adjudication. That tactical maneuver does not strip this Court of authority, it proves why certification is necessary. If the State can terminate prosecution every time a defendant raises a constitutional challenge, the constitutionality of this statute will *never* be reviewed. That is the textbook definition of "capable of repetition yet evading review."

The Third District Court of Appeal, the very court that would receive this certified question, already endorsed this principle last year in *Romero v. Green*, 394 So. 3d 207 (Fla. 3d DCA 2024), holding that mootness does not bar review where the challenged conduct

**Defendant's Motion For Reconsideration**                                                    **1**

can recur and evade adjudication.  The Florida Supreme Court said the same in *Cook v. City of Jacksonville*, 823 So. 2d 86 (Fla. 2002). Both cases were raised at oral argument.

Three points warrant immediate attention:

**First**, mootness is prudential — not jurisdictional. It does not and cannot prevent this Court from certifying a question of great public importance. The entry of a *nolle prosequi* followed by dismissal is a final disposition, and section 34.017, Florida Statutes, expressly authorizes certification in a final judgment.

**Second**, the structural problem is self-evident. Section 320.061 is a statewide criminal statute subject to active, inconsistent enforcement across Florida's 67 counties. Identical conduct is treated as criminal in one jurisdiction and ignored in another. Only appellate guidance can resolve this.

**Third**, pending legislation is legally irrelevant. Courts evaluate statutes as they exist at the time of adjudication. As of this filing, no amendment has been enacted. The statute is in force, it is being enforced, and the constitutional question remains open.

This Court is respectfully asked to reconsider its March 17, 2026 ruling and certify the question presented.

### B.  <u>Authority for Relief Requested</u>

Trial courts possess inherent authority to revisit and correct their rulings, in the interest of justice. This motion is brought pursuant to that inherent authority, in accordance with the standards governing certification under Florida Rule of Appellate Procedure 9.160 and section 34.017, Florida Statutes.

---

**C.  Limited Basis for Reconsideration**

This motion is not intended to relitigate the merits of Defendant's constitutional challenge.  Rather, reconsideration is respectfully requested on the limited ground that the Court may have overlooked or misapprehended controlling Florida law regarding mootness and the Court's authority to certify a question following the entry of a *nolle prosequi*.

**D.  Mootness Does Not Preclude Certification**

Florida law is clear that mootness is a prudential doctrine, not a jurisdictional bar. As such, it does not prevent courts from addressing issues that are capable of repetition yet evading review or involve questions of great public importance. Florida courts recognize that they may, and should, reach otherwise-moot questions, where the issue meets one of those exceptions. Here, both are met. *See Cook v. City of Jacksonville*, 823 So. 2d 86 (Fla. 2002); see also *Romero v. Green*, 394 So. 3d 207 (Fla. 3d DCA 2024). Both cases that were brought up in oral argument.

In *Cook v. City of Jacksonville*, 823 So. 2d 86 (Fla. 2002), the Florida Supreme Court expressly recognized that courts may decide issues that would otherwise be moot where the issues presented are of great public importance or are capable of repetition yet evading review. The Court explained that dismissal for mootness is not appropriate where doing so would leave unresolved legal questions that are likely to recur but, by their nature, may consistently avoid appellate review.

Similarly, in *Romero v. Green*, 394 So. 3d 207 (Fla. 3d DCA 2024), the Third District applied that principle in circumstances closely analogous to those presented here. In *Romero*, the petitioners challenged the constitutionality of a statutory scheme affecting their confinement. By the time the case was heard, the petitioners had been released,

rendering the case technically moot as to those individuals. Nevertheless, the Third District held that the case was not moot because the issue was capable of repetition yet evading review, noting that similarly situated individuals could be released before the constitutional issue was adjudicated.

The same structural concern is present here. In this case, no additional evidence was presented to the State between the time of arraignment and the scheduled trial date. Nevertheless, the State declined to dismiss the charge at the arraignment stage and instead indicated that additional information would be required before doing so. The State subsequently entered a nolle prosequi on the trial date based on "insufficient evidence," without any intervening change in the evidentiary posture of the case. In fact, the only intervening development was the filing of Defendant's motion to dismiss and request for certification. This sequence illustrates how the legal issue presented may repeatedly evade review notwithstanding its continued enforcement.

As reflected on the record and in the proposed order, the State may terminate a prosecution by nolle prosequi at the moment a constitutional challenge is set for adjudication, thereby preventing appellate review of the legal issue.

As reflected in the record and the proposed order, the State may terminate a prosecution by nolle prosequi at the moment a constitutional challenge is set for adjudication, thereby preventing appellate review of the legal issue. Just as in *Romero*, where release of inmates could repeatedly prevent adjudication of the constitutional claim, here the use of nolle prosequi can repeatedly prevent review of the constitutionality of section 320.061.

---

**Defendant's Motion For Reconsideration** 4

Accordingly, this case presents the type of recurring legal issue that Florida courts have recognized should not be dismissed as moot, but instead addressed or certified to permit appellate guidance. Absent certification, the constitutional issue presented here is likely to repeatedly evade review in the same manner.

The issue presented is not limited to this Defendant or this case. Section 320.061 is a statewide criminal statute that applies uniformly to motorists across Florida and is currently subject to active and inconsistent enforcement across jurisdictions. As reflected in the record and the proposed order, identical conduct is being treated differently by law enforcement agencies and prosecutors in different counties, creating uncertainty for motorists and inconsistent application of criminal liability. This is precisely the type of circumstance in which certification is appropriate to promote the uniform administration of justice and provide statewide guidance.

Section 34.017, Florida Statutes, expressly authorizes certification in a final judgment, and the entry of a nolle prosequi followed by dismissal constitutes a final disposition of the case.

Accordingly, notwithstanding the State's entry of nolle prosequi, this Court retains the inherent authority to clarify or reconsider its prior rulings and to certify this question as one of great public importance, as the underlying legal issue remains unresolved and of significant statewide impact.

### E.  Pending Legislation Does Not Affect Justiciability

At the hearing, the Court expressly referenced the existence of proposed legislation as a basis for declining to certify the question, noting that a pending House Bill could address or clarify the statutory language at issue.

---

Defendant respectfully submits that reliance on prospective legislative action does not alter the justiciability of the constitutional question presented. Courts evaluate statutes based on the law as it exists at the time of adjudication, and the possibility of future legislative amendment does not eliminate the need for judicial review of a statute that is currently in force and actively enforced.

Moreover, as of the date of this motion, the referenced proposed legislation has not been enacted. The statute therefore remains operative, and the constitutional question on whether the law, as enacted, complies with the Constitution, remains unresolved.

Under these circumstances, the existence of proposed—but unenacted—legislation does not provide a legal basis to decline certification of an otherwise appropriate question of great public importance.

### F.  Incorporation of Proposed Order

Defendant attaches as Exhibit "A" the Proposed Final Judgment and Order previously submitted to the Court and respectfully incorporates and relies upon the arguments, authorities, and analysis set forth therein in support of this motion.

### G.  Reconsideration Is Warranted

Because Florida law permits courts to address issues that are capable of repetition yet evading review and expressly authorizes certification in a final judgment, reconsideration is warranted.

The procedural posture presented here—where a constitutional issue is raised and the case is terminated prior to adjudication—illustrates the precise circumstance in which such issues may evade review absent certification.

WHEREFORE, Defendant respectfully requests that this Court reconsider its ruling and determine whether certification of the question presented is appropriate pursuant to section 34.017, Florida Statutes, and Florida Rule of Appellate Procedure 9.160.

Submitted: March 23, 2026

Respectfully submitted,

*/s/ Anna Quesada*

Anna Quesada, Esq.
5757 Waterford District Drive
Suite 110
Miami, FL 33126
Anna@TicketToro.ai

## Certificate of Service

Counsel for the State Attorneys' Office has been emailed a copy of this Motion.

*/s/ Anna Quesada*

---

# Exhibit A

**IN THE COUNTY COURT IN AND FOR**
**MIAMI-DADE COUNTY, FLORIDA**
**CRIMINAL DIVISION**

CASE NO: AL50J0E

STATE OF FLORIDA,

        Plaintiff,

v.

YOFREN PEREZ GUERRA,

        Defendant.

_____/

**[PROPOSED] FINAL JUDGMENT AND ORDER OF DISMISSAL, CONSTITUTIONAL**
**DETERMINATION AND CERTIFICATION OF**
**QUESTION OF GREAT PUBLIC IMPORTANCE**

THIS CAUSE came before the Court on Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Request for Certification of Question of Great Public Importance, filed February 20, 2026, and heard on February 25, 2026. The motion was fully briefed, and the case was set for trial. The Court reviewed the motion, its supporting materials and exhibits, and the court file. At the hearing, the State announced and entered a nolle prosequi as to the sole pending charge under section 320.061, Florida Statutes. The Court, being otherwise fully advised, enters this final order of dismissal, constitutional determination and, pursuant to section 34.017, Florida Statutes, and Florida Rule of Appellate Procedure 9.160, certifies the question stated below.

**I.      FINAL DISPOSITION**

1.      The State's nolle prosequi is accepted and noted. The pending charge alleging a violation of section 320.061, Florida Statutes, is **DISMISSED.**

2.      Ordinarily, the entry of a nolle prosequi terminates the prosecution and renders pending motions moot. However, the Court finds that the constitutional issue raised in Defendant's

motion presents a purely legal question, was fully briefed and argued, and concerns the facial validity of a statewide criminal statute currently subject to active and ongoing enforcement. For purposes of this Final Judgment, the Court **GRANTS** and resolves the constitutional challenge raised in Defendant's motion.

3.	This document constitutes the Final Judgment in this case. The Clerk is directed to close the case file.

## II.	AUTHORITY TO CERTIFY AND JUSTICIABILITY FOLLOWING NOLLE PROSEQUI

### A.	Certification authority and statutory/rule requirements

4.	Section 34.017, Florida Statutes, authorizes a county court to certify a question to the district court of appeal in a final judgment that is otherwise appealable to the circuit court if the question may have statewide application and is of great public importance or will affect the uniform administration of justice. The statute requires that the final judgment include findings of fact and conclusions of law and that it state concisely the question to be certified. The decision to certify is within the county court's discretion, and the district court has absolute discretion whether to answer the certified question. *See* § 34.017, Fla. Stat.; Fla. R. App. P. 9.030(b)(4), 9.160.

### B.	Mootness and the "capable of repetition yet evading review" / great public-importance exception

5.	The Court recognizes that a nolle prosequi ordinarily terminates the criminal prosecution. However, Florida courts recognize narrow justiciability exceptions for issues that are capable of repetition yet evading review, or issues of great public importance affecting the uniform administration of justice. As such, justiciability warrants resolution notwithstanding the dismissal of an individual prosecution.

6.      The constitutional question presented here challenges the facial validity of section 320.061, Florida Statutes, as amended effective October 1, 2025. The issue is purely one of law and does not depend on disputed facts specific to this Defendant. The record reflects ongoing statewide enforcement and conflicting interpretations of the statutory language.

7.      Under these circumstances, the Court exercises its discretion to address the constitutional question in the interest of judicial economy and uniform administration of justice.

8.      Under this doctrine, the exception applies where (1) the challenged action is too short-lived to be fully litigated before it ends, and (2) there is a reasonable chance the same party will face the same action again; the "same party" requirement is not to be read unduly narrowly. *Rhody v. McNeil*, 344 So. 3d 530 (Fla. 1st DCA 2022).

9.      Florida appellate courts also recognize that they may address otherwise-moot matters where issues are sufficiently important and likely to recur and where dismissal would prevent guidance needed for the uniform administration of justice. *See Romero v. Green*, 394 So. 3d 207 (Fla. 3d DCA 2024); *Fla. Jur. 2d, Appellate Review* § 290.

   **C.      Application: this case presents an issue capable of repetition yet evading review and is an issue of great public importance affecting the uniform administration of justice**

10.     Section 320.061 criminalizes the application or attachment of materials that "interfere with the legibility, angular visibility, or detectability of any feature or detail" of a license plate. The statute does not define "interfere," "feature," "detail," "angular visibility," or "detectability," nor does it establish measurable thresholds for criminal liability.

11.     The Due Process Clause of Article I, Section 9 of the Florida Constitution and the Fourteenth Amendment to the United States Constitution require that criminal statutes provide

3

persons of ordinary intelligence fair notice of prohibited conduct and establish minimal guidelines to prevent arbitrary enforcement.

12.     Having reviewed the statutory text, the arguments of counsel, and the authorities cited, the Court finds that the certified question satisfies the "capable of repetition yet evading review" / great public-importance exception and warrants certification for the following reasons:

13.     *Evasion of review.* The issue presented is purely legal and arises in prosecutions under a statewide criminal statute that is being actively enforced. Yet, as this case demonstrates, the State may terminate an individual prosecution by nolle prosequi at the moment a constitutional challenge is set for adjudication, preventing development of appellate guidance. The Court finds that this procedural posture creates a substantial risk the issue will evade review unless certified.

14.     *Reasonable expectation of recurrence.* The record reflects that the challenged statutory language regulates commonplace license-plate accessories and is being enforced in a manner producing inconsistent outcomes across jurisdictions. Defendant proffered evidence demonstrating a credible, ongoing threat of renewed enforcement: similarly situated motorists engage in routine daily driving conduct subject to the statute, cannot determine from the statutory text whether their conduct is criminal, and face an enforcement pattern under which any observing officer may issue a criminal citation at any time.

15.     *Great public importance.* The record reflects that the status of section 320.061, Florida Statues, satisfies all three criteria as a question of great public importance: detailed, *infra*. Accordingly, although the prosecution has been terminated, the Court finds the certified question presents the type of recurring and systemwide legal issue for which certification exists and for which appellate courts have recognized exceptions to mootness to provide needed guidance.

4

III.    **FINDINGS OF FACT**

A.      **Procedural History and This Case**

16.     On December 5, 2025, a West Miami police officer stopped Defendant and issued a criminal citation alleging a violation of section 320.061, Florida Statutes, charging "OBSCURED TAG WITH A LICENSE PLATE COVER—TAG—UNLAWFUL ALTERATION," a second-degree misdemeanor punishable by up to 60 days' incarceration and a $500 fine.

17.     The citation arose from a license-plate frame affixed to Defendant's vehicle. Defense counsel put into the record the fact that the frame covered no letters, no numbers, and no portion of the registration decal.

18.     On January 9, 2026, Defendant was arraigned. Defense counsel advised that the frame had been removed and requested dismissal. The State declined.

19.     On February 20, 2026, Defendant filed a motion challenging section 320.061, Florida Statutes, as amended effective October 1, 2025, on the grounds that the statute's operative terms—prohibiting materials that "interfere[] with the legibility, angular visibility, or detectability of any feature or detail" on a license plate—are undefined and provide no measurable standard for criminal liability.

20.     At the hearing on February 25, 2026, while Defendant's constitutional motion and request for certification were pending and set for argument, rather than respond to the motion raising the constitutional issue, the State entered a nolle prosequi and indicated that it was due to insufficient evidence..

B.      **The Statutory Text of Section 320.061**

21.     As amended by Chapter 2025-36, Laws of Florida (CS/CS/HB 253), effective October 1, 2025, section 320.061, Florida Statutes, provides in pertinent part:

5

[a] person may not alter the original appearance of a vehicle registration certificate, license plate, temporary license plate, mobile home sticker, or validation sticker issued for and assigned to a motor vehicle or mobile home, whether by mutilation, alteration, defacement, or change of color or in any other manner. A person may not apply or attach a substance, reflective matter, illuminated device, spray, coating, covering, or other material onto or around any license plate which interferes with the legibility, angular visibility, or detectability of any feature or detail on the license plate or interferes with the ability to record any feature or detail on the license plate. A person who knowingly violates this section commits a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.

22.     The Court notes three features of this text that are central to the certified question. First, the statute criminalizes attaching material that "interferes with" the "legibility, angular visibility, or detectability of any feature or detail" of a license plate, yet it defines none of those operative terms. Second, it provides no threshold for how much coverage constitutes criminal "interference." Third, the 2025 amendment removed prior civil-enforcement mechanisms and classified all violations as criminal misdemeanors.

**C.      Documented Statewide Enforcement Split**

23.     Defendant's materials proffered that, in the weeks following the statute's October 1, 2025 effective date, Florida law enforcement agencies issued directly contradictory guidance about what conduct the statute prohibits. These are not subtle variations in interpretation; they are irreconcilable positions on identical conduct. The Court recounts the proffered evidence in detail so that the reviewing court may appreciate the scope and nature of the enforcement divergence.

*i. Agencies Interpreting Standard Frames Covering "Sunshine State" as Lawful*

24.     **Seminole County Sheriff's Office** (December 15, 2025): Published an official infographic stating that frames covering "SUNSHINE STATE" are "permissible." The post explained: "The Florida Department of Highway Safety and Motor Vehicles does not consider the wording along the bottom of the plate to be a primary feature, and a frame can cover it."

6

25.     **Volusia County Sheriff's Office** (December 11, 2025): Sheriff Mike Chitwood issued a legal bulletin to all deputies quoting *State v. St. Jean*, 697 So. 2d 956 (Fla. 5th DCA 1997). The bulletin concluded: "if the license plate including the alphanumeric designation and the registration decal are plainly visible and legible from 100 feet, there is no violation. . . . Therefore, if the license plate rim or plate does not obscure the license plate's alphanumerical designation or the registration decal, there is not a violation of Fla. Stat. 320.061, and a motorist should not be stopped based on this statute."

26.     **Apopka Police Department** (December 17, 2025): Stated publicly that "there is no prohibition against using a license plate frame as long as it does not obscure the visibility of the following two things: 1. The alpha numeric plate identifier . . . 2. The decal (yellow sticker) located in the top right hand corner of license plate."

27.     **Ocoee Police Department** (December 5, 2025): Posted images of acceptable decorative frames, including sports-team and dealer frames that cover "Sunshine State," stating: "The Florida Department of Highway Safety and Motor Vehicles does not consider the wording along the bottom of the plate to be a primary feature, and a frame can cover it."

28.     **Casselberry Police Department** (December 2025): Stated publicly: "We will not be arresting people just for having a basic, simple plate frame. Our focus is on intentional alterations, blocked characters, and unreadable plates or decals."

*ii. Agencies Interpreting Identical Conduct as Criminal*

29.     **St. Lucie County Sheriff's Office** (December 15, 2025): Posted that "License plate frames that cover or partially block any letters, numbers, or the registration decal" are prohibited. Its infographic showed covering "SUNSHINE STATE" as a violation—directly contradicting Seminole County's interpretation of the same FLHSMV guidance issued the same day.

7

30.     **State Attorney's Office, 12th Judicial Circuit** (December 9, 2025): Posted an image of a standard Volkswagen dealership frame, circled in red, as an example of conduct that "makes it illegal." This is the identical type of frame that Seminole County, Volusia County, Apopka, Ocoee, and Casselberry declared lawful.

31.     **Miami Beach Police Department** (October 2025–January 2026): Issued multiple citations for frames covering "Sunshine State" or "Florida," including citations described as "LICENSE PLATE HOLDER OBSCURING TAG" and "FRAME OBSCURING ISSUING STATE."

32.     **North Miami Beach Police Department** (October 2025–January 2026): Issued citations specifically for "Tag Frame Obscures Sunshine State Verbage", the exact conduct that Seminole County explicitly declared legal.

### iii. The Florida Department of Highway Safety and Motor Vehicles Guidance Paradox

33.     Defendant proffered that on December 12, 2025, the Florida Department of Highway Safety and Motor Vehicles ("FLHSMV") issued guidance to all Florida law enforcement agencies stating:

> this act does not prohibit the use of a license plate frame as long as the frame does not obscure visibility of the following: The alpha numeric plate identifier; The decal located in the top right hand corner of the license plate.

The FLHSMV guidance included an example image of a license plate with a decorative frame as compliant conduct. Nevertheless, the proffered evidence reflects that at least 195 citations were issued in Miami-Dade County *after* this guidance, including citations for the exact type of frame depicted in the FLHSMV's own example as compliant.

### iv. The Miami-Dade Citation Data

8

34.     Defendant proffered publicly available data reflecting that within Miami-Dade County alone, 422 criminal citations were issued under section 320.061 between October 1, 2025 and January 24, 2026. Of those, 195 citations were issued after the December 12, 2025 FLHSMV guidance. The citations include charges for dealer frames, including "AUTONATION TAG FRAME COVERING FLORIDA" and "LARGO HONDA FRAME COVERING STATE READING," and multiple citations for covering "Sunshine State," including "Tag Frame Obscures Sunshine State Verbage" and "Plate Cover Obscuring Sunshine State." Defendant included a link to a demonstrative exhibit that included a visual illustration of all violations under section 320.061, Florida Statutes.  This illustration can be found at https://tickettoro.ai/data-analysis/tag-alteration.

### v. The Dawson Arrest and the Davie Police Department Admission

35.     Defendant proffered evidence that on December 17, 2025, two days after the FLHSMV issued its statewide clarification, Davie police arrested Demarquize Dawson because a decorative frame on his rental car partially covered the letter "S" in "Sunshine State." Mr. Dawson was jailed.

Following public outcry, the Davie Police Department issued a formal public statement containing the following admission: that "the law was vague, unclear and appeared to be open for misinterpretation."

### E.     Nature of the Constitutional Concerns Raised

36.     Defendant's motion and oral argument raised two distinct constitutional challenges to the statutory text. First, Defendant argued that section 320.061 is facially void for vagueness under the Due Process Clauses of the Florida Constitution (Art. I, § 9) and the United States Constitution (Amend. XIV), contending that: (a) the statute fails to give persons of common intelligence fair notice of what conduct is prohibited because it defines neither the protected object

9

("any feature or detail") nor the degree of prohibited interference ("interferes with"), citing

*Kolender v. Lawson*, 461 U.S. 352, 357 (1983), *State v. Wershow*, 343 So. 2d 605, 608 (Fla. 1977),

and *Johnson v. United States*, 576 U.S. 591, 602 (2015); and (b) the statute invites arbitrary

enforcement by failing to establish minimal guidelines to govern law enforcement, as evidenced

by the irreconcilable statewide enforcement split documented above, citing *Kolender*, 461 U.S. at

358, and *City of Chicago v. Morales*, 527 U.S. 41, 60 (1999).

37.     Second, Defendant argued that section 320.061 independently violates substantive

due process because it provides no measurable standard for "interference," no definition of

protected "features" or "details," yet mandates criminal prosecution as the sole enforcement

mechanism, creating arbitrary exposure to arrest and prosecution that varies by geography rather

than by conduct, citing *County of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998), and *J.L.S.*

*v. State*, 947 So. 2d 641, 647 (Fla. 3d DCA 2007).

38.     Defendant further argued that the statute's "knowingly" *mens rea* element does not

cure the vagueness because a person cannot "knowingly" violate a standard that is itself undefined,

and that the criminal-only enforcement framework—which replaced prior civil penalties—

amplifies the constitutional defect by imposing the most severe consequences without providing

corresponding definitional clarity, citing *DuFresne v. State*, 826 So. 2d 272, 274 (Fla. 2002), and

*Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972).

39.     The foregoing findings describe the nature and substance of the legal questions

raised so that the reviewing court may appreciate the scope and significance of the certified

question.

## IV.    CONCLUSIONS OF LAW

40.    This Final Judgment and Order contains findings of fact and conclusions of law and states concisely the question to be certified, as required by section 34.017(2), Florida Statutes, and Florida Rule of Appellate Procedure 9.160.

41.    ***Statewide Application.*** The Court concludes that the certified question may have statewide application because it challenges a Florida criminal statute that applies uniformly across all sixty-seven Florida counties.  The statute does not create localized enforcement discretion limited to a particular municipality or jurisdiction; rather, it establishes uniform criminal liability applicable to all registered motorists in the State. Further, the constitutional question presented does not arise from facts unique to this Defendant but from the statutory language itself. The terms "interfere," "legibility," "angular visibility," "detectability," "feature," and "detail" appear in the operative text of the statute and govern enforcement across Florida. Because the challenged statutory language applies identically in every county and to all motorists, resolution of its facial validity necessarily has statewide impact.

42.    The Court therefore concludes that the issue presented has statewide application.

43.    ***Great Public Importance.*** The Court concludes that the certified question is of great public importance. A question is of great public importance when it affects a broad class of citizens or implicates fundamental constitutional protections. The constitutionality of a criminal statute that potentially exposes millions of Florida motorists to arrest and prosecution for commonplace conduct is, by its nature, a question of great public importance. *See Young v. State*, 678 So. 2d 427, 429 (Fla. 4th DCA 1996), *approved*, 697 So. 2d 75 (Fla. 1997) (certification appropriate when issues "arise frequently and affect numerous criminal defendants within this district and throughout the state"). Section 320.061 criminalizes conduct related to the display of

11

license plates — conduct engaged in daily by millions of Florida motorists. The statute imposes criminal penalties and authorizes law enforcement officers to initiate stops based on perceived violations of its terms.

44. The constitutional challenge raised here concerns the clarity and definiteness required of criminal statutes under Article I, Section 9 of the Florida Constitution and the Fourteenth Amendment to the United States Constitution. Questions involving the due process limits of criminal liability and the standards necessary to prevent arbitrary enforcement implicate core constitutional protections and extend beyond the interests of the individual Defendant.

45. The public importance of this question is further confirmed by the extraordinary response it has already generated: emergency guidance from the FLHSMV; official legal bulletins from multiple sheriff's offices; public statements from the bill's own legislative sponsor; and a formal law-enforcement admission that the statute is "vague, unclear and appeared to be open for misinterpretation." Moreover, no county court ruling, whether granting or denying a constitutional challenge, can resolve the statewide confusion. Only appellate review can provide the authoritative construction that citizens, law enforcement, and prosecutors across Florida require.

46. The Court therefore concludes that the issue presented is of great public importance.

47. ***Uniform Administration of Justice.*** The Court independently concludes that the certified question will affect the uniform administration of justice. Section 34.017(1)(b) authorizes certification when a question "will affect the uniform administration of justice." The very heart of the question presented is whether the statutory text has produced the opposite of uniform administration: identical conduct treated as lawful in some Florida counties and criminal in others, not because of different ordinances, but because of different readings of the same state law. The record before this Court documents enforcement activity and conflicting agency interpretations

spanning multiple counties, including Seminole, Volusia, Orange, Broward, St. Lucie, Sarasota, and Miami-Dade, confirming that the question's reach extends well beyond this individual prosecution.

48.     A motorist with a standard dealership frame is a law-abiding citizen in one jurisdiction and a criminal defendant in another. That geographic lottery in criminal enforcement is the paradigm case for certification under the uniform-administration-of-justice prong. Without appellate review, the statewide enforcement split will continue indefinitely, and county courts across Florida may reach conflicting conclusions on the identical constitutional question with no mechanism for reconciliation.

49.     The Court therefore concludes that the issue presented affects the uniform administration of justice. *Capable of Repetition yet Evading Review; The Public-Importance/Likely-to-Recur Doctrine.* The Court further concludes that the certified question falls within the recognized exception for issues that are capable of repetition yet evading review, and/or the public-importance/likely-to-recur doctrine, as articulated in *Rhody v. McNeil*, *Romero v. Green*, and related authorities, for the reasons set forth in Section II.C above. Because the constitutional question is purely legal and capable of recurring in future prosecutions, appellate guidance is required.

50.     *Appellate Pathway.* This Order constitutes a final judgment of dismissal entered in a criminal proceeding within the jurisdiction of the County Court pursuant to Article V, Section 5(b) of the Florida Constitution. This Final Judgment disposes of all issues before the Court and constitutes a final, appealable order.

51.     Although the State has entered a nolle prosequi, the constitutional issue raised by Defendant was fully briefed and presented for adjudication prior to dismissal. The issue is purely

13

legal in nature and concerns the facial validity of a statewide criminal statute. The Court has exercised its discretion to resolve the constitutional question presented and makes the determination set forth herein.

52.     Final orders of county courts are reviewable in accordance with Article V, section 4(b) of the Florida Constitution and Florida Rule of Appellate Procedure 9.030(b)(1)(A). Pursuant to section 34.017(1), Florida Statutes, when a county court judgment is otherwise appealable and the trial judge certifies that the judgment involves a question of great public importance or will affect the uniform administration of justice, the appeal lies directly in the district court of appeal. Certification under section 34.017 and Florida Rule of Appellate Procedure 9.160 ensures that the constitutional question resolved herein is clearly framed for appellate review.

53.     The Court expressly finds that this Final Judgment involves a question of great public importance and will affect the uniform administration of justice throughout the State of Florida. Accordingly, the Court certifies the question set forth herein to the Third District Court of Appeal.

54.     This Order is intended to constitute a final, appealable order for purposes of Florida Rule of Appellate Procedure 9.160.

**V.      CERTIFIED QUESTION**

55.     Pursuant to section 34.017, Florida Statutes, and Florida Rule of Appellate Procedure 9.160, this Court certifies the following question to the Third District Court of Appeal as one of great public importance and/or affecting the uniform administration of justice:

> **WHETHER SECTION 320.061, FLORIDA STATUTES, AS AMENDED BY CHAPTER 2025-36, LAWS OF FLORIDA (CS/CS/HB 253) (EFFECTIVE OCTOBER 1, 2025), IS FACIALLY UNCONSTITUTIONAL AND VOID FOR VAGUENESS UNDER ARTICLE I, SECTION 9 OF THE FLORIDA CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION BECAUSE IT CRIMINALIZES**

14

**CONDUCT THAT "INTERFERES WITH" THE "LEGIBILITY, ANGULAR VISIBILITY, OR DETECTABILITY OF ANY FEATURE OR DETAIL" OF A LICENSE PLATE WITHOUT DEFINING THOSE OPERATIVE TERMS OR PROVIDING ANY MEASURABLE STANDARD FOR CRIMINAL LIABILITY.**

DONE AND ORDERED in Miami-Dade County, Florida, this _____ day of _____, 2026.


_____
**JULIE HARRIS NELSON**
County Court Judge

Copies furnished to:

Anna D. Quesada, Esq., Anna@TicketToro.ai
Charles E. Whorton, Esq., Charlie@TicketToro.ai
Juan Sarceno, Esq., juansarceno@miamisao.com
Corrine Olmeda, Esq., CorrineOlmeda@miamisao.com

15