# CHAPTER 2026-39

## Senate Bill No. 488

An act relating to transportation; amending s. 207.001, F.S.; revising a short title; amending s. 207.002, F.S.; providing and revising definitions; amending s. 207.004, F.S.; requiring licensing, rather than registration, of motor carriers; requiring fuel tax decals, rather than identifying devices, for motor carriers; requiring a copy of the license to be carried in each qualified motor vehicle or made available electronically; specifying how fuel tax decals are to be displayed on qualified motor vehicles; requiring the Department of Highway Safety and Motor Vehicles or its authorized agent to issue licenses and fuel tax decals; requiring fuel tax decal renewal orders to be submitted electronically beginning on a specified date; revising required contents of temporary fuel-use permits; removing provisions relating to driveaway permits; amending s. 207.005, F.S.; revising reporting periods and due dates for motor fuel use tax returns; requiring such tax returns to be submitted electronically beginning on a specified date; amending s. 207.007, F.S.; revising requirements for calculation of interest due for delinquent tax; providing penalties for any person who counterfeits, alters, manufactures, or sells fuel tax licenses, fuel tax decals, or temporary fuel-use permits except under certain circumstances; amending s. 207.019, F.S.; requiring motor carriers to destroy fuel tax decals under certain circumstances and notify the department; amending s. 316.065, F.S.; revising the apparent amount of property damage that requires the driver of a vehicle involved in a crash to notify law enforcement of the crash; amending s. 320.02, F.S.; providing an exemption from certain vehicle registration requirements for certain active duty military members; requiring applicants to provide proof of address; revising requirements for documenting an applicant's address and proof of legal presence; defining the term "REAL ID driver license or identification card"; removing certain requirements for business applicants; amending s. 320.061, F.S.; revising a prohibition on obscuring a license plate; providing that the use of a license plate frame or decorative border is not prohibited under specified conditions; amending s. 320.084, F.S.; providing that a disabled veteran may retain a certain license plate designation upon reissuance, renewal, or transfer of the plate; amending s. 320.0843, F.S.; authorizing applications for certain license plates to be made to the tax collector; providing that such license plates may be stamped with specified letters at the option of the applicant; authorizing the tax collector to issue such plates immediately on demand; amending s. 320.262, F.S.; revising the definition of the term "license plate obscuring device"; providing that the use of a license plate frame or decorative border device is not prohibited under specified conditions; amending s. 320.64, F.S.; authorizing licensees to reject the succession to interest in a franchise agreement of a motor vehicle dealer under certain circumstances; clarifying the motor vehicles for which a licensee must pay certain costs to a motor vehicle dealer under certain circumstances; prohibiting a

1

licensee from distributing more than a specified percentage of a specified number of motor vehicles of a particular line-make during a certain period to one motor vehicle dealer or dealers that share common ownership or control; providing applicability; amending s. 320.643, F.S.; authorizing a licensee to reject a sale, transfer, alienation, or other disposition of a franchise agreement or an equity interest in a motor vehicle dealer under certain circumstances; amending s. 320.95, F.S.; authorizing the department to use e-mail as a method of notification; amending s. 322.01, F.S.; revising the definition of the term "tank vehicle"; amending ss. 322.051 and 322.17, F.S.; requiring an e-mail address to be included on an identification card application and a request for a replacement driver license or instruction permit, respectively; amending s. 322.251, F.S.; authorizing orders of cancellation, suspension, revocation, or disqualification to be provided by e-mail notification; amending s. 337.401, F.S.; prohibiting municipalities and counties from requiring that providers locate or perform surveys of certain facilities; requiring a provider to use certain means to avoid damaging certain facilities under specified circumstances; prohibiting municipalities and counties from taking certain actions relating to certain facility permits; authorizing municipalities and counties to require a bond or other financial instrument; prohibiting municipalities and counties from imposing or collecting a tax, fee, cost, charge, or exaction for the placement of certain communications facilities; revising applicability; revising the definition of the term "application"; prohibiting an authority from requiring compliance with an authority's provisions regarding placement of communications facilities in certain locations; providing exceptions; requiring that certain authority ordinances apply to all providers of communications services; providing bond requirements; providing requirements for certain financial obligations required by an authority; prohibiting an authority from requiring a deposit or escrow of cash or agreement with certain terms; prohibiting an authority from requiring a communications service provider to indemnify it for certain liabilities; prohibiting an authority from imposing certain landscaping and vegetation management requirements; amending ss. 120.80, 207.003, 207.008, 207.011, 207.013, 207.014, 207.023, 207.0281, 212.08, 316.545, 318.15, 319.35, 319.40, 320.03, 322.08, 322.18, 322.21, 322.245, 322.2615, 322.2616, 322.64, 324.091, 324.171, 328.30, 328.73, and 627.7415, F.S.; conforming provisions to changes made by the act; providing an effective date.

Be It Enacted by the Legislature of the State of Florida:

Section 1.   Section 207.001, Florida Statutes, is amended to read:

207.001   Short title.—This chapter shall be known as the "Florida ~~Diesel Fuel and~~ Motor Fuel Use Tax Act ~~of 1981~~," and the taxes levied under this chapter shall be in addition to all other taxes imposed by law.

Section 2.   Section 207.002, Florida Statutes, is amended to read:

207.002   Definitions.—As used in this chapter, the term:

2

(1)(2)  "Department" means the Department of Highway Safety and Motor Vehicles.

(2)  "International Fuel Tax Agreement" means the reciprocal agreement among certain states of the United States, provinces of Canada, and other member jurisdictions which provides for the administration, collection, and enforcement of taxes on the basis of fuel consumed or distance accrued, or both, in member jurisdictions.

(3)  "Diesel fuel" means any liquid product or gas product or combination thereof, including, but not limited to, all forms of fuel known or sold as diesel fuel, kerosene, butane gas, or propane gas and all other forms of liquefied petroleum gases, except those defined as "motor fuel," used to propel a motor vehicle.

(4)  "International Registration Plan" means a registration reciprocity agreement among states of the United States and provinces of Canada providing for payment of license fees or license taxes on the basis of fleet miles operated in various jurisdictions.

(3)(5)  "Interstate" means vehicle movement between or through two or more member jurisdictions states.

(4)(6)  "Intrastate" means vehicle movement from one point within a member jurisdiction state to another point within the same member jurisdiction state.

(5)  "Member jurisdiction" means a member of the International Fuel Tax Agreement.

(6)(7)  "Motor carrier" means any person owning, controlling, operating, or managing any motor vehicle used to transport persons or property over any public highway.

(7)(8)  "Motor fuel" means any fuel placed in the fuel supply storage unit of a qualified motor vehicle, including an alternative fuel such as pure methanol, ethanol, or other alcohol; a blend of 85 percent or more alcohol with gasoline; natural gas and liquid fuel produced from natural gas; propane; coal-derived liquified fuel; hydrogen; electricity; pure biodiesel (B100) fuel, other than alcohol, derived from biological materials; P-series fuel; or any other type of fuel or energy used to propel a qualified motor vehicle what is commonly known and sold as gasoline and fuels containing a mixture of gasoline and other products.

(8)(9)  "Operate," "operated," "operation," or "operating" means and includes the use utilization in any form of any qualified commercial motor vehicle, whether loaded or empty, whether used utilized for compensation or not for compensation, and whether owned by or leased to the motor carrier who uses it or causes it to be used.

CODING: Words stricken are deletions; words underlined are additions.

(9)(10) "Person" means ~~and includes~~ natural persons, corporations, copartnerships, firms, companies, agencies, or associations, singular or plural.

(10)(11) "Public highway" means any public street, road, or highway in this state.

(11)(1) "Qualified ~~commercial~~ motor vehicle" means any vehicle not owned or operated by a governmental entity which uses ~~diesel fuel or~~ motor fuel on the public highways~~;~~ and which has two axles and a gross vehicle weight or registered gross vehicle weight in excess of 26,000 pounds, or has three or more axles regardless of weight, or is used in combination when the weight of such combination exceeds 26,000 pounds gross vehicle weight or registered gross vehicle weight. The term excludes any recreational vehicle or vehicle owned or operated by a community transportation coordinator as defined in s. 427.011 or by a private operator that provides public transit services under contract with such a provider.

(12) ~~"Registrant" means a person in whose name or names a vehicle is properly registered.~~

(12)(13) "Use," "uses," or "used" means the consumption of ~~diesel fuel or~~ motor fuel in a qualified ~~commercial~~ motor vehicle for the propulsion thereof.

Section 3.   Section 207.004, Florida Statutes, is amended to read:

207.004   Licensing ~~registration~~ of motor carriers; fuel tax decals ~~identifying devices~~; fees; renewals; temporary fuel-use permits ~~and driveaway permits~~.—

(1)(a)   A ~~no~~ motor carrier may not ~~shall~~ operate or cause to be operated in this state any qualified ~~commercial~~ motor vehicle, other than a Florida-based qualified ~~commercial~~ motor vehicle that travels Florida intrastate mileage only, which ~~that~~ uses ~~diesel fuel or~~ motor fuel until such carrier is licensed ~~has registered with the department or has registered~~ under the International Fuel Tax Agreement ~~a cooperative reciprocal agreement as described in s. 207.0281, after such time as this state enters into such agreement,~~ and has been issued fuel tax decals ~~an identifying device~~ or such carrier has been issued a temporary fuel-use permit as authorized under subsection ~~subsections (4) and~~ (5) for each vehicle operated. The fee for each set of fuel tax decals is ~~There shall be a fee of~~ $4 per year or any fraction thereof. A copy of the license must be carried in each vehicle or made available electronically. The fuel tax decal ~~for each such identifying device issued. The identifying device shall be provided by the department and~~ must be conspicuously displayed on the qualified ~~commercial~~ motor vehicle as prescribed by the instructions on the reverse side of the decal ~~department~~ while the vehicle ~~it~~ is being operated on the public highways of this state. The transfer of a fuel tax decal ~~an identifying device~~ from one vehicle to another vehicle or from one motor carrier to another motor carrier is

CODING: Words ~~stricken~~ are deletions; words underlined are additions.

prohibited. <u>The department or its authorized agent shall issue the licenses and fuel tax decals.</u>

(b)    The motor carrier to whom <u>fuel tax decals have</u> <s>an identifying device has</s> been issued <u>is</u> <s>shall be</s> solely responsible for the proper use of the <u>fuel tax decals</u> <s>identifying device</s> by its employees, consignees, or lessees.

(2)    <u>Fuel tax decals</u> <s>Identifying devices</s> shall be issued each year for the period January 1 through December 31, or any portion thereof, if tax returns and tax payments, when applicable, have been submitted to the department for <u>all</u> prior reporting periods. <u>Fuel tax decals</u> <s>Identifying devices</s> may be displayed for the next succeeding indicia period beginning December 1 of each year. <u>Beginning October 1, 2026, except as otherwise authorized by the department, all fuel tax decal renewal orders must be submitted electronically through an online system prescribed by the department.</u>

(3)    If a motor carrier <u>licensed in this state</u> no longer operates or causes to be operated in this state <u>any qualified</u> <s>a commercial</s> motor vehicle, the <u>fuel tax decal for each qualified motor vehicle that is no longer operated or caused to be operated by the motor carrier must</u> <s>identifying device shall</s> be destroyed and the motor carrier to whom the <u>fuel tax decal</u> <s>device</s> was issued <u>must</u> <s>shall</s> notify the department immediately by letter of such removal and of the number of the <u>fuel tax decal</u> <s>identifying device</s> that <u>was</u> <s>has been</s> destroyed.

(4)    A motor carrier, before operating a <u>qualified</u> <s>commercial</s> motor vehicle on the public highways of this state, must <u>require each qualified motor vehicle to</u> display <u>a fuel tax decal</u> <s>an identifying device</s> as required under subsections (1) and (2) or must obtain a temporary fuel-use permit for that vehicle <u>as provided in subsection (5)</u>. <s>A temporary fuel-use permit shall expire within 10 days after date of issuance. The cost of a temporary fuel-use permit is $45, and the permit exempts the vehicle from the payment of the motor fuel or diesel fuel tax imposed under this chapter during the term for which the permit is valid. However, the vehicle is not exempt from paying the fuel tax at the pump.</s>

(5)(a)    A <s>registered</s> motor carrier holding a valid <u>license may</u> <s>certificate of registration may, upon payment of the $45 fee per permit,</s> secure from the department, or any wire service authorized by the department, a temporary fuel-use permit.

(b)    <u>The fee for a temporary fuel-use permit is $45. A temporary fuel-use permit expires 10 days after the date of issuance and exempts the vehicle from payment of the motor fuel tax imposed under this chapter during the period for which the permit is valid. However, this paragraph does not exempt the vehicle from payment at the pump of the fuel tax imposed under chapter 206.</u>

(c)    A <s>blank</s> temporary fuel-use permit<s>, before its use,</s> must <s>be executed by the motor carrier, in ink or type, so as to</s> identify the carrier, the vehicle to

CODING: Words <s>stricken</s> are deletions; words <u>underlined</u> are additions.

which the permit is assigned, and the <u>permit's effective date and expiration</u> date ~~that the vehicle is placed in and removed from service. The temporary fuel-use permit shall also show a complete identification of the vehicle on which the permit is to be used, together with the name and address of the owner or lessee of the vehicle~~. The ~~endorsed~~ temporary fuel-use permit <u>must</u> ~~shall then~~ be carried on the vehicle that it identifies and <u>must</u> ~~shall~~ be exhibited on demand to any authorized personnel. Temporary fuel-use permits may be transmitted to the motor carrier by electronic means ~~and shall be completed as outlined by department personnel prior to transmittal~~.

<u>(d)</u>   The motor carrier to whom a temporary fuel-use permit is issued <u>is</u> ~~shall be~~ solely responsible for the proper use of the permit by its employees, consignees, or lessees. Any erasure, alteration, or unauthorized use of a temporary fuel-use permit <u>renders</u> ~~shall render~~ it invalid and of no effect. A motor carrier to whom a temporary fuel-use permit is issued may not knowingly allow the permit to be used by any other person ~~or organization~~.

~~(b)   An unregistered motor carrier may, upon payment of the $45 fee, secure from any wire service authorized by the department, by electronic means, a temporary fuel-use permit that shall be valid for a period of 10 days. Such permit must show the name and address of the unregistered motor carrier to whom it is issued, the date the vehicle is placed in and removed from service, a complete identification of the vehicle on which the permit is to be used, and the name and address of the owner or lessee of the vehicle. The temporary fuel-use permit shall then be carried on the vehicle that it identifies and shall be exhibited on demand to any authorized personnel. The unregistered motor carrier to whom a temporary fuel-use permit is issued shall be solely responsible for the proper use of the permit by its employees, consignees, or lessees. Any erasure, alteration, or unauthorized use of a temporary fuel-use permit shall render it invalid and of no effect. The unregistered motor carrier to whom a temporary fuel-use permit is issued may not knowingly allow the permit to be used by any other person or organization.~~

~~(c)   A registered motor carrier engaged in driveaway transportation, in which the cargo is the vehicle itself and is in transit to stock inventory and the ownership of the vehicle is not vested in the motor carrier, may, upon payment of the $4 fee, secure from the department a driveaway permit. The driveaway permits shall be issued for the period January 1 through December 31. An original permit must be in the possession of the operator of each vehicle and shall be exhibited on demand to any authorized personnel. Vehicle mileage reports must be submitted by the motor carrier, and the road privilege tax must be paid on all miles operated within this state during the reporting period. All other provisions of this chapter shall apply to the holder of a driveaway permit.~~

Section 4.   Section 207.005, Florida Statutes, is amended to read:

207.005   Returns and payment of tax; delinquencies; calculation of fuel used during operations in <u>this</u> ~~the~~ state; credit; bond.—

6

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

(1)   The taxes levied under this chapter are ~~shall be~~ due and payable on the first day of the month following the last month of the reporting period. The department may adopt ~~promulgate~~ rules for requiring and establishing procedures for annual, semiannual, or quarterly filing. The reporting period is ~~shall be~~ the 12 months beginning January ~~July~~ 1 and ending December 31 ~~June 30~~. ~~It shall be the duty of~~ Each motor carrier licensed ~~registered~~ or required to be licensed ~~registered~~ under ~~the provisions of~~ this chapter must ~~to~~ submit a return by the following due dates, except that each due date is extended until the last day of the month of the due date, and, if the last day of the month falls on a Saturday, Sunday, or legal holiday, the due date is further extended until the next day that is not a Saturday, Sunday, or legal holiday ~~within 30 days after the due date. The due date shall be as follows~~:

(a)   If annual filing, the due date is January 31 ~~shall be July 1~~;

(b)   If semiannual filing, the due dates are ~~shall be~~ January 31 ~~1~~ and July 31 ~~1~~; or

(c)   If quarterly filing, the due dates are ~~shall be~~ January 31 ~~1~~, April 30 ~~1~~, July 31 ~~1~~, and October 31 ~~1~~.

(2)   The amount of fuel used in the propulsion of any qualified ~~commercial~~ motor vehicle within this state may be calculated, if the motor carrier maintains adequate records, by applying total interstate vehicular consumption of all ~~diesel fuel and~~ motor fuel used as related to total miles traveled and applying such rate to total miles traveled within this state. In the absence of adequate documentation by the motor carrier, the department may adopt ~~is authorized to promulgate~~ rules converting miles driven to gallons used.

(3)   For the purpose of computing the carrier's liability for the fuel ~~road privilege~~ tax, the total gallons of fuel used in the propulsion of any qualified ~~commercial~~ motor vehicle in this state shall be multiplied by the rates provided in parts I-III of chapter 206. From the sum determined by this calculation, there shall be allowed a credit equal to the amount of the tax per gallon under parts I-III of chapter 206 for each gallon of fuel purchased in this state during the reporting period when the ~~diesel fuel or~~ motor fuel tax was paid at the time of purchase. If the tax paid under parts I-III of chapter 206 exceeds the total tax due under this chapter, the excess may be allowed as a credit against future tax payments, until the credit is fully offset or until eight calendar quarters shall have passed since the end of the calendar quarter in which the credit accrued, whichever occurs first. A refund may be made for this credit provided it exceeds $10.

(4)   The department may adopt ~~is authorized to promulgate~~ the necessary rules to provide for an adequate bond from each motor carrier to ensure payment of taxes required under this chapter.

7

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

(5)  Beginning October 1, 2026, except as otherwise authorized by the department, all returns must be submitted electronically through an online system prescribed by the department.

Section 5.  Section 207.007, Florida Statutes, is amended to read:

207.007  Offenses; penalties and interest.—

(1)  If any motor carrier licensed ~~registered~~ under this chapter fails to file a return or ~~and~~ pay any tax liability under this chapter within the time required ~~hereunder~~, the department may impose a delinquency penalty of $50 or 10 percent of the delinquent taxes due, whichever is greater, if the failure is for not more than 30 days, with an additional 10 percent penalty for each additional 30 days, or fraction thereof, during the time which the failure continues, not to exceed a total penalty of 100 percent in the aggregate. However, the penalty may not be less than $50.

(2)  In addition to any other penalties, any delinquent tax shall bear interest in accordance with the International Fuel Tax Agreement ~~at the rate of 1 percent per month, or fraction thereof, calculated from the date the tax was due. If the department enters into a cooperative reciprocal agreement under the provisions of s. 207.0281, the department shall collect and distribute all interest due to other jurisdictions at the same rate as if such interest were due to the state.~~

(3)  Any person who:

(a)  Willfully refuses or neglects to make any statement, report, or return required by ~~the provisions of~~ this chapter;

(b)  Knowingly makes, or assists any other person in making, a false statement in a return or report ~~or~~ in connection with an application for licensure ~~registration~~ under this chapter or in connection with an audit; ~~or~~

(c)  Counterfeits, alters, manufactures, or sells fuel tax licenses, fuel tax decals, or temporary fuel-use permits without first having obtained the department's permission in writing; or

(d)~~(c)~~  Violates any provision ~~of the provisions~~ of this chapter, a penalty for which is not otherwise provided,

commits ~~is guilty of~~ a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. In addition, the department may revoke or suspend the licensure and registration privileges under ss. 207.004 and 320.02, respectively, of the violator. Each day or part thereof during which a person operates or causes to be operated a qualified ~~commercial~~ motor vehicle without being the holder of fuel tax decals ~~an identifying device~~ or having a valid temporary fuel-use ~~or driveaway~~ permit as required by this chapter constitutes a separate offense within the meaning of this section. In addition to the penalty imposed by this section, the defendant is ~~shall be~~ required to pay all taxes, interest, and penalties due to this ~~the~~ state.

CODING: Words ~~stricken~~ are deletions; words underlined are additions.

Section 6.  Subsection (1) of section 207.019, Florida Statutes, is amended to read:

207.019  Discontinuance or transfer of business; change of address.—

(1)  Whenever a person ceases to engage in business as a motor carrier within this ~~the~~ state by reason of the discontinuance, sale, or transfer of the business of such person, the person ~~he or she~~ shall notify the department in writing at least 10 days before ~~prior to~~ the time the discontinuance, sale, or transfer takes effect. Such notice must ~~shall~~ give the date of discontinuance and, in the event of a sale or transfer of the business, the date thereof and the name and address of the purchaser or transferee. All ~~diesel fuel or~~ motor fuel use taxes are ~~shall become~~ due and payable concurrently with such discontinuance, sale, or transfer; ~~and~~ any such person shall, concurrently with such discontinuance, sale, or transfer, make a report and,~~,~~ pay all such taxes, interest, and penalties; and the fuel tax decals must be destroyed and the motor carrier to whom the decals were issued shall notify the department by letter of their destruction and of the numbers of the fuel tax decals that were destroyed,~~ and surrender to the department the registration issued to such person~~.

Section 7.  Subsection (1) of section 316.065, Florida Statutes, is amended to read:

316.065  Crashes; reports; penalties.—

(1)  The driver of a vehicle involved in a crash resulting in injury to or death of any persons or damage to any vehicle or other property in an apparent amount of at least $2,000 ~~$500~~ shall immediately by the quickest means of communication give notice of the crash to the local police department, if such crash occurs within a municipality; otherwise, to the office of the county sheriff or the nearest office or station of the Florida Highway Patrol. A violation of this subsection is a noncriminal traffic infraction, punishable as a nonmoving violation as provided in chapter 318.

Section 8.  Subsection (2) and paragraph (e) of subsection (5) of section 320.02, Florida Statutes, are amended to read:

320.02  Registration required; application for registration; forms.—

(2)(a)  The application for registration must include the street address of the owner's permanent Florida residence or the address of his or her permanent place of business in Florida and be accompanied by personal or business identification information. If the vehicle is registered to an active duty member of the United States Armed Forces who is a Florida resident, the active duty member is not required to provide the street address of a permanent Florida residence.

(b)  An individual applicant must provide proof of address satisfactory to the department and:

9

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

1. A valid <u>REAL ID</u> driver license or identification card issued by this state or another state; <s>or</s>

2. A valid<u>, unexpired United States</u> passport<s>; or</s>

3. <u>A valid, unexpired passport issued by another country and an unexpired Form I-94 issued by the United States Bureau of Customs and Border Protection</u>.

<u>For purposes of this paragraph, the term "REAL ID driver license or identification card" has the same meaning as provided in 6 C.F.R. s. 37.3.</u>

<u>(c)</u> A business applicant must provide a federal employer identification number, if applicable, or verification that the business is authorized to conduct business in <u>this</u> <s>the</s> state, or a Florida municipal or county business license or number.

<s>1. If the owner does not have a permanent residence or permanent place of business or if the owner's permanent residence or permanent place of business cannot be identified by a street address, the application must include:</s>

<s>a. If the vehicle is registered to a business, the name and street address of the permanent residence of an owner of the business, an officer of the corporation, or an employee who is in a supervisory position.</s>

<s>b. If the vehicle is registered to an individual, the name and street address of the permanent residence of a close relative or friend who is a resident of this state.</s>

<s>2. If the vehicle is registered to an active duty member of the Armed Forces of the United States who is a Florida resident, the active duty member is exempt from the requirement to provide the street address of a permanent residence.</s>

<u>(d)</u><s>(b)</s> The department shall prescribe a form upon which motor vehicle owners may record odometer readings when registering their motor vehicles.

(5)

(e) Upon the expiration date noted in the cancellation notice that the department receives from the insurer, the department shall suspend the registration<s>,</s> issued under this chapter or <u>revoke the license issued under</u> s. 207.004(1)<s>,</s> of a motor carrier who operates a commercial motor vehicle or <u>a qualified motor vehicle</u> who permits it to be operated in this state during the registration period <u>or licensure period</u> without having in full force liability insurance, a surety bond, or a valid self-insurance certificate that complies with this section. The insurer shall provide notice to the department at the same time the cancellation notice is provided to the insured pursuant to s. 627.7281. The department may adopt rules regarding the electronic submission of the cancellation notice.

CODING: Words <s>stricken</s> are deletions; words <u>underlined</u> are additions.

Section 9.   Section 320.061, Florida Statutes, is amended to read:

320.061   Unlawful to alter motor vehicle registration certificates, license plates, temporary license plates, mobile home stickers, or validation stickers or to obscure license plates; penalty.—

(1)   A person may not alter the original appearance of a vehicle registration certificate, license plate, temporary license plate, mobile home sticker, or validation sticker issued for and assigned to a motor vehicle or mobile home, whether by mutilation, alteration, defacement, or change of color or in any other manner. A person may not apply or attach a substance, reflective matter, illuminated device, spray, coating, covering, or other material onto or around any license plate which interferes with the legibility, angular visibility, or detectability of any feature or detail on the license plate number or validation sticker or interferes with the ability to record any feature or detail on the license plate number or validation sticker. A person who knowingly violates this section commits a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.

(2)   The use of a license plate frame or decorative border around a license plate is not an offense under this section, provided that the frame or border does not obscure the visibility of the following:

(a)   The alphanumeric designation or license plate number.

(b)   The registration decal or validation sticker located in the upper right corner.

Section 10.   Subsection (3) of section 320.084, Florida Statutes, is amended to read:

320.084   Free motor vehicle license plate to certain disabled veterans.

(3)   The department shall, as it deems necessary, require each person to whom a motor vehicle license plate has been issued pursuant to subsection (1) to apply to the department for reissuance of his or her registration license plate. Upon receipt of the application and proof of the applicant's continued eligibility, the department shall issue a new permanent disabled veteran motor vehicle license plate which shall be of the colors red, white, and blue similar to the colors of the United States flag. A disabled veteran who has been issued a permanent disabled veteran motor vehicle license plate may retain the unique alphanumeric designation assigned to the plate upon reissuance, renewal, or transfer of the plate to another vehicle owned by the veteran. The operation of a motor vehicle displaying a disabled veteran license plate from a previous issue period or a noncurrent validation sticker after the date specified by the department shall subject the owner if he or she is present, otherwise the operator, to the penalty provided in s. 318.18(2). Such permanent license plate shall be removed upon sale of the vehicle, but may be transferred to another vehicle owned by such veteran in the manner prescribed by law. Upon request of any such veteran, the department is

11
CODING: Words stricken are deletions; words underlined are additions.

authorized to issue a designation plate containing only the letters "DV," to be displayed on the front of the vehicle.

Section 11.   Section 320.0843, Florida Statutes, is amended to read:

320.0843   License plates for persons with disabilities eligible for permanent disabled parking permits.—

(1)   Any owner or lessee of a motor vehicle who resides in this state and qualifies for a disabled parking permit under s. 320.0848(2), upon application to the department, or the tax collector as an authorized agent of the department, and payment of the license tax for a motor vehicle registered under s. 320.08(2), (3)(a), (b), (c), or (e), (4)(a) or (b), (6)(a), or (9)(c) or (d), shall be issued a license plate as provided by s. 320.06 which, in lieu of or in addition to the serial number prescribed by s. 320.06, shall, at the option of the applicant, be stamped with the international wheelchair user symbol or the letters "DV" indicating a disabled veteran after the serial number of the license plate. The license plate entitles the person to all privileges afforded by a parking permit issued under s. 320.0848. When more than one registrant is listed on the registration issued under this section, the eligible applicant shall be noted on the registration certificate.

(2)   All applications for such license plates may must be made to the department or the tax collector, and such plates may be issued immediately on demand by the tax collector.

Section 12.   Paragraphs (c) and (d) of subsection (1) of section 320.262, Florida Statutes, are amended, and subsection (5) is added to that section, to read:

320.262   License plate obscuring device prohibited; penalties.—

(1)   As used in this section, the term "license plate obscuring device" means a manual, electronic, or mechanical device designed or adapted to be installed on a motor vehicle for the purpose of:

(c)   Covering, obscuring, or otherwise interfering with the legibility, angular visibility, or detectability of the primary features or details, including the license plate number or validation sticker, on the license plate; or

(d)   Interfering with the ability to record the primary features or details, including the license plate number or validation sticker, on the license plate.

(5)   The use of a license plate frame or decorative border device is not an offense under this section, provided that the device does not obscure the visibility of the following:

(a)   The alphanumeric designation or license plate number.

12
CODING: Words stricken are deletions; words underlined are additions.

(b)   The registration decal or validation sticker located in the upper right corner.

Section 13.   Subsection (16) and paragraph (a) of subsection (36) of section 320.64, Florida Statutes, are amended, and subsection (44) is added to that section, to read:

320.64   Denial, suspension, or revocation of license; grounds.—A license of a licensee under s. 320.61 may be denied, suspended, or revoked within the entire state or at any specific location or locations within the state at which the applicant or licensee engages or proposes to engage in business, upon proof that the section was violated with sufficient frequency to establish a pattern of wrongdoing, and a licensee or applicant shall be liable for claims and remedies provided in ss. 320.695 and 320.697 for any violation of any of the following provisions. A licensee is prohibited from committing the following acts:

(16)(a)   Notwithstanding the terms of any franchise agreement, the applicant or licensee prevents or refuses to accept the succession to any interest in a franchise agreement by any legal heir or devisee under the will of a motor vehicle dealer or under the laws of descent and distribution of this state; provided, the applicant or licensee is not required to accept a succession:

1.   When where such heir or devisee does not meet licensee's written, reasonable, and uniformly applied minimal standard qualifications for dealer applicants;

2.   or Which, after notice and administrative hearing pursuant to chapter 120, is demonstrated to be detrimental to the public interest or to the representation of the applicant or licensee; or

3.   When the direct result of such succession will cause the applicant or licensee to be in violation of subsection (44).

(b)   This subsection does not Nothing contained herein, however, shall prevent a motor vehicle dealer, during his or her lifetime, from designating any person as his or her successor in interest by written instrument filed with and accepted by the applicant or licensee. A licensee who rejects the successor transferee under this subsection shall have the burden of establishing in any proceeding where such rejection is in issue that the rejection of the successor transferee complies with this subsection.

(36)(a)   Notwithstanding the terms of any franchise agreement, in addition to any other statutory or contractual rights of recovery after the voluntary or involuntary termination, cancellation, or nonrenewal of a franchise, failing to pay the motor vehicle dealer, as provided in paragraph (d), the following amounts:

1.   The net cost paid by the dealer for each new motor vehicle other than motorcycles car or truck in the dealer's inventory with mileage of 2,000 miles

13
CODING: Words stricken are deletions; words underlined are additions.

or less, or <u>each new</u> <s>a</s> motorcycle <u>in the dealer's inventory</u> with mileage of 100 miles or less, exclusive of mileage placed on the <u>motor</u> vehicle before it was delivered to the dealer.

2.  The current price charged for each new, unused, undamaged, or unsold part or accessory that:

a.  Is in the current parts catalog and is still in the original, resalable merchandising package and in an unbroken lot, except that sheet metal may be in a comparable substitute for the original package; and

b.  Was purchased by the dealer directly from the manufacturer or distributor or from an outgoing authorized dealer as a part of the dealer's initial inventory.

3.  The fair market value of each undamaged sign owned by the dealer which bears a trademark or trade name used or claimed by the applicant or licensee or its representative which was purchased from or at the request of the applicant or licensee or its representative.

4.  The fair market value of all special tools, data processing equipment, and automotive service equipment owned by the dealer which:

a.  Were recommended in writing by the applicant or licensee or its representative and designated as special tools and equipment;

b.  Were purchased from or at the request of the applicant or licensee or its representative; and

c.  Are in usable and good condition except for reasonable wear and tear.

5.  The cost of transporting, handling, packing, storing, and loading any property subject to repurchase under this section.

<u>(44)(a)  The applicant or licensee has directly or indirectly distributed 1,000 or more motor vehicles of a particular line-make to motor vehicle dealers in this state during any 12-month period and has directly or indirectly distributed more than 33.33 percent of those same line-make motor vehicles during that 12-month period to one motor vehicle dealer or to multiple motor vehicle dealers that share common ownership or control. For purposes of this subsection, a motor vehicle dealer shares common owner-ship or control with another motor vehicle dealer if:</u>

<u>1.  It is directly or indirectly controlled by or has more than 30 percent of its equity interest directly or indirectly owned by another motor vehicle dealer; or</u>

<u>2.  It has more than 30 percent of its equity interest directly or indirectly controlled or owned by one or more persons who also directly or indirectly control or own more than 30 percent of the equity interests of another motor vehicle dealer.</u>

CODING: Words <s>stricken</s> are deletions; words <u>underlined</u> are additions.

(b)   This subsection does not apply to any line-make of motor vehicle for which there exists a licensed franchised dealer in this state as of January 1, 2026, or to an applicant or licensee who is not prohibited by s. 320.645 from owning or operating a motor vehicle dealership.

A motor vehicle dealer who can demonstrate that a violation of, or failure to comply with, any of the preceding provisions by an applicant or licensee will or may adversely and pecuniarily affect the complaining dealer, shall be entitled to pursue all of the remedies, procedures, and rights of recovery available under ss. 320.695 and 320.697.

Section 14.   Subsections (1) and (2) of section 320.643, Florida Statutes, are amended to read:

320.643   Transfer, assignment, or sale of franchise agreements.—

(1)(a)   Notwithstanding the terms of any franchise agreement, a licensee may shall not, by contract or otherwise, fail or refuse to give effect to, prevent, prohibit, or penalize or attempt to refuse to give effect to, prohibit, or penalize any motor vehicle dealer from selling, assigning, transferring, alienating, or otherwise disposing of its franchise agreement to any other person or persons, including a corporation established or existing for the purpose of owning or holding a franchise agreement, unless the licensee proves at a hearing pursuant to a complaint filed by a motor vehicle dealer under this section that the sale, transfer, alienation, or other disposition:

1.   Is to a person who is not, or whose controlling executive management is not, of good moral character;

2.   Is to a person who or does not meet the written, reasonable, and uniformly applied standards or qualifications of the licensee relating to financial qualifications of the transferee and business experience of the transferee or the transferee's executive management; or

3.   Would directly cause the licensee to be in violation of s. 320.64(44).

(b)   A motor vehicle dealer who desires to sell, assign, transfer, alienate, or otherwise dispose of a franchise shall notify, or cause the proposed transferee to notify, the licensee, in writing, setting forth the prospective transferee's name, address, financial qualifications, and business experience during the previous 5 years. A licensee who receives such notice may, within 60 days following such receipt, notify the motor vehicle dealer, in writing, that the proposed transferee is not a person qualified to be a transferee under this section and setting forth the material reasons for such rejection. Failure of the licensee to notify the motor vehicle dealer within the 60-day period of such rejection shall be deemed an approval of the transfer. No such transfer, assignment, or sale shall be valid unless the transferee agrees in writing to comply with all requirements of the franchise then in effect, but with the ownership changed to the transferee.

15
CODING: Words stricken are deletions; words underlined are additions.

(c)(b)   A motor vehicle dealer whose proposed sale is rejected may, within 60 days following such receipt of such rejection, file with the department a complaint for a determination that the proposed transferee has been rejected in violation of this section. The licensee has the burden of proof with respect to all issues raised by the complaint. The department shall determine, and enter an order providing, that the proposed transferee is either qualified or is not and cannot be qualified for specified reasons, or the order may provide the conditions under which a proposed transferee would be qualified. If the licensee fails to file such a response to the motor vehicle dealer's complaint within 30 days after receipt of the complaint, unless the parties agree in writing to an extension, or if the department, after a hearing, renders a decision other than one disqualifying the proposed transferee, the franchise agreement between the motor vehicle dealer and the licensee is deemed amended to incorporate such transfer or amended in accordance with the determination and order rendered, effective upon compliance by the proposed transferee with any conditions set forth in the determination or order.

(2)(a)   Notwithstanding the terms of any franchise agreement, a licensee may shall not, by contract or otherwise, fail or refuse to give effect to, prevent, prohibit, or penalize, or attempt to refuse to give effect to, prevent, prohibit, or penalize, any motor vehicle dealer or any proprietor, partner, stockholder, owner, or other person who holds or otherwise owns an interest therein from selling, assigning, transferring, alienating, or otherwise disposing of, in whole or in part, the equity interest of any of them in such motor vehicle dealer to any other person or persons, including a corporation established or existing for the purpose of owning or holding the stock or ownership interests of other entities, unless the licensee proves at a hearing pursuant to a complaint filed by a motor vehicle dealer under this section that the sale, transfer, alienation, or other disposition:

1.   Is to a person who is not, or whose controlling executive management is not, of good moral character; or

2.   Would directly cause the licensee to be in violation of s. 320.64(44).

(b)   A motor vehicle dealer, or any proprietor, partner, stockholder, owner, or other person who holds or otherwise owns an interest in the motor vehicle dealer, who desires to sell, assign, transfer, alienate, or otherwise dispose of any interest in such motor vehicle dealer shall notify, or cause the proposed transferee to so notify, the licensee, in writing, of the identity and address of the proposed transferee. A licensee who receives such notice may, within 60 days following such receipt, notify the motor vehicle dealer in writing that the proposed transferee is not a person qualified to be a transferee under this section and setting forth the material reasons for such rejection. Failure of the licensee to notify the motor vehicle dealer within the 60-day period of such rejection shall be deemed an approval of the transfer. Any person whose proposed sale of stock is rejected may file within 60 days of receipt of such rejection a complaint with the department alleging that the rejection was in violation of the law or the franchise agreement. The licensee

16
CODING: Words stricken are deletions; words underlined are additions.

has the burden of proof with respect to all issues raised by such complaint. The department shall determine, and enter an order providing, that the proposed transferee either is qualified or is not and cannot be qualified for specified reasons; or the order may provide the conditions under which a proposed transferee would be qualified. If the licensee fails to file a response to the motor vehicle dealer's complaint within 30 days of receipt of the complaint, unless the parties agree in writing to an extension, or if the department, after a hearing, renders a decision on the complaint other than one disqualifying the proposed transferee, the transfer shall be deemed approved in accordance with the determination and order rendered, effective upon compliance by the proposed transferee with any conditions set forth in the determination or order.

(c)(b) Notwithstanding paragraph (a), a licensee may not reject a proposed transfer of a legal, equitable, or beneficial interest in a motor vehicle dealer to a trust or other entity, or to any beneficiary thereof, which is established by an owner of any interest in a motor vehicle dealer for purposes of estate planning, if the controlling person of the trust or entity, or the beneficiary, is of good moral character.

Section 15.   Subsection (2) of section 320.95, Florida Statutes, is amended to read:

320.95   Transactions by electronic or telephonic means.—

(2)   The department may collect e-mail electronic mail addresses and use e-mail electronic mail in lieu of the United States Postal Service as a method of notification for the purpose of providing renewal notices.

Section 16.   Subsection (44) of section 322.01, Florida Statutes, is amended to read:

322.01   Definitions.—As used in this chapter:

(44)   "Tank vehicle" means a commercial motor vehicle that is designed to transport any liquid or gaseous material within one or more tanks that each have an individual rated capacity of more than 119 gallons and an aggregate rated capacity of 1,000 gallons or more and that are a tank either permanently or temporarily attached to the vehicle or chassis. The term does not include a commercial motor vehicle transporting an empty storage tank that is not designed for transportation but that is temporarily attached to a flatbed trailer, if such tank has a designed capacity of 1,000 gallons or more.

Section 17.   Paragraph (a) of subsection (1) of section 322.051, Florida Statutes, is amended to read:

322.051   Identification cards.—

(1)   Any person who is 5 years of age or older, or any person who has a disability, regardless of age, who applies for a disabled parking permit under

CODING: Words stricken are deletions; words underlined are additions.

s. 320.0848, may be issued an identification card by the department upon completion of an application and payment of an application fee.

(a)  The application must include the following information regarding the applicant:

1.  Full name (first, middle or maiden, and last), gender, proof of social security card number satisfactory to the department, which may include a military identification card, county of residence, mailing address, e-mail address, proof of residential address satisfactory to the department, country of birth, and a brief description.

2.  Proof of birth date satisfactory to the department.

3.  Proof of identity satisfactory to the department. Such proof must include one of the following documents issued to the applicant:

a.  A driver license record or identification card record from another jurisdiction that required the applicant to submit a document for identification which is substantially similar to a document required under sub-subparagraph b., sub-subparagraph c., sub-subparagraph d., sub-subparagraph e., sub-subparagraph f., sub-subparagraph g., or sub-subparagraph h.;

b.  A certified copy of a United States birth certificate;

c.  A valid, unexpired United States passport;

d.  A naturalization certificate issued by the United States Department of Homeland Security;

e.  A valid, unexpired alien registration receipt card (green card);

f.  A Consular Report of Birth Abroad provided by the United States Department of State;

g.  An unexpired employment authorization card issued by the United States Department of Homeland Security; or

h.  Proof of nonimmigrant classification provided by the United States Department of Homeland Security, for an original identification card. In order to prove nonimmigrant classification, an applicant must provide at least one of the following documents. In addition, the department may require applicants to produce United States Department of Homeland Security documents for the sole purpose of establishing the maintenance of, or efforts to maintain, continuous lawful presence:

(I)  A notice of hearing from an immigration court scheduling a hearing on any proceeding.

(II)  A notice from the Board of Immigration Appeals acknowledging pendency of an appeal.

18

CODING: Words stricken are deletions; words underlined are additions.

(III)    A notice of the approval of an application for adjustment of status issued by the United States Citizenship and Immigration Services.

(IV)    An official documentation confirming the filing of a petition for asylum or refugee status or any other relief issued by the United States Citizenship and Immigration Services.

(V)    A notice of action transferring any pending matter from another jurisdiction to Florida, issued by the United States Citizenship and Immigration Services.

(VI)    An order of an immigration judge or immigration officer granting relief that authorizes the alien to live and work in the United States, including, but not limited to, asylum.

(VII)    Evidence that an application is pending for adjustment of status to that of an alien lawfully admitted for permanent residence in the United States or conditional permanent resident status in the United States, if a visa number is available having a current priority date for processing by the United States Citizenship and Immigration Services.

(VIII)    On or after January 1, 2010, an unexpired foreign passport with an unexpired United States Visa affixed, accompanied by an approved I-94, documenting the most recent admittance into the United States.

An identification card issued based on documents required in sub-subparagraph g. or sub-subparagraph h. is valid for a period not to exceed the expiration date of the document presented or 1 year, whichever occurs first.

Section 18.    Subsection (1) of section 322.17, Florida Statutes, is amended to read:

322.17    Replacement licenses and permits.—

(1)(a)    In the event that an instruction permit or driver license issued under the provisions of this chapter is lost or destroyed, the person to whom the same was issued may, upon payment of the appropriate fee pursuant to s. 322.21, obtain a replacement upon furnishing proof satisfactory to the department that such permit or license has been lost or destroyed, and further furnishing the full name, date of birth, sex, residence and mailing address, e-mail address, proof of birth satisfactory to the department, and proof of identity satisfactory to the department.

(b)    In the event that an instruction permit or driver license issued under the provisions of this chapter is stolen, the person to whom the same was issued may, at no charge, obtain a replacement upon furnishing proof satisfactory to the department that such permit or license was stolen and further furnishing the full name, date of birth, sex, residence and mailing address, e-mail address, proof of birth satisfactory to the department, and proof of identity satisfactory to the department.

CODING: Words stricken are deletions; words underlined are additions.

Section 19.   Subsections (1), (2), (3), and (6) of section 322.251, Florida Statutes, are amended to read:

322.251   Notice of cancellation, suspension, revocation, or disqualification of license.—

(1)   All orders of cancellation, suspension, revocation, or disqualification issued under ~~the provisions of~~ this chapter, chapter 318, chapter 324, or ss. 627.732-627.734 <u>must</u> ~~shall~~ be given ~~either~~ by personal delivery ~~thereof~~ to the licensee whose license is being canceled, suspended, revoked, or disqualified<u>;</u> ~~or~~ by deposit in the United States mail in an envelope, first class, postage prepaid, addressed to the licensee at his or her last known mailing address furnished to the department<u>; or by e-mail notification if authorized by the licensee</u>. Such <u>methods of notification</u> ~~mailing~~ by the department <u>constitute notice</u> ~~constitutes notification~~, and any failure by the person to receive the ~~mailed~~ order <u>does</u> ~~will~~ not affect or stay the effective date or term of the cancellation, suspension, revocation, or disqualification of the licensee's driving privilege.

(2)   The giving of notice and an order of cancellation, suspension, revocation, or disqualification ~~by mail~~ is complete upon expiration of 20 days after <u>e-mail notification or</u> deposit in the United States mail for all notices except those issued under chapter 324 or ss. 627.732–627.734, which are complete 15 days after <u>e-mail notification or</u> deposit in the United States mail. Proof of the giving of notice and an order of cancellation, suspension, revocation, or disqualification in <u>such</u> ~~either~~ manner <u>must</u> ~~shall~~ be made by entry in the records of the department that such notice was given. The entry is admissible in the courts of this state and constitutes sufficient proof that such notice was given.

(3)   Whenever the driving privilege is suspended, revoked, or disqualified under ~~the provisions of~~ this chapter, the period of such suspension, revocation, or disqualification <u>must</u> ~~shall~~ be indicated on the order of suspension, revocation, or disqualification, and the department shall require the licensee whose driving privilege is suspended, revoked, or disqualified to surrender all licenses then held by him or her to the department. However, <u>if</u> ~~should~~ the person <u>fails</u> ~~fail~~ to surrender such licenses, the suspension, revocation, or disqualification period <u>does</u> ~~shall~~ not expire until a period identical to the period for which the driving privilege was suspended, revoked, or disqualified has expired after the date of surrender of the licenses, or the date an affidavit swearing such licenses are lost has been filed with the department. In any instance where <u>notice of</u> the suspension, revocation, or disqualification order is <u>given</u> ~~mailed~~ as provided herein, and the license is not surrendered to the department, and such license thereafter expires, the department <u>may</u> ~~shall~~ not renew that license until a period of time identical to the period of such suspension, revocation, or disqualification imposed has expired.

(6)   Whenever a cancellation, suspension, revocation, or disqualification occurs, the department shall enter the cancellation, suspension, revocation,

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

or disqualification order on the licensee's driver file 20 days after <u>e-mail notification or deposit</u> <s>the notice was actually placed</s> in the <u>United States</u> mail. Any inquiry into the file after the 20-day period shall reveal that the license is canceled, suspended, revoked, or disqualified and whether the license has been received by the department.

Section 20.   Paragraphs (a) and (i) of subsection (3) and paragraphs (b), (d), and (r) of subsection (7) of section 337.401, Florida Statutes, are amended to read:

337.401   Use of right-of-way for utilities subject to regulation; permit; fees.—

(3)(a)   Because of the unique circumstances applicable to providers of communications services, including, but not limited to, the circumstances described in paragraph (e) and the fact that federal and state law require the nondiscriminatory treatment of providers of telecommunications services, and because of the desire to promote competition among providers of communications services, it is the intent of the Legislature that municipalities and counties treat providers of communications services in a nondiscriminatory and competitively neutral manner when imposing rules or regulations governing the placement or maintenance of communications facilities in the public roads or rights-of-way. Rules or regulations imposed by a municipality or county relating to providers of communications services placing or maintaining communications facilities in its roads or rights-of-way must be generally applicable to all providers of communications services, taking into account the distinct engineering, construction, operation, maintenance, public works, and safety requirements of the provider's facilities, and, notwithstanding any other law, may not require a provider of communications services to apply for or enter into an individual license, franchise, or other agreement with the municipality or county as a condition of placing or maintaining communications facilities in its roads or rights-of-way. In addition to other reasonable rules or regulations that a municipality or county may adopt relating to the placement or maintenance of communications facilities in its roads or rights-of-way under this subsection or subsection (7), a municipality or county may require a provider of communications services that places or seeks to place facilities in its roads or rights-of-way to register with the municipality or county. To register, a provider of communications services may be required only to provide its name; the name, address, and telephone number of a contact person for the registrant; the number of the registrant's current certificate of authorization issued by the Florida Public Service Commission, the Federal Communications Commission, or the Department of State; a statement of whether the registrant is a pass-through provider as defined in subparagraph (6)(a)1.; the registrant's federal employer identification number; and any required proof of insurance or self-insuring status adequate to defend and cover claims. A municipality or county may not require a registrant to renew a registration more frequently than every 5 years but may require during this period that a registrant update the registration information provided under this subsection within 90 days after a change in such information. A

CODING: Words <s>stricken</s> are deletions; words <u>underlined</u> are additions.

municipality or county may not require the registrant to provide an inventory of communications facilities, maps, locations of such facilities, or other information by a registrant as a condition of registration, renewal, or for any other purpose; provided, however, that a municipality or county may require as part of a permit application that the applicant identify at-grade communications facilities within 50 feet of the proposed installation location for the placement of at-grade communications facilities. <u>A munici-pality or county may not require that a provider locate or perform a survey of any facilities except its own or any right-of-way boundary when requesting a permit consistent with chapter 556. If the owner of a facility fails to locate their facilities as required under chapter 556, a provider may proceed with the work but must use reasonable care and detection equipment or other acceptable means to avoid damaging existing underground facilities.</u> A municipality or county may not require a provider to pay any fee, cost, or other charge for registration or renewal thereof. <u>A municipality or county may not limit the number of permits in any way, including by project size or by limiting the number of open permits or applications, provided that the permit is closed out within 45 days after the provider's completion of work. A municipality or county may require the submission or maintenance of a bond or other financial instrument as set out in this section but may not require a cash deposit or other escrow, payment, or exaction as a condition of issuing a permit.</u> It is the intent of the Legislature that the placement, operation, maintenance, upgrading, and extension of communications facilities not be unreasonably interrupted or delayed through the permitting or other local regulatory process. Except as provided in this chapter or otherwise expressly authorized by chapter 202, chapter 364, or chapter 610, a municipality or county may not adopt or enforce any ordinance, regulation, or requirement as to the placement or operation of communications facilities in a right-of-way by a communications services provider authorized by state or local law to operate in a right-of-way; regulate any communications services; or impose or collect any tax, fee, cost, charge, or exaction for <u>the placement of communications facilities or</u> the provision of communications services over the communications services provider's communications facilities in a right-of-way.

(i)   Except as expressly provided in this section, this section does not modify the authority of municipalities and counties to levy the tax authorized in chapter 202 or the duties of providers of communications services under ss. 337.402-337.404. This section does not apply to ~~building permits,~~ pole attachments, ~~or~~ private roads, private easements, ~~and~~ private rights-of-way<u>, or building permits unrelated to the placement of communi-cations facilities</u>.

(7)

(b)   As used in <u>subsections (3)-(9)</u> ~~this subsection~~, the term:

1.   "Antenna" means communications equipment that transmits or receives electromagnetic radio frequency signals used in providing wireless services.

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

2. "Applicable codes" means uniform building, fire, electrical, plumbing, or mechanical codes adopted by a recognized national code organization or local amendments to those codes enacted solely to address threats of destruction of property or injury to persons, and includes the National Electric Safety Code and the 2017 edition of the Florida Department of Transportation Utility Accommodation Manual.

3. "Applicant" means a person who submits an application and is a wireless provider.

4. "Application" means a request submitted by an applicant to an authority for a permit to collocate small wireless facilities, or to place a new utility pole used to support a small wireless facility, or place other communications facilities. An authority's permit application form or process must include all required permissions, however designated, required by the authority to grant a permit to place communications facilities, including, but not limited to, right-of-way occupancy, building permits, electrical permits, or historic review.

5. "Authority" means a county or municipality having jurisdiction and control of the rights-of-way of any public road. The term does not include the Department of Transportation. Rights-of-way under the jurisdiction and control of the department are excluded from this subsection.

6. "Authority utility pole" means a utility pole owned by an authority in the right-of-way. The term does not include a utility pole owned by a municipal electric utility, a utility pole used to support municipally owned or operated electric distribution facilities, or a utility pole located in the right-of-way within:

a. A retirement community that:

(I) Is deed restricted as housing for older persons as defined in s. 760.29(4)(b);

(II) Has more than 5,000 residents; and

(III) Has underground utilities for electric transmission or distribution.

b. A municipality that:

(I) Is located on a coastal barrier island as defined in s. 161.053(1)(b)3.;

(II) Has a land area of less than 5 square miles;

(III) Has less than 10,000 residents; and

(IV) Has, before July 1, 2017, received referendum approval to issue debt to finance municipal-wide undergrounding of its utilities for electric transmission or distribution.

CODING: Words stricken are deletions; words underlined are additions.

7.   "Collocate" or "collocation" means to install, mount, maintain, modify, operate, or replace one or more wireless facilities on, under, within, or adjacent to a wireless support structure or utility pole. The term does not include the installation of a new utility pole or wireless support structure in the public rights-of-way.

8.   "FCC" means the Federal Communications Commission.

9.   "Micro wireless facility" means a small wireless facility having dimensions no larger than 24 inches in length, 15 inches in width, and 12 inches in height and an exterior antenna, if any, no longer than 11 inches.

10.   "Small wireless facility" means a wireless facility that meets the following qualifications:

a.   Each antenna associated with the facility is located inside an enclosure of no more than 6 cubic feet in volume or, in the case of antennas that have exposed elements, each antenna and all of its exposed elements could fit within an enclosure of no more than 6 cubic feet in volume; and

b.   All other wireless equipment associated with the facility is cumulatively no more than 28 cubic feet in volume. The following types of associated ancillary equipment are not included in the calculation of equipment volume: electric meters, concealment elements, telecommunications demarcation boxes, ground-based enclosures, grounding equipment, power transfer switches, cutoff switches, vertical cable runs for the connection of power and other services, and utility poles or other support structures.

11.   "Utility pole" means a pole or similar structure that is used in whole or in part to provide communications services or for electric distribution, lighting, traffic control, signage, or a similar function. The term includes the vertical support structure for traffic lights but does not include a horizontal structure to which signal lights or other traffic control devices are attached and does not include a pole or similar structure 15 feet in height or less unless an authority grants a waiver for such pole.

12.   "Wireless facility" means equipment at a fixed location which enables wireless communications between user equipment and a communications network, including radio transceivers, antennas, wires, coaxial or fiber-optic cable or other cables, regular and backup power supplies, and comparable equipment, regardless of technological configuration, and equipment associated with wireless communications. The term includes small wireless facilities. The term does not include:

a.   The structure or improvements on, under, within, or adjacent to the structure on which the equipment is collocated;

b.   Wireline backhaul facilities; or

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

c. Coaxial or fiber-optic cable that is between wireless structures or utility poles or that is otherwise not immediately adjacent to or directly associated with a particular antenna.

13. "Wireless infrastructure provider" means a person who has been certificated under chapter 364 to provide telecommunications service or under chapter 610 to provide cable or video services in this state, or that person's affiliate, and who builds or installs wireless communication transmission equipment, wireless facilities, or wireless support structures but is not a wireless services provider.

14. "Wireless provider" means a wireless infrastructure provider or a wireless services provider.

15. "Wireless services" means any services provided using licensed or unlicensed spectrum, whether at a fixed location or mobile, using wireless facilities.

16. "Wireless services provider" means a person who provides wireless services.

17. "Wireless support structure" means a freestanding structure, such as a monopole, a guyed or self-supporting tower, or another existing or proposed structure designed to support or capable of supporting wireless facilities. The term does not include a utility pole, pedestal, or other support structure for ground-based equipment not mounted on a utility pole and less than 5 feet in height.

(d) An authority may require a registration process and permit fees in accordance with subsection (3). An authority shall accept applications for permits and shall process and issue permits subject to the following requirements:

1. An authority may not directly or indirectly require an applicant to perform services unrelated to the collocation for which approval is sought, such as in-kind contributions to the authority, including reserving fiber, conduit, or pole space for the authority.

2. An applicant may not be required to provide more information to obtain a permit than is necessary to demonstrate the applicant's compliance with applicable codes for the placement of small wireless facilities in the locations identified in the application. An applicant may not be required to provide inventories, maps, or locations of communications facilities in the right-of-way other than as necessary to avoid interference with other at-grade or aerial facilities located at the specific location proposed for a small wireless facility or within 50 feet of such location.

3. An authority may not:

a. Require the placement of small wireless facilities on any specific utility pole or category of poles;

CODING: Words stricken are deletions; words underlined are additions.

b.   Require the placement of multiple antenna systems on a single utility pole;

c.   Require a demonstration that collocation of a small wireless facility on an existing structure is not legally or technically possible as a condition for granting a permit for the collocation of a small wireless facility on a new utility pole except as provided in paragraph (i);

d.   Require compliance with an authority's provisions regarding place-ment of <u>communications facilities, including</u> small wireless facilities or ~~a~~ new utility <u>poles</u> ~~pole~~ used to support ~~a~~ small wireless <u>facilities,</u> ~~facility~~ in rights-of-way under the control of the department unless the authority has received a delegation from the department for the location of the small wireless facility or utility pole~~;~~<u>,</u> or require such compliance as a condition to receive a permit that is ancillary to the permit for collocation of a small wireless facility, including an electrical permit;

e.   Require a meeting before filing an application;

f.   Require direct or indirect public notification or a public meeting for the placement of communication facilities in the right-of-way;

g.   Limit the size or configuration of a small wireless facility or any of its components, if the small wireless facility complies with the size limits in this subsection;

h.   Prohibit the installation of a new utility pole used to support the collocation of a small wireless facility if the installation otherwise meets the requirements of this subsection; ~~or~~

i.   Require that any component of a small wireless facility be placed underground except as provided in paragraph (i)<u>; or</u>

j.   <u>Require compliance with provisions regarding the placement of communications facilities, including small wireless facilities or new utility poles used to support small wireless facilities, in rights-of-way not owned and controlled by the authority and public utility easements that are within areas not owned and controlled by the authority unless a permit delegation agreement exists between the authority and the owner of the right-of-way or area that contains the public utility easement.</u>

4.   Subject to paragraph (r), an authority may not limit the placement, by minimum separation distances, of small wireless facilities, utility poles on which small wireless facilities are or will be collocated, or other at-grade communications facilities. However, within 14 days after the date of filing the application, an authority may request that the proposed location of a small wireless facility be moved to another location in the right-of-way and placed on an alternative authority utility pole or support structure or placed on a new utility pole. The authority and the applicant may negotiate the alternative location, including any objective design standards and reason-able spacing requirements for ground-based equipment, for 30 days after the

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

date of the request. At the conclusion of the negotiation period, if the alternative location is accepted by the applicant, the applicant must notify the authority of such acceptance and the application shall be deemed granted for any new location for which there is agreement and all other locations in the application. If an agreement is not reached, the applicant must notify the authority of such nonagreement and the authority must grant or deny the original application within 90 days after the date the application was filed. A request for an alternative location, an acceptance of an alternative location, or a rejection of an alternative location must be in writing and provided by electronic mail.

5.   An authority shall limit the height of a small wireless facility to 10 feet above the utility pole or structure upon which the small wireless facility is to be collocated. Unless waived by an authority, the height for a new utility pole is limited to the tallest existing utility pole as of July 1, 2017, located in the same right-of-way, other than a utility pole for which a waiver has previously been granted, measured from grade in place within 500 feet of the proposed location of the small wireless facility. If there is no utility pole within 500 feet, the authority shall limit the height of the utility pole to 50 feet.

6.   The installation by a communications services provider of a utility pole in the public rights-of-way, other than a utility pole used to support a small wireless facility, is subject to authority rules or regulations governing the placement of utility poles in the public rights-of-way.

7.   Within 14 days after receiving an application, an authority must determine and notify the applicant by electronic mail as to whether the application is complete. If an application is deemed incomplete, the authority must specifically identify the missing information. An application is deemed complete if the authority fails to provide notification to the applicant within 14 days.

8.   An application must be processed on a nondiscriminatory basis. A complete application is deemed approved if an authority fails to approve or deny the application within 60 days after receipt of the application. If an authority does not use the 30-day negotiation period provided in subparagraph 4., the parties may mutually agree to extend the 60-day application review period. The authority shall grant or deny the application at the end of the extended period. A permit issued pursuant to an approved application shall remain effective for 1 year unless extended by the authority.

9.   An authority must notify the applicant of approval or denial by electronic mail. An authority shall approve a complete application unless it does not meet the authority's applicable codes. If the application is denied, the authority must specify in writing the basis for denial, including the specific code provisions on which the denial was based, and send the documentation to the applicant by electronic mail on the day the authority denies the application. The applicant may cure the deficiencies identified by the authority and resubmit the application within 30 days after notice of the

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

denial is sent to the applicant. The authority shall approve or deny the revised application within 30 days after receipt or the application is deemed approved. The review of a revised application is limited to the deficiencies cited in the denial. If an authority provides for administrative review of the denial of an application, the review must be complete and a written decision issued within 45 days after a written request for review is made. A denial must identify the specific code provisions on which the denial is based. If the administrative review is not complete within 45 days, the authority waives any claim regarding failure to exhaust administrative remedies in any judicial review of the denial of an application.

10. An applicant seeking to collocate small wireless facilities within the jurisdiction of a single authority may, at the applicant's discretion, file a consolidated application and receive a single permit for the collocation of up to 30 small wireless facilities. If the application includes multiple small wireless facilities, an authority may separately address small wireless facility collocations for which incomplete information has been received or which are denied.

11. An authority may deny an application to collocate a small wireless facility or place a utility pole used to support a small wireless facility in the public rights-of-way if the proposed small wireless facility or utility pole used to support a small wireless facility:

a. Materially interferes with the safe operation of traffic control equipment.

b. Materially interferes with sight lines or clear zones for transportation, pedestrians, or public safety purposes.

c. Materially interferes with compliance with the Americans with Disabilities Act or similar federal or state standards regarding pedestrian access or movement.

d. Materially fails to comply with the 2017 edition of the Florida Department of Transportation Utility Accommodation Manual.

e. Fails to comply with applicable codes.

f. Fails to comply with objective design standards authorized under paragraph (r).

12. An authority may adopt by ordinance provisions for insurance coverage, indemnification, force majeure, abandonment, authority liability, or authority warranties. Such provisions must be reasonable and nondiscriminatory and apply to all providers of communications services, including, if applicable, any local government or nonprofit providers. An authority may require a construction bond to secure restoration of the postconstruction rights-of-way to the preconstruction condition. However, such bond must be time-limited to not more than 18 months after the construction to which the bond applies is completed, and such bond must be reasonably

28

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

related to the cost to secure restoration of the rights-of-way. An authority may not limit the number of permits allowed under the same bond. For any financial obligation required by an authority allowed under this section, the authority may not limit the number of permits in any way, including by project size or by limiting the number of applications or open permits, provided that the permit is closed out within 45 days after the provider's completion of work; may not impose additional requirements based on the scope or linear feet of the project; and shall accept, at the option of the applicant, a bond or a letter of credit or similar financial instrument issued by any financial institution that is authorized to do business within the United States and, provided that a claim against the financial instrument may be made by electronic means, including by facsimile. An authority may not require a deposit or escrow of cash as a condition of issuing a permit or compel the applicant to agree to any additional terms or agreements not specifically authorized by this act or directly related to the work set out in the application. A provider of communications services may add an authority to any existing bond, insurance policy, or other relevant financial instrument, and the authority must accept such proof of coverage without any conditions other than consent to venue for purposes of any litigation to which the authority is a party. An authority may not require a communications services provider to indemnify it for liabilities not caused by the provider, its agents, or its employees, including liabilities arising from the authority's negligence, gross negligence, or willful conduct by an unaffiliated third party.

13.   Collocation of a small wireless facility on an authority utility pole does not provide the basis for the imposition of an ad valorem tax on the authority utility pole.

14.   An authority may reserve space on authority utility poles for future public safety uses. However, a reservation of space may not preclude collocation of a small wireless facility. If replacement of the authority utility pole is necessary to accommodate the collocation of the small wireless facility and the future public safety use, the pole replacement is subject to make-ready provisions and the replaced pole shall accommodate the future public safety use.

15.   A structure granted a permit and installed pursuant to this subsection shall comply with chapter 333 and federal regulations pertaining to airport airspace protections.

(r)   An authority may require wireless providers to comply with objective design standards adopted by ordinance. The ordinance may only require:

1.   A new utility pole that replaces an existing utility pole to be of substantially similar design, material, and color;

2.   Reasonable spacing requirements concerning the location of a ground-mounted component of a small wireless facility which does not exceed 15 feet from the associated support structure; or

29
CODING: Words stricken are deletions; words underlined are additions.

3.   A small wireless facility to meet reasonable location context, color, camouflage, and concealment requirements, subject to the limitations in this subsection; and

4.   A new utility pole used to support a small wireless facility to meet reasonable location context, color, and material of the predominant utility pole type at the proposed location of the new utility pole.

Such design standards under this paragraph may be waived by the authority upon a showing that the design standards are not reasonably compatible for the particular location of a small wireless facility or utility pole or are technically infeasible or that the design standards impose an excessive expense. The waiver must be granted or denied within 45 days after the date of the request. An authority may not require landscaping, landscaping maintenance, or vegetation management other than that necessary for right-of-way restoration.

Section 21.   Paragraph (a) of subsection (8) of section 120.80, Florida Statutes, is amended to read:

120.80   Exceptions and special requirements; agencies.—

(8)   DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES.

(a)   *Driver licenses.*—

1.   Notwithstanding s. 120.57(1)(a), hearings regarding driver licensing pursuant to chapter 322 need not be conducted by an administrative law judge assigned by the division.

2.   Notwithstanding s. 120.60(5), cancellation, suspension, or revocation of a driver license shall be by personal delivery to the licensee or by first-class mail or e-mail as provided in s. 322.251.

Section 22.   Section 207.003, Florida Statutes, is amended to read:

207.003   Privilege tax levied.—A tax for the privilege of operating any qualified commercial motor vehicle upon the public highways of this state shall be levied upon every motor carrier at a rate which includes the minimum rates provided in parts I-III of chapter 206 on each gallon of diesel fuel or motor fuel used for the propulsion of a qualified commercial motor vehicle by such motor carrier within this the state.

Section 23.   Section 207.008, Florida Statutes, is amended to read:

207.008   Retention of records by motor carrier.—Each licensed registered motor carrier shall maintain and keep pertinent records and papers as may be required by the department for the reasonable administration of this chapter and shall preserve the records upon which each quarterly tax return is based for 4 years after following the due date or filing date of the return, whichever is later.

CODING: Words stricken are deletions; words underlined are additions.

Section 24.    Subsection (3) of section 207.011, Florida Statutes, is amended to read:

207.011    Inspection of records; hearings; forms; rules.—

(3)    The department, or any authorized agent thereof, may is authorized to examine the records, books, papers, and equipment of any motor carrier, any retail dealer of motor diesel fuels, and any wholesale distributor of diesel fuels or motor fuels which that are deemed necessary to verify the truth and accuracy of any statement, or report, or return and ascertain whether the tax imposed by this chapter has been paid.

Section 25.    Section 207.013, Florida Statutes, is amended to read:

207.013    Suits for collection of unpaid taxes, penalties, and interest.— Upon demand of the department, the Department of Legal Affairs or the state attorney for a judicial circuit shall bring appropriate actions, in the name of the state or in the name of the Department of Highway Safety and Motor Vehicles in the capacity of its office, for the recovery of taxes, penalties, and interest due under this chapter; and judgment shall be rendered for the amount so found to be due together with costs. However, if it is shall be found as a fact that such claim for, or grant of, an exemption or credit was willful on the part of any motor carrier, retail dealer, or distributor of diesel fuel or motor fuel, judgment must shall be rendered for double the amount of the tax found to be due with costs. The department may employ an attorney at law to institute and prosecute proper proceedings to enforce payment of the taxes, penalties, and interest provided for by this chapter and may fix the compensation for the services of such attorney at law.

Section 26.    Subsection (3) of section 207.014, Florida Statutes, is amended to read:

207.014    Departmental warrant for collection of unpaid taxes.—

(3)    In the event there is a contest or claim of any kind with reference to the property levied upon or the amount of taxes, costs, or penalties due, such contest or claim must shall be tried in the circuit court in and for the county in which the warrant was executed, as nearly as may be in the same manner and means as such contest or claim would have been tried in such court had the warrant originally issued upon a judgment rendered by such court. The warrant issued as provided in this section constitutes shall constitute prima facie evidence of the amount of taxes, interest, and penalties due to the state by the motor carrier,; and the burden of proof is shall be upon the motor carrier, retail dealer, or distributor of diesel fuel or motor fuel to show that the amounts or penalties were incorrect.

Section 27.    Subsections (1) and (3) of section 207.023, Florida Statutes, are amended to read:

31

207.023  Authority to inspect vehicles, make arrests, seize property, and execute warrants.—

(1)  As a part of their responsibility when inspecting qualified motor commercial vehicles, the Department of Highway Safety and Motor Vehicles, the Department of Agriculture and Consumer Services, and the Department of Transportation shall ensure that all vehicles are properly qualified under the provisions of this chapter.

(3)  Qualified commercial motor vehicles owned or operated by any motor carrier who refuses to comply with this chapter may be seized by authorized agents or employees of the Department of Highway Safety and Motor Vehicles, the Department of Agriculture and Consumer Services, or the Department of Transportation; or authorized agents and employees of any of these departments also may seize property as set out in ss. 206.205, 206.21, and 206.215. Upon such seizure, the property must shall be surrendered without delay to the sheriff of the county where the property was seized for further proceedings.

Section 28.   Subsections (1) and (6) of section 207.0281, Florida Statutes, are amended to read:

207.0281  Registration; Cooperative reciprocal agreements between states.—

(1)  The Department of Highway Safety and Motor Vehicles may enter into a cooperative reciprocal agreement, including, but not limited to, the International Fuel Tax fuel-tax Agreement, with another state or group of states for the administration of the tax imposed by this chapter. An agreement arrangement, declaration, or amendment is not effective until stated in writing and filed with the Department of Highway Safety and Motor Vehicles.

(6)  This section and the contents of any reciprocal agreement entered into under this section supersede all other fuel-tax requirements of this chapter for qualified commercial motor vehicles.

Section 29.   Paragraph (aa) of subsection (7) of section 212.08, Florida Statutes, is amended to read:

212.08  Sales, rental, use, consumption, distribution, and storage tax; specified exemptions.—The sale at retail, the rental, the use, the consumption, the distribution, and the storage to be used or consumed in this state of the following are hereby specifically exempt from the tax imposed by this chapter.

(7)  MISCELLANEOUS EXEMPTIONS.—Exemptions provided to any entity by this chapter do not inure to any transaction that is otherwise taxable under this chapter when payment is made by a representative or employee of the entity by any means, including, but not limited to, cash, check, or credit card, even when that representative or employee is

CODING: Words stricken are deletions; words underlined are additions.

subsequently reimbursed by the entity. In addition, exemptions provided to any entity by this subsection do not inure to any transaction that is otherwise taxable under this chapter unless the entity has obtained a sales tax exemption certificate from the department or the entity obtains or provides other documentation as required by the department. Eligible purchases or leases made with such a certificate must be in strict compliance with this subsection and departmental rules, and any person who makes an exempt purchase with a certificate that is not in strict compliance with this subsection and the rules is liable for and shall pay the tax. The department may adopt rules to administer this subsection.

(aa) Qualified motor certain commercial vehicles.—Also exempt is the sale, lease, or rental of a qualified commercial motor vehicle as defined in s. 207.002, when the following conditions are met:

1. The sale, lease, or rental occurs between two commonly owned and controlled corporations;

2. Such vehicle was titled and registered in this state at the time of the sale, lease, or rental; and

3. Florida sales tax was paid on the acquisition of such vehicle by the seller, lessor, or renter.

Section 30. Paragraphs (a) and (b) of subsection (4) of section 316.545, Florida Statutes, are amended to read:

316.545 Weight and load unlawful; special fuel and motor fuel tax enforcement; inspection; penalty; review.—

(4)(a) A commercial vehicle may not be operated over the highways of this state unless it has been properly licensed registered under s. 207.004. Whenever any law enforcement officer identified in s. 207.023(1), upon inspecting the vehicle or combination of vehicles, determines that the vehicle is in violation of s. 207.004, a penalty in the amount of $50 shall be assessed, and the vehicle may be detained until payment is collected by the law enforcement officer.

(b) In addition to the penalty provided for in paragraph (a), the vehicle may be detained until the owner or operator of the vehicle furnishes evidence that the vehicle has been properly licensed registered pursuant to s. 207.004. Any officer of the Florida Highway Patrol or agent of the Department of Transportation may issue a temporary fuel-use fuel use permit and collect the appropriate fee as provided for in s. 207.004(5) s. 207.004(4). Notwithstanding the provisions of subsection (6), all permit fees collected pursuant to this paragraph shall be transferred to the Department of Highway Safety and Motor Vehicles to be allocated pursuant to s. 207.026.

Section 31. Paragraph (a) of subsection (1) of section 318.15, Florida Statutes, is amended to read:

CODING: Words stricken are deletions; words underlined are additions.

318.15  Failure to comply with civil penalty or to appear; penalty.—

(1)(a)  If a person fails to comply with the civil penalties provided in s. 318.18 within the time period specified in s. 318.14(4), fails to enter into or comply with the terms of a penalty payment plan with the clerk of the court in accordance with ss. 318.14 and 28.246, fails to attend driver improvement school, or fails to appear at a scheduled hearing, the clerk of the court must notify the Department of Highway Safety and Motor Vehicles of such failure within 10 days after such failure. Upon receipt of such notice, the department must immediately issue an order suspending the driver license and privilege to drive of such person effective 20 days after the date the order of suspension is provided mailed in accordance with s. 322.251(1), (2), and (6). The order also must inform the person that he or she may contact the clerk of the court to establish a payment plan pursuant to s. 28.246(4) to make partial payments for court-related fines, fees, service charges, and court costs. Any such suspension of the driving privilege which has not been reinstated, including a similar suspension imposed outside of this state, must remain on the records of the department for a period of 7 years after from the date imposed and must be removed from the records after the expiration of 7 years after from the date it is imposed. The department may not accept the resubmission of such suspension.

Section 32.  Paragraph (b) of subsection (1) of section 319.35, Florida Statutes, is amended to read:

319.35  Unlawful acts in connection with motor vehicle odometer readings; penalties.—

(1)

(b)  It is unlawful for any person to knowingly provide false information on the odometer readings required pursuant to ss. 319.23(3) and 320.02(2)(d) 320.02(2)(b).

Section 33.  Subsection (3) of section 319.40, Florida Statutes, is amended to read:

319.40  Transactions by electronic or telephonic means.—

(3)  The department may collect e-mail electronic mail addresses and use e-mail electronic mail in lieu of the United States Postal Service as a method of notification. However, any notice regarding the potential forfeiture or foreclosure of an interest in property must be sent via the United States Postal Service.

Section 34.  Paragraph (b) of subsection (5) of section 320.03, Florida Statutes, is amended to read:

320.03  Registration; duties of tax collectors; International Registration Plan.—

CODING: Words stricken are deletions; words underlined are additions.

(5)

(b)   Upon a tax collector's request, the department may provide ancillary technology to integrate other tax collection systems used by tax collectors in order to provide tax collectors with data access and uniform interface functionalities for registration renewal transactions performed at a tax collector's office or online via a tax collector's website. The department shall prescribe the best manner of delivering the data access and uniform interface functionalities to tax collectors for the purpose of processing registration renewal transactions and shall provide the ability to record and process registration renewal transactions in the state system in real time and bulk data reporting for vehicle registrations, including each applicant's e-mail electronic mail address collected pursuant to s. 320.95. Such data and functionality may be used only for purposes of fulfilling the tax collector's statutory duties pursuant to this chapter, chapter 319, chapter 322, or chapter 328 and may not be resold or used for any other purpose. Such data access and uniform interface functionalities shall be developed no later than July 1, 2023. For the purposes of this paragraph, the term "registration renewal transactions" means issuance of motor vehicle, mobile home, and trailer registration certificates, registration license plates, and validation stickers.

Section 35.   Subsection (10) of section 322.08, Florida Statutes, is amended to read:

322.08   Application for license; requirements for license and identification card forms.—

(10)   The department may collect e-mail electronic mail addresses and use e-mail electronic mail in lieu of the United States Postal Service as a method of notification for the purpose of providing renewal notices.

Section 36.   Paragraph (a) of subsection (8) of section 322.18, Florida Statutes, is amended to read:

322.18   Original applications, licenses, and renewals; expiration of licenses; delinquent licenses.—

(8)   The department shall issue 8-year renewals using a convenience service without reexamination to drivers who have not attained 80 years of age. The department shall issue 6-year renewals using a convenience service when the applicant has satisfied the requirements of subsection (5).

(a)   If the department determines from its records that the holder of a license about to expire is eligible for renewal, the department must shall mail a renewal notice to the licensee at his or her last known address or provide a renewal notice to the licensee by e-mail notification at least, not less than 30 days before prior to the licensee's birthday. The renewal notice must shall direct the licensee to appear at a driver license office for in-person

CODING: Words stricken are deletions; words underlined are additions.

renewal or to transmit the completed renewal notice and the fees required by s. 322.21 to the department using a convenience service.

Section 37.    Subsection (4) of section 322.21, Florida Statutes, is amended to read:

322.21    License fees; procedure for handling and collecting fees.—

(4)    If the department determines from its records or is otherwise satisfied that the holder of a license about to expire is entitled to have it renewed, the department must shall mail a renewal notice to the licensee at his or her last known address or provide a renewal notice to the licensee by e-mail notification at least, within 30 days before the licensee's birthday. The licensee must shall be issued a renewal license, after reexamination, if required, during the 30 days immediately preceding his or her birthday upon presenting a renewal notice, his or her current license, and the fee for renewal to the department at any driver license examining office.

Section 38.    Subsection (3) and paragraph (a) of subsection (5) of section 322.245, Florida Statutes, are amended to read:

322.245    Suspension of license upon failure of person charged with specified offense under chapter 316, chapter 320, or this chapter to comply with directives ordered by traffic court or upon failure to pay child support in non-IV-D cases as provided in chapter 61 or failure to pay any financial obligation in any other criminal case.—

(3)    If the person fails to comply with the directives of the court within the 30-day period, or, in non-IV-D cases, fails to comply with the requirements of s. 61.13016 within the period specified in that statute, the depository or the clerk of the court must electronically notify the department of such failure within 10 days. Upon electronic receipt of the notice, the department shall immediately issue an order suspending the person's driver license and privilege to drive effective 20 days after the date the order of suspension is provided mailed in accordance with s. 322.251(1), (2), and (6). The order of suspension must also contain information specifying that the person may contact the clerk of the court to establish a payment plan pursuant to s. 28.246(4) to make partial payments for fines, fees, service charges, and court costs.

(5)(a)    When the department receives notice from a clerk of the court that a person licensed to operate a motor vehicle in this state under the provisions of this chapter has failed to pay financial obligations for any criminal offense other than those specified in subsection (1), in full or in part under a payment plan pursuant to s. 28.246(4), the department must suspend the license of the person named in the notice. The department shall provide mail an order of suspension in accordance with s. 322.251(1), (2), and (6), which must also contain information specifying that the person may contact the clerk of the court to establish a payment plan pursuant to s. 28.246(4) to make partial payments for fines, fees, service charges, and court costs.

CODING: Words stricken are deletions; words underlined are additions.

Section 39.    Subsections (3) and (5) of section 322.2615, Florida Statutes, are amended to read:

322.2615    Suspension of license; right to review.—

(3)   If the department determines that the license should be suspended pursuant to this section and if the notice of suspension has not already been served upon the person by a law enforcement officer or correctional officer as provided in subsection (1), the department shall issue a notice of suspension and, unless the notice is provided ~~mailed~~ pursuant to s. 322.251, a temporary permit that expires 10 days after the date of issuance if the driver is otherwise eligible.

(5)   After completion of the informal review, notice of the department's decision sustaining, amending, or invalidating the suspension of the driver license of the person whose license was suspended must be provided to such person. Such notice must be mailed to the person at the last known address shown on the department's records, mailed ~~or~~ to the address provided in the law enforcement officer's report if such address differs from the address of record, or e-mailed to the e-mail address furnished to the department within 21 days after the expiration of the temporary permit issued pursuant to subsection (1) or subsection (3).

Section 40.    Subsection (4) of section 322.2616, Florida Statutes, is amended to read:

322.2616    Suspension of license; persons under 21 years of age; right to review.—

(4)   If the department finds that the license of the person should be suspended under this section and if the notice of suspension has not already been served upon the person by a law enforcement officer or correctional officer as provided in subsection (2), the department must ~~shall~~ issue a notice of suspension and, unless the notice is provided ~~mailed~~ under s. 322.251, a temporary driving permit that expires 10 days after the date of issuance if the driver is otherwise eligible.

Section 41.    Subsection (3) of section 322.64, Florida Statutes, is amended to read:

322.64    Holder of commercial driver license; persons operating a commercial motor vehicle; driving with unlawful blood-alcohol level; refusal to submit to breath, urine, or blood test.—

(3)   If the department determines that the person arrested should be disqualified from operating a commercial motor vehicle pursuant to this section and if the notice of disqualification has not already been served upon the person by a law enforcement officer or correctional officer as provided in subsection (1), the department must ~~shall~~ issue a notice of disqualification and, unless the notice is provided ~~mailed~~ pursuant to s. 322.251, a temporary

CODING: Words ~~stricken~~ are deletions; words underlined are additions.

permit which expires 10 days after the date of issuance if the driver is otherwise eligible.

Section 42.  Subsection (1) of section 324.091, Florida Statutes, is amended to read:

324.091  Notice to department; notice to insurer.—

(1)  Each owner and operator involved in a crash or conviction case within the purview of this chapter shall furnish evidence of automobile liability insurance or motor vehicle liability insurance within 14 days after the date of providing the mailing of notice of crash by the department in the form and manner as it may designate. Upon receipt of evidence that an automobile liability policy or motor vehicle liability policy was in effect at the time of the crash or conviction case, the department shall forward to the insurer such information for verification in a method as determined by the department. The insurer shall respond to the department within 20 days after the notice whether or not such information is valid. If the department determines that an automobile liability policy or motor vehicle liability policy was not in effect and did not provide coverage for both the owner and the operator, it must shall take action as it is authorized to do under this chapter.

Section 43.  Paragraph (c) of subsection (1) of section 324.171, Florida Statutes, is amended to read:

324.171  Self-insurer.—

(1)  Any person may qualify as a self-insurer by obtaining a certificate of self-insurance from the department which may, in its discretion and upon application of such a person, issue said certificate of self-insurance when such person has satisfied the requirements of this section to qualify as a self-insurer under this section:

(c)  The owner of a commercial motor vehicle, as defined in s. 207.002 or s. 320.01 or a qualified motor vehicle as defined in s. 207.002, may qualify as a self-insurer subject to the standards provided for in subparagraph (b)2.

Section 44.  Subsection (3) of section 328.30, Florida Statutes, is amended to read:

328.30  Transactions by electronic or telephonic means.—

(3)  The department may collect e-mail electronic mail addresses and use e-mail electronic mail in lieu of the United States Postal Service as a method of notification for the purpose of providing renewal notices.

Section 45.  Paragraph (b) of subsection (1) of section 328.73, Florida Statutes, is amended to read:

328.73  Registration; duties of tax collectors.—

38
CODING: Words stricken are deletions; words underlined are additions.

(1)

(b)   Upon a tax collector's request, the department may provide ancillary technology to integrate other tax collection systems used by tax collectors in order to provide tax collectors with data access and uniform interface functionalities for registration renewal transactions performed at a tax collector's office or online via a tax collector's website. The department shall prescribe the best manner of delivering the data access and uniform interface functionalities to tax collectors for the purpose of processing registration renewal transactions and shall provide the ability to record and process registration renewal transactions in the state system in real time and bulk data reporting for vessel registrations, including each applicant's e-mail ~~electronic mail~~ address collected pursuant to s. 328.30. Such data and functionality may be used only for purposes of fulfilling the tax collector's statutory duties pursuant to this chapter, chapter 319, chapter 320, or chapter 322 and may not be resold or used for any other purpose. Such data access and uniform interface functionalities shall be developed no later than July 1, 2023. For the purposes of this paragraph, the term "registration renewal transactions" means vessel registration certificates, vessel numbers, and decals.

Section 46.   Section 627.7415, Florida Statutes, is amended to read:

627.7415   Commercial motor vehicles <u>and qualified motor vehicles</u>; additional liability insurance coverage.—Commercial motor vehicles~~,~~ as defined in ~~s. 207.002 or~~ s. 320.01 <u>and qualified motor vehicles as defined in s. 207.002</u>~~,~~ operated upon the roads and highways of this state <u>must</u> ~~shall~~ be insured with the following minimum levels of combined bodily liability insurance and property damage liability insurance in addition to any other insurance requirements:

(1)   Fifty thousand dollars per occurrence for a commercial motor vehicle <u>or qualified motor vehicle</u> with a gross vehicle weight of 26,000 pounds or more, but less than 35,000 pounds.

(2)   One hundred thousand dollars per occurrence for a commercial motor vehicle <u>or qualified motor vehicle</u> with a gross vehicle weight of 35,000 pounds or more, but less than 44,000 pounds.

(3)   Three hundred thousand dollars per occurrence for a commercial motor vehicle <u>or qualified motor vehicle</u> with a gross vehicle weight of 44,000 pounds or more.

(4)   All commercial motor vehicles <u>and qualified motor vehicles</u> subject to regulations of the United States Department of Transportation, 49 C.F.R. part 387, subparts A and B, and as may be hereinafter amended, <u>must</u> ~~shall~~ be insured in an amount equivalent to the minimum levels of financial responsibility as set forth in such regulations.

CODING: Words ~~stricken~~ are deletions; words <u>underlined</u> are additions.

A violation of this section is a noncriminal traffic infraction, punishable as a nonmoving violation as provided in chapter 318.

Section 47.   This act shall take effect October 1, 2026.

Approved by the Governor April 21, 2026.

Filed in Office Secretary of State April 21, 2026.

CODING: Words stricken are deletions; words underlined are additions.