**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**(MIAMI)**


GISELA CASTILLO RODRIGUEZ                    CASE NO.: 26-cv-21355-JAL

        Plaintiffs,

v.

MIAMI-DADE COUNTY, FLORIDA; ST.
LUCIE COUNTY SHERIFF'S OFFICE; CITY
OF WEST MIAMI, FLORIDA; CITY OF MIAMI
BEACH, FLORIDA; AND CITY OF NORTH
MIAMI BEACH, FLORIDA
_____/

### DEFENDANT ST. LUCIE COUNTY SHERIFF'S OFFICE'S
### MOTION TO DISMISS

The Defendant, ST. LUCIE COUNTY SHERIFF'S OFFICE, by and through undersigned

counsel, files this his Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

and 12(b)(7), and in support thereof would state as follows:

### BACKGROUND

Plaintiff Gisela Castilla Rodriguez challenges the facial constitutionality of F.S. § 320.061,

alleging that the statute is unconstitutionally vague and results in inconsistent enforcement among

Florida law enforcement agencies. [ECF 1]. Plaintiff resides in Miami-Dade County and alleges

that she has a license plate frame on her vehicle and "regularly drives through multiple counties."

Id. at ¶ 4. The Complaint does not allege that Plaintiff resides in, regularly travels through, or has

ever been stopped, cited, or threatened with enforcement by the St. Lucie County Sheriff's Office

("SLCSO").

As to SLCSO, the Complaint relies solely on generalized allegations concerning public

guidance or statements issued by SLCSO regarding its interpretation of F.S. § 320.061. Id. at ¶ 6.

Plaintiff nevertheless names SLCSO as a defendant based on alleged statewide disagreement over how § 320.061 is applied and seeks sweeping relief, including a declaration that the statute is facially unconstitutional, an injunction prohibiting its enforcement against any person in Florida, and an order vacating all prior statewide arrests, citations, and convictions under the statute. Id. at pgs. 6-12.

As an initial matter, SLCSO joins in and adopts Sections II, IV, V, and VI of Miami-Dade County's Motion to Dismiss [ECF No. 18] to the extent those arguments are applicable to SLCSO. Specifically, SLCSO adopts Miami-Dade County's arguments that declaratory relief is unwarranted and discretionary in light of subsequent legislative action (Section II); that Plaintiff's challenge based on alleged arbitrary or discriminatory enforcement is unripe (Section IV); that Plaintiff's request for statewide vacatur and expungement of criminal records is jurisdictionally improper and an impermissible attempt to obtain relief on behalf of non-parties (Section V); and that, at a minimum, dismissal or a stay is warranted given intervening legislative amendments that moot or substantially narrow Plaintiff's claims (Section VI).[1]

The Complaint otherwise should be dismissed as to SLCSO because it fails to allege facts establishing that Plaintiff has suffered a concrete injury traceable to SLCSO's conduct, or that the sweeping relief sought against SLCSO would redress her alleged harms. Moreover, Plaintiff's request for broad declaratory and injunctive relief is moot in light of the Legislature's subsequent amendment of section 320.061 clarifying the precise concerns that gave rise to Plaintiff claim.

---

[1] The Defendant SLCSO does not take these allegations and the relief sought by the Plaintiff lightly and is adopting these applicable arguments so as to not waste judicial efficiency and resources by regurgitating duplicative points already made by co-defendant Miami-Dade, merely for the sake of it.

Even if a live controversy existed, Plaintiff cannot satisfy the threshold requirements for relief because she does not allege, nor could she, that driving with a decorative license-plate frame is constitutionally protected conduct, and the prior version of F.S. 320.061 provided clear, objective standards and was not unconstitutionally vague as a matter of law. Finally, Plaintiff seeks statewide relief invalidating a state statute without naming indispensable parties responsible for statewide enforcement, including the Department of Highway Patrol, and State of Florida or the Attorney General, further requiring dismissal. For all of these independent reasons, the Complaint must be dismissed as to SLCSO.

WHEREFORE, it is respectfully requested that this Honorable Court grant Defendant SLCSO's Motion to Dismiss for the same reasons set forth by Miami-Dade in its Motion as outlined above, as well as the additional grounds as set forth in this instant Motion.

FURTHER, and in support of this Motion, Defendant SLCSO would refer this Honorable Court to the Memorandum of Law attached hereto and by reference made a part hereof.

## MEMORANDUM OF LAW

### I.      STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must state a claim for relief which is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). By way of a general proposition, a trial court, when considering a motion to dismiss, must accept all well pled allegations of the Complaint as being true. However, this does not apply to legal conclusions. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, does not suffice." Id. A "formulaic recitation of the elements of a cause of action" will not pass 12(b)(6) muster. Twombly, 550 U.S. at 555. Moreover, "conclusory

allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt. Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).

A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth--legal conclusions must be supported by factual allegations. The district court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement for relief. Randall v. Scott, 610 F.3d 701, 709-10 (11th Cir. 2010).

## II. PLAINTIFF SEEKS IMPERMISSIBLE UNIVERSAL RELIEF BEYOND THE COURT'S AUTHORITY

Plaintiff's lawsuit must be dismissed because the very relief she seeks is impermissibly broad as a matter of law. She asks this Court to declare F.S. § 320.061 facially unconstitutional, enjoin its enforcement against any person in the State of Florida, and vacate and expunge all prior arrests, citations, and convictions statewide. This is quintessential universal relief, which federal courts lack authority to grant. In Trump v. CASA, Inc., the Supreme Court recently and squarely rejected such remedies, holding that "district courts lack authority to prohibit enforcement of a law against anyone who is not a party to the lawsuit." Trump v. CASA, Inc.,  145 S. Ct. 2540, 2551 (2025). Judicial relief must be narrowly tailored to redress the injuries of the named plaintiff and may not be "more burdensome than necessary." Id. at 2548–52 (discussing Scott v. Donald, 165 U.S. 58 (1897)). "A universal injunction, or a nationwide (in this case, a statewide) injunction, is the now-common name for an injunction that prevents a state or the federal government from enforcing a law against both parties and non-parties." Henry v. Sheriff of Tuscaloosa Cnty., Alabama, 135 F.4th 1271, 1328 (11th Cir. 2025) (emphasis added). Plaintiff's requested relief barring enforcement of F.S. § 320.061 "against any person in the State of Florida" falls squarely within the category of relief condemned in CASA and therefore should be rejected and dismissed.

4

Plaintiff cannot evade these limits by labeling her request as declaratory relief. As CASA makes clear, declaratory judgments are constrained by the same Article III principles as injunctions and may not be used to bind non-parties or achieve the practical equivalent of a universal injunction. Id. at 2551–52. A declaration that § 320.061 is unconstitutional as to all persons statewide, coupled with an injunction and mass vacatur of past convictions, would operate indistinguishably from an impermissible universal injunction. Courts in this District have declined to issue declaratory judgments where doing so would extend beyond resolving the parties' dispute or would serve no useful purpose. Blue Hill Invs., Ltd. v. Silva, 2015 WL 9319394, at *3 (S.D. Fla. 2015). Here, a statewide declaration would neither bind non-party enforcement agencies nor lawfully erase a state statute from the books, and would only create confusion and inconsistent enforcement, thereby serving no useful purpose.

Even assuming Plaintiff could establish an injury, which she cannot, complete relief would require, at most, narrowly tailored prospective relief governing enforcement against Plaintiff alone by defendants with authority over her conduct. Plaintiff instead seeks an "indivisible, sweeping remedy" untethered to her own alleged exposure and extending to countless non-parties. CASA, 145 S. Ct. at 2565. The Supreme Court made clear that universal relief is permissible only where it would be "all but impossible to fully remedy the plaintiff's injury without binding non-parties." Id. Plaintiff has not come close to satisfying that demanding standard.

Plaintiff's demand that this Court vacate and expunge all statewide arrests, citations, and convictions is independently defective. Such relief seeks to vindicate the rights of third parties not before the Court, exceeds the Court's authority over state criminal judgments, and constitutes a paradigmatic universal remedy barred by CASA. A litigant may assert only her own legal rights, not those of others. Harris v. Evans, 20 F.3d 1118, 1121 (11th Cir. 1994); Warth v. Seldin, 422

5

U.S. 490, 498 (1975). Because Plaintiff neither satisfies the narrow requirements for third-party standing nor proceeds as a class action, her request for statewide vacatur and expungement must be dismissed with prejudice. At a minimum, Plaintiff's requests for statewide declaratory relief, a universal injunction, and mass vacatur must be stricken as legally unavailable. More fundamentally, because Plaintiff lacks Article III standing, dismissal of all claims against SLCSO is warranted.

## III.    PLAINTIFF FAILS TO MEET HER BURDEN AS TO STANDING

Plaintiff's claims against SLCSO must be dismissed under Rule 12(b)(1) because Plaintiff fails to establish Article III standing. Standing is a threshold jurisdictional requirement that must be satisfied as to each defendant, and the plaintiff bears the burden of alleging facts demonstrating standing with respect to each element. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992); McDonald v. City of Pompano Beach, 556 F. Supp. 3d 1334, 1347 (S.D. Fla. 2021). To establish standing in a pre-enforcement challenge, Plaintiff must plausibly allege: (1) an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury is fairly traceable to the challenged conduct of the defendant; and (3) that the injury is likely to be redressed by a favorable decision against that defendant. Lujan, 504 U.S. at 560–61; Corbett v. TSA, 930 F.3d 1225, 1232 (11th Cir. 2019). As will be discussed below, Plaintiff satisfies none of these requirements as to SLCSO.

*A. Threshold Requirement: No Constitutionally Protected Conduct Is Implicated*

To start, Plaintiff's vagueness claim fails at the threshold because the conduct she identifies—driving with a license-plate frame—is not constitutionally protected activity. The Eleventh Circuit has made clear that courts review statutes for vagueness only when a litigant alleges a constitutional harm. Indigo Room, Inc. v. City of Fort Myers, 710 F.3d 1294, 1301 (11th

6

Cir. 2013); Bankshot Billiards, Inc. v. City of Ocala, 634 F.3d 1340, 1349–50 (11th Cir. 2011). In pre-enforcement vagueness challenges such as this, that harm exists only where a plaintiff is chilled from engaging in otherwise constitutionally protected conduct. Indigo Room, 710 F.3d at 1350. Ordinary driving practices and the aesthetic use of license-plate frames do not implicate any constitutional right. As in Bankshot Billiards, where the court held that routine business activity was not constitutionally protected, Plaintiff's alleged "chill" from driving while using a decorative plate frame cannot establish the type of constitutional harm necessary to sustain a pre-enforcement vagueness challenge. Id. at 1350. Because Plaintiff has not identified any constitutionally protected activity that is allegedly chilled by F.S. § 320.061, she lacks the requisite injury-in-fact necessary to establish Article III standing, and her claim must be dismissed on that basis alone.

*B. Plaintiff Fails to Allege an Injury in Fact as to SLCSO*

In a pre-enforcement case, an injury in fact exists only if a plaintiff alleges both "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 159 (2014) (internal citations omitted); Wollschlaeger v. Governor, Fla., 848 F.3d 1293, 1304 (11th Cir. 2017). The Complaint does not allege that Plaintiff resides in St. Lucie County, regularly travels through St. Lucie County, or has ever been stopped, cited, warned, or threatened with enforcement by SLCSO. Nor does Plaintiff allege that SLCSO has directed any enforcement efforts toward her or that she faces a concrete risk of prosecution in St. Lucie County.

Instead, Plaintiff relies on generalized allegations of statewide enforcement activity by other agencies, and public statements allegedly reflecting SLCSO's interpretation of the statute. [ECF No 1 at pgs. 1-6]. However, these remote possibilities that a future injury may happen based

on purely hypothetical scenarios, most of which would not involve SLCSO and would not occur in St. Lucie County, based on a single statement by the agency, are not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments. Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir.1985). Indeed, the Supreme Court has repeatedly held that "[a]llegations of possible future injury are not sufficient" to establish standing. Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013) (quoting Whitmore v. Arkansas, 495 U.S. 149, 158 (1990)). That is because an injury must be "certainly impending," not merely "conceivable." Id. at 410. The Eleventh Circuit likewise holds that standing fails where the alleged injury depends on a speculative chain of future events, such as potential future travel, discretionary enforcement decisions, and purely hypothetical encounters with law enforcement. Baughcum v. Jackson, 92 F.4th 1024, 1034–35 (11th Cir. 2024) ("The result is that the chain of events that runs from the Commissioner to the enforcement of the challenged law is far too speculative."); Elend v. Basham, 471 F.3d 1199, 1205–09 (11th Cir. 2006). Accordingly, because Plaintiff's allegations rest on speculative and hypothetical future events, she has failed to plead either a concrete injury in fact or a credible threat of prosecution by SLCSO, and therefore lacks Article III standing to pursue her claims against this Defendant.

*C. Plaintiff's Alleged Injuries Are Not Fairly Traceable to SLCSO*

Even assuming Plaintiff could establish an injury in fact, the Complaint fails to plausibly allege that any such injury is fairly traceable to SLCSO, as required by Article III. To establish standing, a plaintiff must also show that her injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Lujan, 504 U.S. at 560. That requirement is likewise not satisfied here. The Complaint relies on alleged enforcement activity by other jurisdictions against other non-parties—including Miami-Dade County, and the Florida Highway Patrol, who is not a party,—to manufacture a purported

"credible threat" of enforcement. Those allegations do not involve SLCSO and therefore cannot be bootstrapped to establish traceability to SLCSO with respect to this Plaintiff.

As it relates to SLCSO specifically, Plaintiff identifies only a single generalized public statement regarding the statute. [ECF No. 1 at pg. 5 ¶ 6]. Critically, Plaintiff does not allege that SLCSO has cited her, or anyone similarly situated, that SLCSO has stopped her or anyone similarly situated, that SLCSO has threatened enforcement against her, or that she drives within SLCSO's jurisdiction under circumstances that would expose her to enforcement. This absence is dispositive. Traceability cannot rest on speculation that a particular defendant might enforce a statute at some unknown point in the future. That is precisely the case here. Plaintiff's theory rests on a speculative chain of contingencies: that she will encounter SLCSO deputies despite no allegation that she regularly travels through or is otherwise exposed to that jurisdiction; that those officers will interpret the statute in a particular way; and that they will then choose to enforce it against her based on unknown and discretionary factors. This theory is further undermined by the Complaint's lack of factual detail, as Plaintiff does not describe her license plate or frame in any meaningful way, nor does she allege how it would violate the statute. Instead, she offers only the conclusory assertion that her vehicle has a license plate frame and that she drives through multiple counties. [ECF No. 1 at pg. 4 ¶ 4]. This "attenuated chain" of hypothetical contingencies is insufficient to establish standing as a matter of law. Clapper. 133 S.Ct. at 1147–48. (rejecting standing where it rests on a speculative chain of possibilities). Accordingly, because Plaintiff likewise fails to allege facts showing that any purported injury in fact is fairly traceable to SLCSO, her claims against SLCSO must be dismissed for lack of standing.

D. *Plaintiff's Alleged Injuries Are Not Redressable by Relief Against SLCSO*

Plaintiff's claims also fail the redressability requirement, which demands a showing that it is "likely, as opposed to merely speculative," that the alleged injury will be remedied by a favorable decision against the defendant. Lujan, 504 U.S. at 561. Here, even if this Court were to enjoin SLCSO from enforcing § 320.061, Plaintiff would remain subject to enforcement by numerous non-party law enforcement agencies across Florida. Thus, Plaintiff's alleged injury—fear of arrest and prosecution while driving throughout multiple counties and Florida—would remain entirely intact. This defect is particularly acute here because Plaintiff seeks statewide relief, including an injunction against enforcement "against any person in the State of Florida" and the invalidation of all prior citations and convictions while failing to include the State of Florida or the Attorney General, as will be discussed further below. [ECF No. 1 at ¶ 2]. An order directed at SLCSO therefore cannot redress the sweeping harms Plaintiff alleges. Plaintiff is essentially seeking statewide relief invalidating a state statute without naming indispensable parties responsible for statewide enforcement, including the State of Florida or the Attorney General. A plaintiff cannot obtain effective or redressable relief against a local sheriff's office while omitting the state officials charged with enforcing and defending the statute statewide. See Jacobson v. Fla. Sec'y of State, 974 F.3d 1236, 1255 (11th Cir. 2020). To satisfy Article III's traceability and redressability requirements, Plaintiff would need to bring suit against the State, through the Attorney General or other appropriate state officials with a sufficient enforcement connection to the statute, rather than a local law enforcement agency with no authority to bind or control statewide enforcement. "That approach would have made for more defendants, but nothing prevented the [Plaintiff] from taking that course of action." Id.

Moreover, Plaintiff's reliance on enforcement actions taken against other motorists in other jurisdictions does not cure these defects. Article III requires a plaintiff to assert her own

legal rights and injuries, not those of third parties. <u>See</u> <u>Hollingsworth v. Perry</u>, 570 U.S. 693, 708 (2013); <u>Harris v. Evans</u>, 20 F.3d 1118, 1121 (11th Cir. 1994). The Dawson arrest, Miami-Dade citation data, and other anecdotal examples cited in the Complaint may reflect how other agencies have enforced the statute, but they say nothing about whether SLCSO will enforce the statute against this particular Plaintiff, or whether any such enforcement is imminent. [ECF No. 1 at pgs. 2-12].

## IV.   PLAINTIFF'S FAILURE TO NAME THE STATE OF FLORIDA/ATTORNEY GENERAL AND FLORIDA HIGHWAY PATROL REQUIRES DISMISSAL

Plaintiff seeks extraordinary relief invalidating Fla. Stat. § 320.061 and prohibiting its enforcement statewide, including vacatur and expungement of all arrests, citations, and convictions entered under the statute. Yet Plaintiff failed to name as defendants the State of Florida or the Florida Attorney General—the official with primary authority to defend the constitutionality of state statutes and to provide meaningful statewide redress. Plaintiff likewise failed to include the Florida Highway Patrol ("FHP"), a statewide law-enforcement agency with independent authority to enforce Florida traffic laws on state roads and highways, including § 320.061. Because any declaration or injunction issued in the absence of these entities would leave the statute fully enforceable by non-party state actors, Plaintiff's requested relief cannot be completed or made effective, independently requiring dismissal under Rules 12(b)(1) and 12(b)(7).

Rule 19(a) requires joinder of parties whose absence prevents the Court from according complete relief or whose interests would be impaired by disposition of the action in their absence. <u>Laker Airways, Inc. v. Brit. Airways, PLC</u>, 182 F.3d 843, 847 (11th Cir. 1999); <u>Focus on the Family v. Pinellas Suncoast Transit Auth.</u>, 344 F.3d 1263, 1279 (11th Cir. 2003). Here, Plaintiff's own allegations make clear that the constitutionality and statewide enforceability of § 320.061 are the central issues in dispute, rendering the State of Florida, the Attorney General, and FHP

indispensable parties who "emerge as active participants" in the relief sought. Haas v. Jefferson Nat'l Bank, 442 F.2d 394, 398 (5th Cir. 1971).

The second step under Rule 19 is to determine if the indispensable and absent party's joinder is not feasible—*i.e.*, joinder would defeat the court's subject-matter jurisdiction, the absent party is not subject to the court's personal jurisdiction, or the absent party properly objects to the venue of the action—at which point the court must then consider if, "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). The factors for the court to consider for such a determination include:(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder. Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1344 (11th Cir. 2011). The only potential issue as to the feasibility of joining these absent parties is that these absent parties may have a valid objection as to venue, since any lawsuit brought against them in Federal court is properly brought in the Northern District of Florida. Otherwise, since joinder of the other remaining absent parties is presumably feasible, the Defendant Sheriff may at most request that the Court order these absent parties to join as a necessary party under Rule 19(a)(2) and dismiss this Complaint without prejudice until such time as the Plaintiff has rectified this deficiency. See Moreiras v. Scottsdale Ins. Co., 2020 WL 2084851, at *3 (S.D. Fla. 2020). Because a judgment rendered in their absence would prejudice these unnamed parties' interests, risk inconsistent enforcement, and fail to afford complete and adequate

12

relief, dismissal is required under Rule 19. At a minimum, Plaintiff's claims against SLCSO must be dismissed without prejudice unless and until these indispensable state actors are joined.[2]

## V. PLAINTIFF'S CLAIMS ARE MOOT IN LIGHT OF THE FLORIDA LEGISLATURE'S AMENDMENT OF F.S. 320.061

Plaintiff's constitutional challenge to F.S. § 320.061 is moot because the Florida Legislature has enacted amendments that eliminate the very concerns that form the basis of Plaintiff's claim. [See ECF No. 25]. Article III limits federal jurisdiction to actual, ongoing cases or controversies. When intervening events remove the plaintiff's legally cognizable interest in the outcome, the case becomes moot and must be dismissed. Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1328 (11th Cir. 2004). Claims for declaratory and injunctive relief are inherently prospective. A case becomes moot when "a subsequent law brings the existing controversy to an end." Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1310 (11th Cir. 2000); see also Nat'l Advert. Co. v. City of Miami, 402 F.3d 1329, 1332 (11th Cir. 2005).

After Plaintiff filed this lawsuit, the Florida Legislature enacted SB 488, which was approved by the Governor and codified as Chapter 2026-39, Laws of Florida. [ECF No. 25]. The amendment expressly provides that the use of license-plate frames or decorative borders is not an offense so long as the alphanumeric designation and registration decal remain visible—the precise clarification Plaintiff seeks. Additionally, deciding constitutional questions about a statute that the

---

[2] This argument is necessarily reached only if Plaintiff were able to overcome SLCSO's independent jurisdictional and pleading deficiencies, including lack of standing, mootness, and impermissibly overbroad relief. However, even assuming arguendo that those threshold defects do not compel dismissal, Plaintiff's failure to join the State of Florida or the Attorney General, and FHP as indispensable parties would independently require dismissal under Rule 12(b)(7).

legislature has already corrected through the democratic process, would produce nothing more than an advisory opinion about a soon-to-be-obsolete law, precisely what Article III forbids. Al Najjar v. Ashcroft, 273 F.3d 1330, 1336 (11th Cir. 2001); Socialist Workers Party v. Leahy, 145 F.3d 1240, 1244 (11th Cir. 1998); see also Balarezo Fam. Chiropractic, LLC v. State Farm Mut. Auto. Ins. Co., 2024 WL 1343178, at *14 (S.D. Fla. Feb. 12, 2024) (lawsuit seeking declaratory relief, asking that the court rule on the viability of a hypothetical claim which may never be brought, and an affirmative defense that may never be asserted, was asking the court to issue an advisory opinion). Moreover, Federal courts "are under no compulsion to exercise" declaratory jurisdiction, especially where legislative action has resolved the underlying dispute. Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494 (1942); Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995). Issuing declaratory or injunctive relief here—directed at a statute that has already been amended—would serve no useful purpose and would risk inconsistent guidance during the brief transition period before the amendment's effective date.

Finally, Plaintiff cannot avoid mootness by speculating about hypothetical enforcement during the period before October 1, 2026, when the law would take effect. "Consistent with the "cases" and "controversies" requirement of Article III, the Declaratory Judgment Act, 28 U.S.C. § 2201, specifically provides that a declaratory judgment may be issued only in the case of an "actual controversy." Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1347 (11th Cir. 1999) (citing Emory v. Peeler, 756 F.2d 1547, 1551–52 (11th Cir.1985)). "Based on the facts alleged, there must be a substantial continuing controversy between two adverse parties." Id. "Whether such a controversy exists is determined on a case-by-case basis." Miccosukee Tribe of Indians of FL v. United States, 420 F. Supp. 2d 1324, 1342 (S.D. Fla. 2006). As the Eleventh Circuit explained in Atlanta Gas Light Co.

> For a controversy to exist, the facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. The party who invokes a federal court's authority must show, at an "irreducible minimum," that at the time the complaint was filed, he has suffered some actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition.

Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co., 68 F.3d 409, 414 (11th Cir. 1995) (internal citations and quotations omitted). This requires that the Plaintiff allege facts from which the continuation of the dispute may be reasonably inferred. Malowney 193 F.3d at 1342, 1347. "Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." Id. Claims for injunctive and declaratory relief are prospective in nature and are intended to prevent future injuries. Smith v. Allen, 502 F.3d 1255, 1267 (11th Cir. 2007), *abrogated on other grounds by* Sossamon v. Texas, 563 U.S. 277 (2011); Adler v. Duval County Sch. Bd., 112 F.3d 1475, 1477 (11th Cir. 1997).

"When the threat of future harm dissipates, the plaintiff's claims for equitable relief become moot because the plaintiff no longer needs protection from future injury." Adler, 112 F.3d at 1477. Even assuming arguendo that Plaintiff previously had standing to challenge F.S. § 320.061, subsequent developments have removed any cognizable injury. Put another way, because Plaintiff can no longer demonstrate a real and immediate risk of arrest or prosecution under F.S. § 320.061, she lacks the concrete and particularized injury necessary to establish standing under Article III, and this Court lacks subject matter jurisdiction to hear her claims. Lockridge v. City of Oldsmar, Fla., 475 F. Supp. 2d 1240, 1244 (M.D. Fla. 2007) (intervening change in controlling law limited plaintiff's standing to bring challenge). Where, as here, the Legislature has unmistakably spoken

15

and resolved the issue prospectively, any remaining controversy is too abstract and contingent to support federal jurisdiction.

## VI.   PLAINTIFF'S VAGUENESS CHALLENGE FAILS AS A MATTER OF LAW

Plaintiff alleges that F.S. § 320.061 is unconstitutionally vague on its face. That claim fails as a matter of law. The statute provided clear notice of what conduct is prohibited and contains an obvious core of proscribed conduct. Plaintiff's vagueness theory rests on disagreement with enforcement outcomes and speculative hypotheticals, neither of which can sustain a facial vagueness challenge.

*A. Governing Vagueness Standards*

The vagueness doctrine is concerned with two related but distinct issues: whether a law provides adequate notice of the prohibited conduct, and whether it encourages arbitrary or discriminatory enforcement. Beckles v. United States, 137 S. Ct. 886, 894 (2017); Chicago v. Morales, 527 U.S. 41, 56–57 (1999). A statute provides constitutionally sufficient notice if it "give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). Vagueness arises only when a statute is so unclear that "persons of common intelligence must necessarily guess at its meaning and differ as to its application." Indigo Room, 710 F.3d at 1301. Importantly, the vagueness inquiry looks solely to the language of the statute itself, not to alleged enforcement disagreements or hypothetical edge cases. Id. at 1302. And where, as here, the challenged law implicates no constitutionally protected conduct, a facial vagueness challenge may succeed only if the statute is impermissibly vague in all its applications. Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495–96 (1982); Hershey v. City of Clearwater, 834 F.2d 937, 940 (11th Cir. 1987). Thus, to prevail, Plaintiff must show that § 320.061 is "utterly devoid of a standard of conduct", has no

16

valid core whatsoever, and cannot be validly applied to any conduct, a demanding standard Plaintiff cannot meet. Indigo Room, 710 F.3d at 1302; SisterSong Women of Color Reprod. Just. Collective v. Governor of Ga., 40 F.4th 1320, 1327 (11th Cir. 2022). Moreover, "[w]hen the statute is clear and unambiguous, [Florida] courts will not look behind [its] plain language for legislative intent." Robbins v. Garrison Prop. & Cas. Ins. Co., 809 F.3d 583, 586 (11th Cir. 2015) (quoting Daniels v. Fla. Dep't of Health, 898 So.2d 61, 64 (Fla.2005).

*B. F.S. § 320.061 Is Clear on Its Face and Provides Adequate Notice*

F.S. § 320.061, as written before being amended, plainly prohibited applying or attaching any material to or around a license plate that interferes with the legibility, angular visibility, or detectability of any feature or detail of the plate. These are common, ordinary terms that require no technical definition to be understood by a person of reasonable intelligence. The Supreme Court has made clear that "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." Grayned, 408 U.S. at 110. That reality does not render a statute vague. Courts routinely uphold statutes using general terms where the prohibited conduct is readily understandable in the vast majority of applications. Hill v. Colorado, 530 U.S. 703, 732–33 (2000). Here, the statute's core meaning is unmistakable: drivers may not obscure any part of their license plate such that it cannot be readily seen or read. At minimum, the statute unquestionably and validly applies to conduct that blocks, covers, or interferes with visibility of a plate's identifying information. Because persons of reasonable intelligence can derive that core meaning, facial invalidity is foreclosed. SisterSong, 40 F.4th at 1327.

*C. Florida Courts Have Repeatedly Rejected Vagueness Challenges to Similar Statutes*

Florida courts have previously rejected vagueness challenges to materially similar license plate statutes, confirming that provisions requiring plates to remain visible and unobstructed

17

provide constitutionally sufficient notice. Those decisions apply with equal force here and are persuasive. In State v. Pena, the Third District acknowledged the widespread use of license plate frames but nonetheless held that the Legislature "clearly and unambiguously" prohibited obscuring specified portions of a plate and that courts are bound to enforce the statute as written. State v. Pena, 247 So. 3d 61, 64 (Fla. 3d DCA 2018). Likewise, in English v. State, the Florida Supreme Court upheld § 316.605—similarly requiring that license plates be plainly visible and unobstructed—as "clear and unambiguous," and found that there is no constitutional ambiguity where the statutory text itself is straightforward. English v. State, 191 So. 3d 448, 449 (Fla. 2016).

In State v. Morris, the Fourth District applied similar statute § 316.605(1) and reiterated that it does not distinguish between obstructions affixed to the plate and those external to it, reaffirming the Florida Supreme Court's holding in English. State v. Morris, 270 So. 3d 436, 439 (Fla. 4th DCA 2019). The court focused on the operative statutory standard—whether the plate's identifying features were "plainly visible and legible" from the required distance—and held that, because the letters and identifying information were in fact readable within 100 feet, no violation occurred. Id. Critically, Morris did not question the clarity of the statute; instead, it treated the provision as clear and applied it to the facts presented. This highlights that license plate statutes like § 316.605—and by extension § 320.061—provide a definite, objective standard: whether any material interferes with the visibility or legibility of the plate's identifying features.

Lastly, in Baker v. State, the Fifth District rejected an ambiguity challenge to § 316.605, holding that statutory language requiring license plates to be "clear and distinct" and "plainly visible and legible" is sufficiently definite on its face and requires no further construction. Baker v. State 164 So. 3d 151, 154–55 (Fla. 5th DCA 2015). ("Here, we look to the portion of the statute that the vehicle's license tag must be "display[ed] ... in such manner ... [that] the alphanumeric

18

designation shall be clear and distinct and free from defacement, mutilation, grease, and other obscuring matter, so that they will be plainly visible and legible **at all times 100 feet from the rear or front.**" § 316.605(1), Fla. Stat. (emphasis added). In our view, the Legislature's intent could not be more clear: the tag's alphanumerical designation must be displayed and visible within 100 feet.").

F.S. 320.061 employs the same type of straightforward, non-technical language, prohibiting any material that interferes with the "legibility, angular visibility, or detectability" of any license plate feature. Like the statute addressed in Baker, it conveys a clear and intelligible standard of conduct that an ordinary person can readily understand, namely, that a license plate must not be covered or altered in a way that impairs its readability or visibility. An ordinary person readily understands that placing a frame or covering over a license plate in a manner that blocks or obscures any part of it, or impairs its readability or ability to be recorded, falls within the statute's prohibition. Therefore, consistent with the findings and analysis outlined in *Pena*, *English*, *Morris, and Baker,* F.S. § 320.061's straightforward prohibition on interference with license plate visibility is sufficiently clear to satisfy due process and is not unconstitutionally vague.

## VII.  THERE IS NO SUCH LEGAL ENTITY AS THE ST. LUCIE COUNTY SHERIFF'S OFFICE

There is no such legal entity as the St. Lucie Sheriff's Office liable at law for any action taken by the Sheriff, either in his individual or official capacity, or such deputies as may be employed by him. See Article VIII, Section 1(D), Florida Constitution; F.S. Section 768.28(9)(a); Parker v. Robertson, 360 So.2d 785 (2nd DCA 1978); Ruff v. Wells, 504 So.2d 16 (2nd DCA 1987). No cause of action can be maintained as against the St. Lucie County Sheriff's Office, since the St. Lucie County Sheriff's Office, is not a legal entity and is not otherwise sui juris.  Faulkner v.

Monroe County Sheriff's Dept., 523 Fed. Apex 696 (11th Cir. 2013).  Without conceding that any governmental entity is liable, to the extent that a suit can be brought such suit is properly brought as against the named office holder, in his official capacity.

For those forgoing reasons, Defendant's Motion to Dismiss should be granted.

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that on this 28th day of April an accurate copy of this document was electronically served upon all counsel of record through the CM/ECF Portal or another authorized means.

*/s/ Andrew W. Jolly*
ANDREW W. JOLLY, ESQUIRE
Fla. Bar No. 1032793
PURDY, JOLLY, GIUFFREDA, BARRANCO & JISA, P.A.
2455 E. Sunrise Boulevard, Suite 1216
Fort Lauderdale, Florida 33304
Telephone:(954) 462-3200
E-mail: Andrew@purdylaw.com
          Cecilia@purdylaw.com
Attorney *for Defendant St. Lucie County Sheriff's Office.*