**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:26-cv-21355-JAL**

**GISELA CASTILLA RODRIGUEZ,**

*Plaintiff,*

v.

**ROSIE CORDERO-STUTZ,** *in her official capacity as Sheriff of Miami-Dade County, Florida;* **RICHARD DEL TORO,** *in his official capacity as Sheriff of St. Lucie County, Florida;* **CITY OF WEST MIAMI, FLORIDA; CITY OF MIAMI BEACH, FLORIDA;** and **CITY OF NORTH MIAMI BEACH, FLORIDA,**

*Defendants.*

_____/

## FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.      This is a case about a Florida mother who, every day she drives her car, faces a credible threat of misdemeanor arrest, jail, and a permanent criminal record under Florida Statutes § 320.061 — a vague criminal statute that the Florida Legislature has unanimously voted to repair and that the Florida Department of Highway Safety and Motor Vehicles has expressly disclaimed. Plaintiff Gisela Castilla Rodriguez is a wife, a mother, and a United States citizen who lives, works, and raises her children in Miami-Dade County, Florida. Her car is registered with the State of Florida. Its license plate is enclosed within a standard decorative frame installed by Vera, a Florida automobile dealership, at the time of purchase. The Vera frame fully covers two words at the bottom of the plate — "Sunshine State." It does not cover the alphanumeric plate identifier. It does

1

not cover the registration decal. Millions of Florida vehicles bear materially identical dealer-issued frames.

2.     Plaintiff brings this action under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201–2202 because the State of Florida has now expressly confirmed her conduct is lawful, while the five Florida law enforcement entities named as Defendants continue to enforce § 320.061 against her, and against drivers like her, every day. Section 320.061, as enacted by House Bill 253 and as in effect from October 1, 2025 through September 30, 2026, makes it a second-degree misdemeanor — punishable by up to sixty days' incarceration and a $500 fine — to apply or attach material to a license plate that "interferes with the legibility, angular visibility, or detectability of any feature or detail" of the plate. The relief Plaintiff seeks is straightforward: a declaration that § 320.061, as in effect through September 30, 2026, is unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment, and an injunction prohibiting Defendants from enforcing the unamended statute against her during the five months the Florida Legislature has chosen to leave its acknowledged constitutional defect on the books.

3.     The Florida Legislature has effectively endorsed Plaintiff's position. On April 21, 2026, the Governor of Florida signed Chapter 2026-39, Laws of Florida, which strikes the very phrase Plaintiff challenges — "any feature or detail" — out of Florida Statutes Section 320.061 and replaces it with a far narrower prohibition that protects only the "alphanumeric designation" of the license plate and the "registration decal or validation sticker" affixed to it. And Miami-Dade County, Florida — a defendant in the original Complaint, now dropped from this Amended Complaint and replaced by Defendant Sheriff Cordero-Stutz — admitted as much in its motion to dismiss. The County characterized Chapter 2026-39 as doing "precisely what Plaintiff seeks." [ECF No. 18] at 6.

2

4.      The Florida Legislature, however, did not make Chapter 2026-39 effective immediately. The amended statute takes effect on October 1, 2026 — five months from the date of this Amended Complaint. Until that date, the unamended version of § 320.061 — including the "any feature or detail" language Plaintiff challenges and that Defendants concede the Legislature has unanimously voted to strike — remains in full force.

5.      And Defendants are continuing to enforce it. Aggressively. Between December 13, 2025 — the day after the Florida Department of Highway Safety and Motor Vehicles ("FLHSMV") issued emergency guidance to all Florida law enforcement agencies confirming that frames like Plaintiff's are lawful — and April 27, 2026, Florida law enforcement agencies issued at least 601 criminal citations under § 320.061. Of those 601 citations, the Defendants named in this action issued 330: the Miami-Dade Sheriff's Office (213), the City of Miami Beach Police Department (95), the City of West Miami Police Department (15), and the City of North Miami Beach Police Department (7). Eighty of those Defendant-issued citations were issued after this lawsuit was filed on February 27, 2026. Forty-nine of those post-filing citations are attributable to the Miami-Dade Sheriff's Office alone.

6.      The question this Court must therefore confront is narrow and immediate: why are these Defendants continuing — daily — to enforce a provision of the criminal law that the Florida Legislature has unanimously voted to strike and that the FLHSMV has expressly disclaimed?

7.      The answer cannot be that Defendants are reading § 320.061 the way the Legislature has now expressly required. If they were, they would have stopped citing drivers whose vehicle frames leave the alphanumeric plate identifier and registration decal fully visible. The data prove they have not. The answer is, instead, that the unamended statute — by virtue of its operative phrase "any feature or detail" — is so indeterminate that Defendants and their officers cannot agree

3

on what it forbids. The unanimous legislative correction confirms what the citation data already show: § 320.061's "any feature or detail" prohibition is too vague to support criminal prosecution under the Due Process Clause of the Fourteenth Amendment.

8.      That is precisely the constitutional defect Plaintiff asks this Court to remedy. As enacted by HB 253 and as in effect through September 30, 2026, § 320.061 prohibits applying material to a license plate that "interferes with the legibility, angular visibility, or detectability of any feature or detail" of the plate. The statute does not define "interferes with." It does not define "legibility." It does not define "angular visibility." It does not define "detectability." It does not define "feature or detail." Most consequentially, the statute supplies no objective threshold for when a frame's coverage of any portion of the plate crosses from lawful to criminal. Any officer can declare any feature or detail "interfered with," and the statute supplies no answer. The result is precisely what Plaintiff documents below: identical conduct treated as lawful in Seminole, Volusia, Orange (Apopka, Ocoee), and Casselberry — and as a second-degree misdemeanor, punishable by sixty days' incarceration and a $500 fine, in Miami-Dade, Broward, Lake, and Escambia.

9.      Plaintiff drives daily within Miami-Dade County, regularly into Broward County to transport her children to and from school, and across the State of Florida — including northbound on Florida's Turnpike through St. Lucie County — to transport her children to dance competitions in Miami Beach (Miami-Dade County), Fort Lauderdale and Lauderhill (Broward County), Lakeland (Polk County), and Orlando (Orange County). Plaintiff's conduct — driving with the Vera dealer frame that covers only the "Sunshine State" verbiage — is treated by Florida law enforcement as lawful in Seminole, Volusia, Orange (Apopka, Ocoee), and Casselberry. The identical conduct is treated as criminal in Miami-Dade, Broward, Lake, Escambia, and St. Lucie.

In short, where Plaintiff drives determines whether her standard license plate frame violates the law.

The Davie Police Department's December 17, 2025 arrest of Demarquize Dawson — for conduct materially identical to Plaintiff's — illustrates the harm. Mr. Dawson was jailed, suffered a panic attack, and was hospitalized before the Davie Police Department itself acknowledged the law was "vague, unclear and appeared to be open for misinterpretation." Plaintiff faces the same credible threat — punishable by up to sixty days' incarceration, a $500 fine, and the lasting collateral consequences of a criminal arrest record — every time she drives.

The Due Process Clause of the Fourteenth Amendment forbids enforcement of a criminal statute so indeterminate. Plaintiff therefore brings this action under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201–2202, seeking:

10.     (a)      A declaration that Section 320.061, Florida Statutes, as amended by HB 253 (Ch. 2025-211, Laws of Florida) and as in effect from October 1, 2025 through September 30, 2026, is facially unconstitutional and void under the Due Process Clause of the Fourteenth Amendment; and

11.     (b)      preliminary and permanent injunctive relief prohibiting Defendants and their officers, agents, employees, deputies, and persons acting in concert with them from enforcing the unamended version of § 320.061 against Plaintiff under the conditions described above, or, in the alternative, against any person whose vehicle bears a license plate frame or decorative border that does not obscure (i) the alphanumeric plate identifier or (ii) the registration decal located in the upper right-hand corner of the license plate.

## JURISDICTION AND VENUE

12.     This Court has original jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. §§ 2201-2202 (declaratory relief). This action arises under the Fourteenth Amendment to the United States Constitution and seeks a declaration of the rights and legal relations of the parties with respect to the constitutionality of Section 320.061, Florida Statutes.

13.     Plaintiff is in the process of serving the Attorney General of the State of Florida with notice of this constitutional challenge pursuant to Federal Rule of Civil Procedure 5.1 and 28 U.S.C. § 2403(b). The Attorney General is therefore on notice of his right to intervene to defend the constitutionality of § 320.061. Plaintiff does not seek to bind the State of Florida, the Attorney General, the Florida Highway Patrol, or any other state actor not named as a Defendant in this action.

14.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred within this District. Defendants Miami-Dade Sheriff's Office, City of West Miami, City of Miami Beach, and City of North Miami Beach are each located in Miami-Dade County, Florida, where they have collectively issued at least 330 criminal citations under Section 320.061 between December 13, 2025 and April 27, 2026, including 80 such citations issued after the filing of this action. Defendant Sheriff Del Toro is the constitutional officer responsible for policing in St. Lucie County, which is also located within the Southern District of Florida, and the St. Lucie County Sheriff's Office has publicly declared standard frames covering "SUNSHINE STATE" to be a violation of § 320.061.

15.     An actual controversy exists between Plaintiff and Defendants within the meaning of 28 U.S.C. § 2201. Plaintiff contends that Section 320.061 is unconstitutionally vague on its

face; Defendants have enforced and continue to enforce the statute. The controversy is definite, concrete, and touches the legal relations of parties having adverse legal interests.

## PARTIES

16.     Plaintiff Gisela Castilla Rodriguez, a resident of Miami-Dade County, Florida, and a citizen of the United States, is a mother who drives across the State of Florida and uses the roadways and interstate highway system to do so.

17.     Plaintiff currently displays on the rear of her vehicle a standard Florida license plate within a decorative dealer-issued license plate frame. The frame, installed by Vera, a Florida automobile dealership, fully covers and obscures the words "SUNSHINE STATE" printed across the bottom of Plaintiff's license plate.

18.     Plaintiff's frame does not in any way obscure (a) the alphanumeric designation or license plate number, (b) the registration decal located in the upper right-hand corner of the plate, or (c) the "MyFlorida.com" inscription at the top of the plate. The only feature of the plate that the frame obscures is the "Sunshine State" verbiage along the bottom edge — precisely the conduct that (i) the Davie Police Department arrested Demarquize Dawson for in December 2025; (ii) the Miami-Dade Sheriff's Office has cited at least 213 times since the FLHSMV's December 12, 2025 emergency guidance; and (iii) the City of North Miami Beach Police Department has expressly cited as "Tag Frame Obscures Sunshine State Verbiage."

19.     Plaintiff drives daily within Miami-Dade County, where the Miami-Dade Sheriff's Office has issued at least 422 criminal citations under Fla. Stat. § 320.061 since the statute's October 1, 2025 effective date, including 195 citations issued after the Florida Department of Highway Safety and Motor Vehicles issued clarifying guidance on December 12, 2025.

20.    Plaintiff also drives regularly within Broward County to transport her children to and from school. Broward is the same county in which, on December 17, 2025, the Davie Police Department arrested Demarquize Dawson because the decorative frame on his rental car partially covered the letter "S" in "Sunshine State"—a frame indistinguishable in all material respects from Plaintiff's.

21.    Plaintiff additionally drives across the State of Florida to transport her children to dance competitions. Since December 2025, those competitions have included events in Miami Beach (Miami-Dade County), Fort Lauderdale and Lauderhill (Broward County), and Lakeland (Polk County). Plaintiff has additional dance competitions scheduled in Orlando (Orange County) in June 2026. Plaintiff's travel to dance competitions in Orange County and other counties north of St. Lucie County requires her to drive northbound on Florida's Turnpike through St. Lucie County, where she is subject to the territorial enforcement jurisdiction of Defendant Sheriff Del Toro and the deputies under his command.

22.    While driving within the State of Florida, Plaintiff regularly uses Interstate 95, Interstate 395, Interstate 595, and Florida's Turnpike.

23.    On any given day, Plaintiff's identical conduct—driving her vehicle bearing a dealer-installed frame covering only the "Sunshine State" verbiage—is treated by Florida law enforcement as (a) lawful in Seminole, Volusia, Orange (Apopka, Ocoee), and Casselberry; (b) unlawful in Miami-Dade, Broward, Lake, Escambia, and St. Lucie; and (c) the subject of a publicly documented criminal arrest in the Town of Davie. Plaintiff cannot determine from the face of § 320.061—or from any officer-by-officer interpretation of it—whether her conduct in any given Florida county will result in a criminal citation, an arrest, or no enforcement at all.

24.     Plaintiff's fear of arrest and prosecution under § 320.061 is concrete, imminent, and ongoing — and will remain so until October 1, 2026, when Chapter 2026-39 takes effect. Until that date, the unamended version of § 320.061 remains in full force, and Defendants continue to enforce its vague terms against drivers whose conduct is materially identical to Plaintiff's. The statute, by its terms, applies to Plaintiff's current, daily conduct in Miami-Dade County and in every other county into which she drives. The Davie Police Department's December 2025 arrest of Demarquize Dawson — for conduct materially identical to Plaintiff's — confirms that the fear is neither hypothetical nor speculative. The 80 criminal citations issued by the Defendants named in this action between February 27, 2026 (when this action was filed) and April 27, 2026 confirm that the threat is ongoing.

25.     Defendant ROSIE CORDERO-STUTZ is the duly elected Sheriff of Miami-Dade County, Florida, and is sued in her official capacity. Pursuant to Article VIII, Section 1, of the Florida Constitution, as amended effective January 7, 2025, the Sheriff is the constitutional officer with policing responsibility in Miami-Dade County, separate and apart from Miami-Dade County's board of county commissioners. See Fla. Const. art. VIII, § 1(d); § 125.01015, Fla. Stat. The Miami-Dade Sheriff's Office, under Sheriff Cordero-Stutz's command, has issued at least 213 criminal citations under § 320.061 between December 13, 2025 (the day after the FLHSMV emergency guidance) and April 27, 2026, including 49 criminal citations issued after the filing of this action on February 27, 2026.

26.     Defendant RICHARD DEL TORO is the duly elected Sheriff of St. Lucie County, Florida, and is sued in his official capacity. Sheriff Del Toro took office on January 7, 2025 and is the constitutional officer with exclusive policing responsibility in St. Lucie County under Article VIII, Section 1, of the Florida Constitution. References throughout this Complaint to the "St. Lucie

County Sheriff's Office" or "SLCSO" are shorthand for the office of which Sheriff Del Toro is the constitutional officer and through which Sheriff Del Toro and his deputies enforce § 320.061. On December 15, 2025, Sheriff Del Toro's office publicly posted that "[l]icense plate frames that cover or partially block any letters, numbers, or the registration decal" are prohibited. The accompanying infographic depicted frames covering "SUNSHINE STATE" as a violation — directly contradicting the Seminole County Sheriff's Office's interpretation of the same FLHSMV guidance issued the same day, and directly targeting the conduct in which Plaintiff engages each time she drives I-95 through St. Lucie County.

27.    The St. Lucie County Sheriff's Office's December 15, 2025 public declaration that license-plate frames covering "SUNSHINE STATE" are a violation of § 320.061 directly targets Plaintiff's conduct. The Vera dealer-issued frame on Plaintiff's vehicle covers the words "Sunshine State" precisely as depicted in Sheriff Del Toro's December 15, 2025 infographic. Each time Plaintiff drives Florida's Turnpike northbound through St. Lucie County en route to her children's dance competitions, she is exposed to a credible threat of detention, citation, and arrest by deputies acting under Sheriff Del Toro's command and pursuant to his publicly declared interpretation of § 320.061. The threat is concrete, particularized, imminent, and ongoing.

28.    Defendant CITY OF WEST MIAMI, FLORIDA is a municipal corporation organized under the laws of the State of Florida. The City of West Miami, through its police department (the "West Miami Police Department"), from October 2025 through January 2026, issued multiple citations for frames covering "Sunshine State" or "Florida," including citations described as "LICENSE PLATE HOLDER OBSCURING TAG" and "FRAME OBSCURING ISSUING STATE."

10

29.     Defendant CITY OF MIAMI BEACH, FLORIDA is a municipal corporation organized under the laws of the State of Florida. The City of Miami Beach, through its police department (the "Miami Beach Police Department"), from October 2025 through January 2026, issued multiple citations for frames covering "Sunshine State" or "Florida," including citations described as "LICENSE PLATE HOLDER OBSCURING TAG" and "FRAME OBSCURING ISSUING STATE."

30.     Defendant CITY OF NORTH MIAMI BEACH, FLORIDA is a municipal corporation organized under the laws of the State of Florida. The City of North Miami Beach, through its police department (the "North Miami Beach Police Department"), from October 2025 through January 2026, issued citations specifically for "Tag Frame Obscures Sunshine State Verbage [sic]"—the exact conduct that Seminole County explicitly declared legal.

31.     Each Defendant named herein has a direct, substantial, and adverse interest in the constitutionality of Section 320.061 by virtue of having enforced, interpreted, or applied the statute in ways that are irreconcilable with one another, thereby demonstrating the statute's facial vagueness and the existence of an actual controversy suitable for declaratory resolution.

## STATEMENT OF FACTS

### The Statutory Framework

32.     Section 320.061, Florida Statutes, as amended by House Bill 253 (effective October 1, 2025), provides in relevant part:

33.     a person may not apply or attach a substance, reflective matter, illuminated device, spray, coating, covering, or other material onto or around any license plate which interferes with the legibility, angular visibility, or detectability of any feature or detail on the license plate or interferes with the ability to record any feature or detail on the license plate.

34.     A violation of Section 320.061 is a second-degree misdemeanor punishable by up to 60 days in jail and a $500 fine. Fla. Stat. § 775.083.

35.     The statute does not define "interferes with." It does not define "legibility." It does not define "angular visibility." It does not define "detectability." It does not define "feature or detail." It does not specify which features or details are protected. It establishes no objective standard by which a citizen or officer can determine whether a particular license plate frame violates the law. It sets no threshold for what degree of "interference" triggers criminal liability.

36.     Section 320.061 also differs in scope from Section 316.605, Florida Statutes. Section 316.605 prohibits material that obscures the "alphanumeric designation" of a license plate or that prevents the plate from being "plainly visible and legible at all times 100 feet from the rear or front." § 316.605(1), Fla. Stat. Section 320.061, by contrast, sweeps in any material that interferes with the legibility, angular visibility, or detectability of "any feature or detail" of the plate. The "any feature or detail" language has no analogue in § 316.605, has no defined scope, and is the operative phrase the Florida Legislature has unanimously voted to strike via Chapter 2026-39, Laws of Florida. It is the "any feature or detail" language — not § 316.605's narrower identifier language — that Plaintiff challenges.

### *Legislative Intent: Targeting Tag-Flipping Devices, Not Decorative Frames*

37.     Representative Doug Bankson, the bill's sponsor, filed an official statement with the Florida House stating: "this bill intends to define and impose penalties on the possession and use of license plate obscuring devices whether in the commitment of a crime or avoiding a traffic ticket. There is currently not a law in Florida that defines and bans such devices."

38.     The bill's Final Bill Analysis defined a "license plate obscuring device" as "a manual, electronic, or mechanical device designed or adapted to be installed on a motor vehicle

12

for the purpose of: Switching between two or more license plates . . . Hiding a license plate from view by flipping the license plate so that the license plate number is not visible . . . ." HB 253 passed the Florida House 115-0 and the Florida Senate 36-0, reflecting the legislature's understanding that it was voting for a narrow anti-fraud measure targeting criminal tag-flipping devices—not a broad criminalization of decorative frames used by millions of Floridians.

39. Following the enforcement chaos described below, Representative Bankson issued public statements attempting to correct law enforcement's interpretation:

40. [N]o one is in danger for sporting their favorite frame, as long as their license number and sticker are uncovered. HB 253 did not change any existing rules related to standard license plate frames . . . . Yes, this is still the Free State of Florida!

### The Enforcement Chaos: Irreconcilable Interpretations

41. In the weeks following Section 320.061's October 1, 2025 effective date, Florida law enforcement agencies issued directly contradictory guidance about what conduct the statute prohibits. These are not subtle interpretive variations. They represent irreconcilable positions regarding identical conduct.

### Agencies Declaring Standard Frames LEGAL

42. Some Agencies declare that covering portions of a license plate is legal.

43. The Seminole County Sheriff's Office (December 15, 2025) published an official infographic stating that frames covering "SUNSHINE STATE" are "permissible," explaining: "The Florida Department of Highway Safety and Motor Vehicles does not consider the wording along the bottom of the plate to be a primary feature, and a frame can cover it."

44. The Volusia County Sheriff's Office (December 11, 2025) issued a legal bulletin to all deputies concluding: "[I]f the license plate including the alphanumeric designation and the

13

registration decal are plainly visible and legible from 100 feet, there is no violation . . . . Therefore, if the license plate rim or plate does not obscure the license plate's alphanumerical designation or the registration decal, there is not a violation of Fla. Stat. 320.061, and a motorist should not be stopped based on this statute."

45. The Apopka Police Department issued public guidance consistent with the Seminole interpretation, declaring standard decorative frames lawful.

46. Ocoee Police Department issued public guidance consistent with the Seminole interpretation, declaring standard decorative frames lawful.

47. Casselberry Police Department issued public guidance consistent with the Seminole interpretation, declaring standard decorative frames lawful.

### *Agencies Declaring the SAME Conduct CRIMINAL*

48. Others make the same conduct illegal.

49. Defendant Sheriff Del Toro and the St. Lucie County Sheriff's Office deputies under his command (December 15, 2025) publicly posted that "[l]icense plate frames that cover or partially block any letters, numbers, or the registration decal" are prohibited under § 320.061. The accompanying infographic depicted standard frames covering "SUNSHINE STATE" as a violation — the precise conduct the Seminole County Sheriff's Office had publicly declared lawful that same day, and the precise conduct in which Plaintiff engages every time she drives I-95 through St. Lucie County.

50. The State Attorney's Office of the 12th Judicial Circuit (December 9, 2025) posted an image of a standard Volkswagen dealership frame, circled in red, as an example of conduct that "makes it illegal." This is the identical type of standard dealer frame that Seminole County, Volusia County, Apopka, Ocoee, and Casselberry declared lawful.

14

51.     The Miami Beach Police Department (October 2025–January 2026) issued multiple citations for frames covering "Sunshine State" or "Florida," including citations described as "LICENSE PLATE HOLDER OBSCURING TAG" and "FRAME OBSCURING ISSUING STATE."

52.     The North Miami Beach Police Department (October 2025–January 2026) issued citations specifically for "Tag Frame Obscures Sunshine State Verbage"—the exact conduct that Seminole County explicitly declared legal.

### The Miami-Dade Enforcement Campaign: 422 Criminal Citations

53.     Miami-Dade takes a particularly aggressive approach to the problem.

54.     Through public-records requests, Plaintiff has obtained data on all citations issued under § 320.061 statewide and within Miami-Dade County. The data show, among other things: (a) at least 422 criminal citations issued by Miami-Dade Sheriff's Office officers between October 1, 2025 and January 24, 2026; (b) at least 213 criminal citations issued by Miami-Dade Sheriff's Office officers between December 13, 2025 (the day after the FLHSMV emergency guidance) and April 27, 2026; and (c) at least 49 such citations issued by Miami-Dade Sheriff's Office officers between February 27, 2026 (the date this action was filed) and April 27, 2026. The post-FLHSMV-guidance subset is the most consequential: those 213 citations were issued after the FLHSMV had expressly told Defendants that frames like Plaintiff's are lawful, and after Defendants' own counsel had been formally on notice of the State's position.

55.     These citations were issued for the exact same conduct that Seminole County, Volusia County, Apopka, Ocoee, and Casselberry explicitly declared lawful. A motorist with an AutoNation dealer frame is a law-abiding citizen in Orlando but a criminal in Miami.

15

56.     The volume and persistence of these citations—422 in less than four months in a single county, with 195 issued after the state's own regulatory agency issued clarifying guidance—demonstrates not isolated incidents of enforcement but a widespread, systematic policy or custom of enforcing Section 320.061 against standard decorative license plate frames.

### The FLHSMV Guidance

57.     On December 12, 2025, the Florida Department of Highway Safety and Motor Vehicles ("FLHSMV") issued emergency guidance to all Florida law enforcement agencies: "this act does not prohibit the use of a license plate frame as long as the frame does not obscure visibility of the following: The alpha numeric plate identifier; The decal located in the top right hand corner of the license plate."

58.     At least 195 citations were issued in Miami-Dade County after the FLHSMV guidance, including citations whose officer-articulated bases describe frames that — on the face of the FLHSMV's own December 12, 2025 memorandum — are lawful. Further, that four separate Florida government entities — the FLHSMV, the Florida Police Chiefs Association, the Seminole County Sheriff's Office, and the Miami-Dade County Tax Collector — each felt compelled to issue independent clarification documents about what § 320.061 prohibits is itself proof that the statutory text does not provide the notice the Due Process Clause requires.

### Continued Enforcement After the FLHSMV Guidance and the Filing of This Action

59.     Updated public records data through April 27, 2026 confirms that enforcement of § 320.061 has not abated. Between December 13, 2025 (the day after the FLHSMV emergency guidance) and April 27, 2026, Florida law enforcement agencies have issued at least 601 criminal citations under § 320.061. Of those, the Miami-Dade Sheriff's Office alone has issued at least 213; the City of Miami Beach Police Department has issued at least 95; the City of West Miami Police

Department has issued at least 15; and the City of North Miami Beach Police Department has issued at least 7.

60.     Even more strikingly, Defendants have continued issuing criminal citations under § 320.061 after the filing of this lawsuit. Between February 27, 2026 (the date this action was filed) and April 27, 2026, the Defendants named in this action have collectively issued approximately 80 additional criminal citations under § 320.061: the Miami-Dade Sheriff's Office (49); the City of Miami Beach (25); the City of North Miami Beach (3); and the City of West Miami (3). Defendants' continued enforcement of an unconstitutionally vague statute notwithstanding the Florida Legislature's prospective amendment of the statute, and the pendency of this action underscores the immediate and ongoing nature of the constitutional injury.

The 601 post-guidance citations are also distinctive in what they do not contain. Of those 601 citations, 529—approximately 88 percent—contain no description in the "additional comments" or narrative field beyond the boilerplate phrase "UNLAWFUL ALTERATION OF TAG/REGIST." Where officers do articulate the specific conduct prompting the citation, fewer than half of those narratives describe conduct that obscures the alphanumeric designation or registration decal. This pattern—massive volume coupled with minimal articulation of the specific conduct purportedly prohibited—is the hallmark of arbitrary enforcement that the Due Process Clause forbids.

When officers do articulate the basis for a § 320.061 citation, the articulated bases routinely target conduct that the FLHSMV memo, binding Florida appellate authority, and Chapter 2026-39 all confirm to be lawful. By way of example only, and using citation numbers in lieu of names of cited individuals to protect their privacy:

17

61.     Citation No. ANA8MZE, issued in Miami-Dade County on March 30, 2026 (thirty-one days after this action was filed), states as the officer's articulated basis: "TAG FRAME BLOCKING ENTIRE STATE, CAN BARELY SEE BOTTOM OF LETTERS FROM STATE." The cited conduct — a frame covering "state" words at the bottom of the plate — is the precise conduct the FLHSMV memo and Chapter 2026-39 each confirm to be lawful so long as the alphanumeric plate identifier and registration decal remain visible.

62.     Citation No. AMU0IYE, issued in Miami-Dade County on January 10, 2026, states as the officer's articulated basis: "VISIBLE FROM DIFFERENT ANGLES AND DISTANCES." Defendants' agents are issuing criminal citations under § 320.061 against license plates that are, by the officer's own admission, "visible" — illustrating that the statute's undefined terms "legibility," "angular visibility," and "detectability" supply no objective standard for criminal liability.

63.     Notwithstanding the FLHSMV's December 12, 2025 emergency guidance, Defendants have continued to issue, prosecute, and defend criminal citations under § 320.061 against frames that do not obscure the alphanumeric designation or the registration decal. The persistence of enforcement against conduct that the FLHSMV's own regulatory guidance confirms to be lawful demonstrates that the statute as currently written provides law enforcement no constitutionally adequate standard for distinguishing prohibited conduct from protected conduct.

### *Chapter 2026-39, Laws of Florida, Does Not Moot This Action*

64.     On April 21, 2026, the Governor of Florida signed Senate Bill 488 into law as Chapter 2026-39, Laws of Florida. Section 9 of Chapter 2026-39 amends Fla. Stat. § 320.061 to (a) narrow the scope of protected features from "any feature or detail" to the "license plate number or validation sticker"; and (b) add a new subsection (2) providing that "[t]he use of a license plate

18

frame or decorative border around a license plate is not an offense under this section, provided that the frame or border does not obscure the visibility of: (a) The alphanumeric designation or license plate number[; or] (b) The registration decal or validation sticker located in the upper right corner." Section 47 of Chapter 2026-39 expressly provides: "This act shall take effect October 1, 2026."

65. Chapter 2026-39 does not moot this action. Until October 1, 2026, the unamended version of § 320.061 remains in full force and effect, and Defendants continue to enforce its vague terms. The Florida Legislature's prospective amendment confirms, rather than cures, the constitutional deficiency: the very text the Legislature has now disclaimed—"any feature or detail"—is the text Defendants are presently using to issue criminal citations. An ongoing, well-documented enforcement campaign under a statute the State's own legislature has effectively abandoned is the paradigm of arbitrary and discriminatory enforcement that the Due Process Clause forbids.

66. Plaintiff's claim is also not subject to dismissal on mootness grounds under the voluntary cessation doctrine. Defendants have not ceased — and have not represented they will cease — enforcement of § 320.061. To the contrary, Defendants have collectively issued at least 80 criminal citations under § 320.061 between February 27, 2026 (when this action was filed) and April 27, 2026, including 49 such citations issued by Defendant Sheriff Cordero-Stutz's office. The Florida Legislature's prospective enactment of Chapter 2026-39 — which by its terms takes effect on October 1, 2026 and not before — does not moot the live controversy. The harms Plaintiff faces between now and October 1, 2026 are concrete, ongoing, and capable of repetition yet evading review.

*The Dawson Arrest and the Davie Police Admission*

19

67. Demarquize Dawson's arrest demonstrates how arbitrary the situation has become.

68. On December 17, 2025, Davie Police Department arrested Demarquize Dawson because the decorative frame on his rental car partially covered the letter "S" in "Sunshine State." Mr. Dawson was jailed. He subsequently suffered a panic attack and was hospitalized. This arrest occurred two days after the DHSMV issued its statewide clarification memo.

69. Following public outcry, the Davie Police Department issued a formal public statement containing this extraordinary admission: "the law was vague, unclear and appeared to be open for misinterpretation."

### The Cuellar Incident: Pretextual Enforcement

70. The arbitrary enforcement has also allowed pretextual enforcement.

71. On December 9, 2025, José Cuellar's seventeen-year-old U.S. citizen son was driving through Davie when a Florida Highway Patrol trooper stopped him, citing difficulty seeing the "Sunshine" letters on the truck's license plate. Before the driver could produce identification, five plainclothes ICE agents emerged and questioned occupants about their legal status. José Cuellar, a Salvadoran immigrant with 30 years in the United States and no criminal record, was detained and transported to a detention center in Colorado.

72. The Cuellar case illustrates the statute's potential for arbitrary enforcement at its most extreme: a vague criminal statute providing officers with a standardless predicate for stops and detentions far beyond the misdemeanor penalty the statute prescribes.

### Plaintiff Threat of Criminal Prosecution

73. By simply driving on the state and interstate roads of Florida, Plaintiff faces pending criminal charges under a facially unconstitutional statute, mandatory court appearances,

20

the threat of incarceration for up to 60 days, the threat of a permanent criminal record, and reputational harm arising from the false imputation that he committed a crime.

74.    The threat of prosecution facing Plaintiff is not speculative. It is concrete, imminent, and ongoing. The statute by its terms applies to their current, daily conduct. The state has demonstrated a persistent pattern of aggressive enforcement against identical conduct. The 422 citations in Miami-Dade County constitute an active, systematic enforcement campaign. No intervening discretionary act separates Plaintiff from prosecution—any officer who observes her license plate frames can, and under current enforcement patterns demonstrably does, issue a criminal citation at any time.

75.    Plaintiff has standing to seek declaratory relief because she faces a credible threat of prosecution under an allegedly unconstitutional statute and need not first expose herself to actual prosecution to vindicate her constitutional rights.

### CLAIM FOR RELIEF

### COUNT I

**42 U.S.C. § 1983 — VIOLATION OF THE FOURTEENTH AMENDMENT (VOID FOR VAGUENESS)**
**(Against All Defendants)**

76.    Plaintiff realleges and incorporates by reference paragraphs 1 through 75 as though fully set forth herein.

77.    Plaintiff brings this Count pursuant to 42 U.S.C. § 1983 to vindicate her rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. At all times relevant, each Defendant has acted, and continues to act, under color of state law within the meaning of § 1983 in enforcing Fla. Stat. § 320.061. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201–2202, prospective injunctive relief pursuant to 42 U.S.C. § 1983, and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

21

78. The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

79. An actual, justiciable controversy exists between Plaintiff and Defendants concerning the constitutionality and lawful scope of Section 320.061, Florida Statutes, as amended by HB 253 (effective October 1, 2025).

80. Plaintiff faces potential criminal prosecution under Section 320.061 in Miami-Dade County Court. Her interest in a judicial declaration of the statute's unconstitutionality is immediate, concrete, and adverse to Defendants' continued enforcement of the statute.

81. The genuine threat of enforcement is not speculative. It is established by: (a) the 422 criminal citations issued under Section 320.061 in Miami-Dade County alone in less than four months; (b) the arrest and jailing of Demarquize Dawson for conduct identical to Plaintiff's; (c) the continued issuance of 195 citations even after FLHSMV issued clarifying guidance on December 12, 2025; and (d) the irreconcilable enforcement interpretations across Florida's sixty-seven counties, which render it impossible for any motorist to know whether his or her conduct is lawful at any given location.

82. The Due Process Clause of the Fourteenth Amendment prohibits the enforcement of criminal statutes that are unconstitutionally vague. A criminal statute is void for vagueness if it: (1) fails to give persons of ordinary intelligence fair notice of what conduct is prohibited; or (2) encourages arbitrary and discriminatory enforcement by failing to establish adequate standards to govern law enforcement.

83.     Section 320.061 fails both prongs. The statute neither defines its operative terms: "interferes with," "legibility," "angular visibility," "detectability," and "feature or detail"; nor provides an objective threshold for when partial coverage becomes a criminal violation. The statute combines indeterminacy about how to measure "interference" with indeterminacy about how much interference triggers criminal liability, presenting the dual indeterminacy condemned by courts.

84.     The statewide enforcement split described above—in which trained law enforcement agencies across Florida read identical statutory text and reached irreconcilable conclusions about what it prohibits—confirms that the statute fails to provide constitutionally adequate notice and delegates enforcement authority with literally zero meaningful standards.

85.     The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, provides Plaintiff with a procedural means to test the constitutionality of § 320.061 without first exposing herself to criminal prosecution. Congress enacted the Act as an alternative to injunctive relief in cases where an injunction may not be appropriate, and specifically anticipated its use to test the constitutionality of state criminal statutes.

86.     The controversy between Plaintiff and Defendants is ripe for adjudication. The statute is in effect. Enforcement is ongoing and aggressive. The constitutional deficiencies are apparent on the face of the statute and confirmed by the documented enforcement chaos across the State of Florida. No further factual development is necessary for this Court to resolve the purely legal question of whether Section 320.061 provides constitutionally adequate notice and standards.

87.     No pending state proceeding bars this Court from exercising jurisdiction over the Plaintiff's claims.

88.     Plaintiff is entitled to a declaration pursuant to 28 U.S.C. §§ 2201-2202 that Section 320.061, Florida Statutes, as amended by HB 253, is unconstitutionally vague on its face and void under the Due Process Clause of the Fourteenth Amendment, and that all arrests, citations, and convictions entered under the statute since its effective date of October 1, 2025, are void ab initio and without legal effect.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in their favor and against Defendants, and grant the following relief:

1.     Declaratory Relief. A declaration, pursuant to 28 U.S.C. §§ 2201-2202, that Section 320.061, Florida Statutes, as amended by HB 253 (effective October 1, 2025), is facially unconstitutional and void under the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

2.     Injunctive Relief — Plaintiff-Specific. A preliminary injunction, and upon final adjudication a permanent injunction, prohibiting Defendants and their officers, agents, employees, deputies, successors, and all persons acting in concert with them, from enforcing Section 320.061, Florida Statutes (as in effect from October 1, 2025 through September 30, 2026), against Plaintiff Gisela Castilla Rodriguez when her vehicle bears a license plate frame or decorative border that does not obscure the alphanumeric plate identifier or the registration decal located in the upper right-hand corner of her license plate;

3.     Injunctive Relief — Alternative Carve-Out. In the alternative, and to the extent the Court determines that Plaintiff's injury cannot be fully redressed without affording protection to similarly situated drivers, a preliminary injunction and a permanent injunction prohibiting Defendants and their officers, agents, employees, deputies, successors, and persons acting in

24

concert with them from enforcing Section 320.061, Florida Statutes (as in effect from October 1, 2025 through September 30, 2026), against any person whose vehicle bears a license plate frame or decorative border that does not obscure (i) the alphanumeric plate identifier or (ii) the registration decal located in the upper right-hand corner of the license plate;

4. Attorneys' Fees and Costs. Reasonable attorneys' fees, expenses, and costs pursuant to 42 U.S.C. § 1988(b);

5. Costs. Costs of suit as permitted by law;

6. Further Relief. Such other and further relief as this Court deems just and proper.

Dated: April 28, 2026

Respectfully submitted,

/s/ Charles E. Whorton

Charles E. Whorton
Anna D. Quesada
Ticket Toro Law Firm
5757 Waterford District Drive
Suite 110
Miami, FL 33126
Charlie@TicketToro.ai
Anna@TicketToro.ai

/s/ Stephen Binhak

Stephen Binhak
The Law Office of Stephen James Binhak, P.L.L.C.
One Southeast Third Ave., Suite 2600
Miami, Florida 33131
(305) 361-5500
(305) 428-9532 fax
binhaks@binhaklaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 28, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Charles E. Whorton

25