UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami division

Case No. 26-cv-21355 – JAL

GISELA CASTILLA RODRIGUEZ,

        Plaintiff,

vs.

MIAMI-DADE COUNTY, FLORIDA,
ST. LUCIE COUNTY SHERIFF'S OFFICE,
CITY OF WEST MIAMI, FLORIDA
CITY OF MIAMI BEACH, FLORIDA
NORTH MIAMI BEACH, FLORIDA

        Defendants.

_____/

## MOTION TO DISMISS AND MEMORANDUM OF LAW

Defendant CITY OF WEST MIAMI ("West Miami"), pursuant to Federal Rules of Civil

Procedure 12(b)(1) and 12(b)(6), moves to dismiss Plaintiff GISELA CASTILLA RODRIGUEZ's

("Plaintiff") First Amended Complaint [ECF No. 27] ("Complaint"), as follows:

### I.    INTRODUCTION:

The Complaint contains one single count under 42 U.S.C. § 1983 and § 1988 seeking

declaratory and injunctive relief challenging the facial constitutionality of § 320.061, Fla. Stat.

Plaintiff also seeks an injunction prohibiting Defendants from enforcing the statute against her or

in the alternative against third parties who are not parties to this lawsuit. This Complaint must be

dismissed for a variety of reasons.

1.  Lack of Standing: The Complaint fails to plead standing with respect to West Miami,

    and indeed, the Plaintiff cannot allege standing with respect to West Miami.

1

2. <u>Shotgun Pleading</u>: Complaint is a classic shotgun pleading: it reincorporates all prior allegations into the one Count and impermissibly conflates all Defendants, failing to differentiate the conduct attributable to each one.

3. <u>Failure to Comply with pleading condition precedent</u>: Federal Rule of Civil Procedure Rule 5.1(a) requires as precondition to suit on a question of constitutionality of a state law that timely notice be given to the State's Attorney General.  The Complaint here fails to allege that such timely notice was given.

4. <u>Failure to allege practice or custom</u>. The Complaint attempts to state a § 1983 / *Monell* claim and seeks to recover attorney's fees under § 1988. However, the Complaint fails to allege any constitutional violation suffered by Plaintiff, any West Miami Policy, practice or custom, or any West Miami policymaker to state a *Monell* claim.

5. <u>Substantively</u>, the Complaint fails to allege a claim of *facial* unconstitutionality because it does not show that the statute can never be constitutionally applied.  To the contrary: the Complaint alleges that other municipalities do constitutionally apply the statute, thus precluding a facial challenge as a matter of law.

6. <u>No relief for similarly situated parties.</u> The Complaint does not plead a proper basis for relief for similarly situated parties.

7. <u>Abstention</u>: The Florida Legislature in April 2026 amended § 320.061, Fla. Stat. (the "Law") to limit its enforcement to license plate frames that obscure the alphanumeric designation and registration decal, precisely the modification Plaintiff seeks. The current language has been in the statute since 2007, even though the penalty for its violation might have changed. The Florida Legislature's decision to amend the statute now is only a policy decision, not reflecting on the constitutionality of the statute. The newly amended version will be effective October 1, 2026,.Accordingly, consistent with

2

the constitutional separation of powers between the judiciary and the legislature (Fla. Const. Art. II, § 3), this Court should decline to entertain this action because the legislature's amendment has extinguished any basis for redress.

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 556. A complaint must contain enough facts to plausibly allege the required elements. *Watts v. Fla. Int'l Univ*., 495 F.3d 1289, 1295–96 (11th Cir. 2007); *see Jackson v. Bell South Telecomm*., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal"). Here, the Complaint fails these tests, and must thus be dismissed.

## III.     LACK OF STANDING WITH RESPECT TO WEST MIAMI:

One element of the case-or-controversy requirement under Article III of the United States Constitution is that plaintiffs "must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). It is a threshold question of "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Sims v. Fla. Dep't of Highway Safety & Motor Vehicles*, 862 F.2d 1449, 1458 (11th Cir. 1989) (en banc). *Havana Docks Corp. v. MSC Cruises SA Co*., 484 F. Supp. 3d 1177, 1188–89 (S.D. Fla. 2020).

At an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct *of the defendant*," and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision." *Valley Forge Christian Coll. v. Americans*

*United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (quoting *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979)) (cited in *Havana Docks Corp.*, *supra*) (emphasis added).  In other words, to plead standing, Plaintiff must allege that: (1) it "suffered an injury in fact that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) "the injury is fairly traceable to conduct of the defendant;" and (3) "it is likely, not just merely speculative, that the injury will be redressed by a favorable decision." *Kelly v. Harris*, 331 F.3d 817, 819-20 (11th Cir. 2003).

The Complaint contains no such allegation with respect to Defendant West Miami.  At paragraph 28 of the Complaint, Plaintiff alleges:

> Defendant CITY OF WEST MIAMI, FLORIDA is a municipal corporation organized under the laws of the State of Florida. The City of West Miami, through its police department (the "West Miami Police Department"), from October 2025 through January 2026, issued multiple citations for frames covering "Sunshine State" or "Florida," including citations described as "LICENSE PLATE HOLDER OBSCURING TAG" and "FRAME OBSCURING ISSUING STATE."

The Complaint contains no allegation that Plaintiff has ever driven her car in West Miami., or that she has been cited in or byWest Miami under the Law. It contains no allegation that she ever intends to, or has cause to, drive her car, in West Miami. Then sole allegation against Defendant West Miami is that West Miami has enforced and may enforce the Law in an improper manner against third parties – but not Plaintiff.  More specifically, Plaintiff does not state why, in the five months until the clarification/amendment takes effect, she may ever visit West Miami. The Complaint contains no allegations tying Plaintiff (as opposed to other third parties) in any way to West Miami. That lack of an alleged connection between Plaintiff and Defendant West Miami is fatal.

4

Plaintiff does not allege that (a) she suffered or may suffer an injury at the hands of Defendant West Miami that is concrete and particularized, (b) that the injury or threat of injury at the hands of West Miami is actual or imminent, (c) that any injury she suffered or may suffer is fairly traceable to the conduct of West Miami, or (d) that it is likely that the relief requested will right the wrong West Miami may commit toward her.  *See Kelly,* supra.

For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (" 'distinct' "); *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) ("personal"); *United States v. Richardson*, 418 U.S. 166, 177, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974) (not "undifferentiated"); *Public Citizen, Inc. v. National Hwy. Traffic Safety Admin*., 489 F.3d 1279, 1292–1293 (C.A.D.C.2007) (collecting cases); cited in *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016).  Here, the Complaint contains no allegation why West Miami's enforcement of the Law causes a particularized injury to Plaintiff, as opposed to other members of the public.

The Complaint *does however contain* particularized allegations why the enforcement of the Law exposes her to risk *with respect to other Defendants*.  With respect to Defendant Sheriff of Miami Dade County, Plaintiff alleges that she drives daily in the County, and regularly into Broward County to drive her children to and from school. Complaint at .¶9. She also alleges that she drives her children to and from school, and across the state of Florida — including "*northbound* on Florida's Turnpike through St. Lucie County — to transport her children to dance competitions in Miami Beach (Miami-Dade County), Fort Lauderdale and Lauderhill (Broward County), Lakeland (Polk County), and Orlando (Orange County).  No such trips would ever let her drive through West Miami, which is many miles south of her trips.  Plaintiff points to an incident in

Davie (Complaint at ¶9), but does not sue Davie or even Broward County. *See also* allegations at ¶¶20-22.

Nor would alleged trips on Interstate 95, Interstate 395, Interstate 595, or the Florida Turnpike ever bring her into the traffic enforcement jurisdiction of West Miami. *See* Complaint at ¶22. The mere possibility that Plaintiff may, at some point in the next five months might drive through West Miami, which is not alleged, would not give Plaintiff standing against West Miami to a greater degree than any other member of the general public that may drive through West Miami.

The Eleventh Circuit in *Havana Docks Corp, supra*, stated:

> " 'The law of Article III standing ... serves to prevent the judicial process from being used to usurp the powers of the political branches,' and confines the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013); *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). Further, "standing requirements 'are not mere pleading requirements but rather [are] an indispensable part of the plaintiff's case.' " *Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). "Indeed, standing is a threshold question that must be explored at the outset of any case." *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1232 (11th Cir. 2019) (citing *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005)), *cert. denied*, —— U.S. ——, 140 S. Ct. 900, 205 L.Ed.2d 467 (2020). "In its absence, 'a court is not free to opine in an advisory capacity about the merits of a plaintiff's claim.' " *Id.* (quoting *Bochese*, 405 F.3d at 974). "In fact, standing is 'perhaps the most important jurisdictional' requirement, and without it, [federal courts] have no power to judge the *1189 merits." *Id.* (footnote omitted) (quoting *Bochese*, 405 F.3d at 974).

Accordingly, the Complaint must be dismissed with respect to West Miami due to failure to properly allege standing of Plaintiff vis-à-vis West Miami.

**IV.    THE COMPLAINT IS A SHOTGUN PLEADING**

6

Plaintiff's Complaint is also an impermissible shotgun pleading that warrants dismissal. The Eleventh Circuit has identified four categories of shotgun pleadings, the "most common" one "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). A second type of shotgun pleading is one that suffers from "the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. A third type fails to "separat[e] into a different count each cause of action or claim for relief," *Id.* at 1323, and a fourth type "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.*

The unifying characteristic of all types of shotgun pleadings is that they fail, to one degree or another, to give the defendants adequate notice of the claims against them. *Id.* "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294–95 (11th Cir. 2018); *New York Packaging II LLC v. Private D Capital Group Corp.*, No. 22-20276-CIV-MARTINEZ, 2023 WL 2306690, at *4 (S.D. Fla. Mar. 1, 2023). The Eleventh Circuit has also directed district courts not to tolerate shotgun pleadings given that permitting "such behavior constitutes toleration of obstruction of justice." *Jackson*, 898 F.3d at 1357 (footnote omitted); *see also Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997) (holding that shotgun complaints are altogether unacceptable).

The Complaint here suffers from the "venial sins" associated with the first and fourth categories of shotgun pleadings. *First*, the single-count Complaint incorporates the entirety of paragraphs 1 through 75, leaving West Miami to guess which allegations relate to the cause of action asserted against it. *Second*, the Complaint improperly asserts a *Monell* liability claim against

all Defendants, regardless of any custom or policies their highest decision makers have adopted. These two defects prevent the West Miami from being able to frame a responsive pleading and require both West Miami and the Court to sift out irrelevant factual allegations and legal conclusions from each claim. *Cf. Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295–96 (11th Cir. 2002) (recognizing the district court's "onerous task" of sifting through 127 paragraphs to "ascertain exactly which facts formed the basis of the plaintiffs' federal law claims"). The Court should dismiss the Complaint on this basis alone.

## V. PLAINTIFF FAILS TO ALLEGE TIMELY COMPLIANCVE WITH Fed. R. Civ. P. 5.1

When a party challenges the constitutionality of a state or federal statute, there are additional and specific service and certification requirements. *King v. Lumpkin*, No. 1:11-CV-0549-WSD, 2012 WL 12888676, at *5–6 (N.D. Ga. Feb. 13, 2012). Federal Rule of Civil Procedure Rule 5.1(a) requires that the party:

> (1) file a **notice of constitutional question** stating the question and identifying the paper that raises it, if:
>
> (B) a state statute is questioned and the parties do not include the state, one of its agencies, or one of its officers or employees in an official capacity; and
>
> (2) **serve the notice and paper on ... the state attorney general if a state statute is questioned ... either by certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose**.

Fed. R. Civ. P. 5.1.(emphasis added)

Additionally, Rule 5.1(b) requires that "[t]he court must, under 28 U.S.C. § 2403, certify to the appropriate attorney general that a statute has been questioned." After a notice of constitutional question is filed or the certification is made, the Attorney General has sixty (60) days to intervene in the matter. *See* Fed. R. Civ. P. 5.1(c). The Court may not hold the statute unconstitutional within that time period. *Id.*

8

In *King* the plaintiff failed to notify the Attorney General of Georgia, when alleging that House Bill 1302 violated the Georgia Constitution. *King*, No. 1:11-CV-0549-WSD, 2012 WL 12888676, at *8. Thus, the action had not been certified to the Attorney General of Georgia. *Id.* The court, in light of the requirement to notify, and certify to, the Attorney General of Georgia the constitutional question, stayed the proceedings, pending the fulfillment of the requirements by the Plaintiff.    Here, since neither the State, nor one of its agencies or officials are named parties in the lawsuit, Plaintiff should have promptly provided notice to the Attorney General of the State of Florida by filing the notice of constitutional question and by serving the notice on the Attorney General. Plaintiff filed her original Complaint on February 27, 2026, and only in her First Amended Complaint, filed on April 28, 2026, does she first mention her attempt to comply with the rule. *See* Complaint ¶ 13. Being obviously aware of this shortcoming, Plaintiff here alleges that she is *in the process of serving* the Attorney General of the State of Florida and asserts, without more, that the Attorney General *is therefore on notice* of the constitutional challenge to § 320.061. *Id.* This bare allegation is insufficient to establish that the Attorney General has actually been placed on notice. As a result, the constitutional question has not been certified by the Court.

Moreover, any such notice was untimely.  "A Rule 5.1 notice is timely if it is filed **as soon as practicable** after the constitutional question as first raised in actual reliance on the questioned statute. **Thirty days** is the benchmark for a Rule 5.1 notice."" *VIP Prods. LLC v. Jack Daniel's Props. Inc.*, No. CV-14-02057-PHX-SMM, 2024 WL 6966674, at *1 (D. Ariz. Apr. 10, 2024) (emphasis added). Seventy-three days have passed since the original Complaint – raising the same constitutional question – was filed, and no notice has been filed. Plaintiff's belated attempt to provide such notice is therefore untimely.  Where the attorney general has not received a notice that was required under Rule 5.1, the court has discretion in choosing the proper remedy. *See Kenyon v. Cedeno-Rivera*, 47 F.4th 12, 22 (1st Cir. 2022) (quotations omitted). Therefore, this

9

Court, given the nature of the Complaint ( a one count complaint challenging the constitutionality of a state statute on its face), should grant a dismissal, or in the alternative at least a stay of the proceedings, like in Kings, until Plaintiff has complied with the requirements and the Attorney General has been provided with sufficient time, according to Fed. R. Civ. P. 5.1(c), to intervene if necessary.

### VI.      THE COMPLAINT FAILS TO PROPERLY ALLEGE A *MONELL* CLAIM

The one-count Complaint here is asserting a *Monell* claim under  42 U.S.C. § 1983. [1] " To state such as claim a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Monell*, 436 U.S. at 658, 694 (1978).

It is well-settled that a municipality, like West Miami, may ***not*** be held vicariously liable for the acts of its employees based on *respondeat superior* under Section 1983. Rather, Plaintiff must allege facts demonstrating he suffered a deprivation of his rights pursuant to a policy or custom authorized by a West Miami final policymaker, which was the moving force behind the deprivation. *See Monell*, 436 U.S. at 694 (concluding that Section 1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor"). Following *Monell*, a plaintiff must allege facts proving three elements to establish Section 1983 municipal liability: "(1) that his constitutional rights were violated; (2) the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that policy or custom caused the violation."

---

[1] 42 U.S.C. § 1983 provides a remedy for "the deprivation of any rights, privileges, or immunities secured by the Constitution and [federal] laws" by a "person . . . [acting] under color of any statute, ordinance, regulation, custom, or usage[] of any State or Territory or the District of Columbia[.]"

*McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Plaintiff here fails to satisfy these requirements.

First, Plaintiff has not alleged facts tending to show that her constitutional rights were violated at the hands of West Miami. The crux of her constitutional claims is that she regularly drives across counties and is afraid of enforcement of a constitutional statute against her. She does not allege that she ever drives or drove in West Miami.  Without the deprivation of a constitutional right, a *Monell* claim fails at the threshold.

Second, and more damaging to Plaintiff, the Complaint fails to allege a custom or policy on the part of West Miami.  To properly plead a *Monell* claim, a plaintiff *must* "identify either (1) an officially promulgated [municipal] policy or (2) an unofficial custom or practice of the [municipality] shown through the repeated acts of a final policymaker for the [municipality]." *Grech v. Clayton Cnty., Ga*., 335 F.3d 1326, 1329 (11th Cir. 2003); see also *id.* ("The Supreme Court has placed strict limitations on municipal liability under § 1983.").

Plaintiff's Complaint fails to identify any West Miami policy. To allege a custom or policy, a plaintiff must "identify either (1) an officially promulgated [municipal] policy or (2) an unofficial custom or practice of the [municipality] shown through the repeated acts of a final policymaker for the [municipality]." *Grech v. Clayton Cnty., Ga*., 335 F.3d 1326, 1329 (11th Cir. 2003). "[T]he simple mention of 'policy and/or custom' is not enough, for a plaintiff must do something more than simply allege that such an official policy exists." *Perez v. Metro. Dade Cnty*., No. 06-20341-CIV, 2006 WL 4056997, at *2 (S.D. Fla. Apr. 28, 2006) (Moreno, J.) (internal quotations omitted); accord *Rosario v. Miami-Dade Cnty.,* 490 F. Supp. 2d 1213, 1225 (S.D. Fla. 2007) (Ungaro, J.). *See also Brooks v. Scheib*, 813 F.2d 1191 (11th Cir. 1987) (requiring that the custom or practice must be shown through pleaded facts demonstrating prior investigated instances).

Here, Plaintiff completely fails to identify any municipal policy on the part of West Miami. Notably, a few isolated instances would not suffice to meet the high burden of deliberate indifference: "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)); *see also Whitaker v. Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1321 (S.D. Fla. 2015) (Lenard, J.) (concluding that "four isolated shootings" in a nine-month span were not enough to constitute a custom or usage in the absence of a written law or express municipal policy).

Plaintiff here identifies only two prior incidents – neither of which concerns West Miami in any way. *See* Complaint ¶¶ 67–72. The *Dawson* arrest involved the Davie Police Department, not the West Miami, and thus cannot, as a matter of law, support any alleged municipal pattern attributable to West Miami. Likewise, the *Cuellar* incident involved the Florida Highway Patrol ("FHP") and subsequently Immigration and Customs Enforcement agents.  Neither incident is attributable to West Miami, nor is there any allegations that West Miami would act in accordance with the practices of Davie or FHP toward Plaintiff.  Thus, these allegations are irrelevant for purposes of establishing a municipal custom on the part of West Miami. In any event, two isolated and unrelated events fall far short of demonstrating the type of widespread and persistent practice required to impose municipal liability. Thus, based on this basis alone this Court should dismiss the claim as it does not plausibly establish municipal liability under *Monell.* Nor would the allegation that one West Miami police officer cited a third party for obstructing the words "sunshine state" be sufficient to allege a West Miami custom or practice.

Finally, the Complaint is devoid of allegations that any custom or practice on the part of West Miami was effectuated "through the repeated acts of a final policymaker for the

[municipality]" *Grech,* 335 F.3d at 1329, or that West Miami's policy or custom was the cause of the constitutional violation she suffered. *McDowell,* 392 F.3d at 1289. See *Rodriguez v. Quinones,* 508 F. Supp. 3d 1198 (S.D. Fla. 2020) ("The plaintiff bears the burden of establishing the causal link between a government policy or custom and the injury which is alleged."); *see also Williams v. City of Miami*, No. 21-23287-Civ-Scola, 2021 WL 4990005, at *4 (S.D. Fla. Oct. 27, 2021) Plaintiff must show West Miami's policy was the "moving force." *Monell*, 436 U.S. at 694. The Complaint lacks such allegations and must thus be dismissed with respect to West Miami.

## VII. THE STATUTE IS NOT UNCONSTITUTIONAL IN ALL APPLICATIONS

Additionally, or alternatively, even if this Court finds that Plaintiff's Complaint should not be dismissed for the reasons stated above, Plaintiff's constitutional challenge fails as a matter of law. Plaintiff is bringing a *facial challenge* to the constitutionality of § 320.061, Fla. Stat. Plaintiff alleges that the ordinance is unconstitutionally vague because it does not " 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited ...' " and it provides no "sufficiently explicit standards for those who will apply it, thereby encouraging 'arbitrary and discriminatory enforcement.' " Complaint at ¶ 50; *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1271 (11th Cir. 2011) (quoting) *United States v. Single Family Residence,* 803 F.2d 625, 630 (11th Cir.1986).

A facial challenge must assert and show that a Law "always operates unconstitutionally," *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009) (emphasis in original), *United States v. Salerno*, 481 U.S. 739, 745 (1987) (holding that a law is facially unconstitutional only if "no set of circumstances exists" under which the law would be valid) (emphasis added), and will succeed only if the law "could never be applied in a constitutional manner." *DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1262 (11th Cir. 2007) (emphasis added). A facial challenge does not require application to a particular set of facts. *Harris*, 564 F.3d

13

at 1308. "The fact that [a legislative act] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid…." *Id.* (emphasis added). This "heavy burden" makes such an attack "the most difficult challenge to mount successfully" against an enactment. *Id.*

The U.S. Supreme Court held that "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc*., 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law. The Eleventh Circuit has indeed reversed decisions declaring a statute unconstitutional on its face as vague, because the statute was not vague in all its applications. *High Ol' Times, Inc. v. Busbee*, 673 F.2d at 1228 (11th Cir. 1982).

Here, Plaintiff openly admits in her Complaint that other municipalities apply the statute in a constitutional manner, i.e., they only ticket if the alphanumeric portion of the plate or the annual renewal sticker was obstructed.  Thus, the allegations concerning facial unconstitutionality are insufficient, requiring dismissal.

## VIII.   THE COMPLAINT DOES NOT PROPERLY ALLEGE ENTITLEMENT TO RELIEF FOR SIMILARLY SITUATED PARTIES.

Plaintiff seeks both declaratory relief – asking the Court to declare the statute unconstitutional, which it is not for the reasons stated above – and injunctive relief. The requested injunction would bar law enforcement from enforcing section 320.061, Florida Statutes, against Plaintiff herself until September 30, 2026, or, in the alternative, would impose a permanent injunction prohibiting enforcement of § 320.061, Fla. Stat. against any person who does not obscure the alphanumeric characters **or** the registration decal. *See* Complaint ¶ 3 (Prayer for Relief).

Plaintiff has not pleaded the requisite allegations to represent third parties and to request relief on behalf of those third parties not in front of the court. ""[N]either declaratory nor injunctive relief," we have said, "can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs."" *Trump v. CASA, Inc.*, 606 U.S. 831, 844, 145 S. Ct. 2540, 2552, 222 L. Ed. 2d 930 (2025) (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975))." It is an elementary principle that a court cannot adjudicate directly upon a person's right without having him either actually or constructively before it. This principle is fundamental." *Id.* (quoting *Gregory v. Stetson*, 133 U.S. 579, 586, 10 S.Ct. 422, 33 L.Ed. 792 (1890)). In fact, courts are reluctant to allow a litigant to assert a third party right, except if: "the plaintiff can demonstrate: (1) injury to the plaintiff, (2) a close relationship between the plaintiff and the third party that would cause plaintiff to be an effective advocate for the third party's rights, and (3) 'some hindrance to the third party's ability to protect his or her own interests." *Campbell v. Louisiana*, 523 U.S. 392, 397, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998). Here ,Plaintiff fails to satisfy all three prongs.

*First*, for the reasons stated above Plaintiff did not establish an injury in fact, nor a credible threat of injury. *Second*, Plaintiff did not allege in any way a close relationship with those third parties. Courts have historically allowed "[t]rustees bring suits to benefit their trusts; guardians ad litem bring suits to benefit their wards;… executors bring suit to benefit testator estates." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.,* 554 U.S. 269, 287, 128 S. Ct. 2531, 2543, 171 L. Ed. 2d 424 (2008). This is not the case, there is no close relationship between Plaintiff and those third parties, if not that they might possess a license plate frame, with no further specification of how those frames could be similar in any way. *Third,* Plaintiff has entirely failed to allege that these third parties face any hindrance in protecting their own interests. Accordingly, Plaintiff should not be permitted to assert the rights of third parties.

**IX.     THE COURT SHOULD ABSTAIN FROM GRANTING RELIEF DUE TO RECENT AMENDMENT/CLARIFICATION OF THE STATUTE BY THE FLORIDA LEGISLATURE/MOOTNESS.**

This lawsuit was filed on February 27, 2026. The First Amended Complaint was filed on April 28 2026. On April 21, 2026, the Governor of Florida Signed into law Chapter 2026-39, Laws of Florida. Chapter 2026-39, effective October 1, 2026, amends § 320.061, Fla. Stat. to implement the very changes Plaintiff seeks through this lawsuit. Ch. 2026-39, Section 9, in pertinent part reads as follows:

> **320.061 Unlawful to alter motor vehicle registration certificates, license plates, temporary license plates, mobile home stickers, or validation stickers or to obscure license plates; penalty**.— (1) A person may not alter the original appearance of a vehicle registration certificate, license plate, temporary license plate, mobile home sticker, or validation sticker issued for and assigned to a motor vehicle or mobile home, whether by mutilation, alteration, defacement, or change of color or in any other manner. A person may not apply or attach a substance, reflective matter, illuminated device, spray, coating, covering, or other material onto or around any license plate which interferes with the legibility, angular visibility, or detectability of ~~any feature or detail on~~ the license plate number or validation sticker or interferes with the ability to record ~~any feature or detail on~~ the license plate number or validation sticker. A person who knowingly violates this section commits a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.
>
> (2) The use of a license plate frame or decorative border around a license plate is not an offense under this section, provided that the frame or border does not obscure the visibility of the following:
>
>> (a) The alphanumeric designation or license plate number.
>> (b) The registration decal or validation sticker located in the upper right corner.

An Act Relating to transportation, 2026 Fla. Sess. Law Serv. Ch. 2026-39 (S.B. 488) (Fla. 2026) (strikethrough in original to denote language removed; underlining in original to denote language added) ("Ch. 2026-39 ").

This case concerns a policy decision that has already been made by the legislature. The Florida Legislature chose to retain the same statutory language from 2007 through the present, while also making a policy determination to amend the law so that enforcement is directed only at license plates with frames covering the alphanumeric characters or the decal, the exact relief that Plaintiff is seeking with this lawsuit. The exercise of jurisdiction to issue a declaratory judgment is discretionary. *See* 28 U.S.C. § 2201 ("[A]ny court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.") (emphasis added). This Court should exercise its discretion and, in light of the substantive arguments set forth above, decline to exercise jurisdiction over this claim. The issue presented is fundamentally a policy matter that is more appropriately – and has in fact already been – addressed by the Florida Legislature. *See City of Gainesville v. Fla. Power & Light Co.*, 488 F. Supp. 1258, 1283 (S.D. Fla. 1980) (holding that when a case raises a legal question closely tied to policy considerations, a court can abstain from deciding such issues).

Plaintiff lacks standing to pursue this claim for the reasons discussed above, as she has failed to establish a credible threat of injury, rendering the case unripe for adjudication. Accordingly, this Court should exercise prudence, avoid unnecessary expenditure of judicial resources, and prevent the parties from incurring substantial litigation costs in a case that will become moot before the Court could issue any decision or relief.

## I. CONCLUSION

For all of these reasons, Plaintiff's Complaint should be dismissed in its entirety. Plaintiff does not allege standing with respect to the City of West Miami. Plaintiff also fails to properly allege compliance with the notice requirement to the Florida Attorney General. Even if standing existed, Plaintiff fails to state a § 1983 /*Monell* claim. Additionally, her claims fail on the merits,

as § 320.061, Fla. Stat., is not unconstitutionally vague and provides constitutionally sufficient

notice and enforcement standards. Moreover, the relief Plaintiff seeks for third parties is improper

and beyond this Court's jurisdiction.

Respectfully submitted,

LEHTINEN SCHULTZ, PLLC
*Attorneys for City of West Miami, Florida*
1200 Brickell Avenue, Suite 507
Miami, Florida 33131
Telephone: 305-760-8544
Facsimile: 305-356-5720

By:  /s/ Claudio Riedi
Claudio Riedi, Esq.
DEXTER LEHTINEN, ESQ.
Florida Bar No. 265551
Email:  dlehtinen@aol.com
CLAUDIO RIEDI, ESQ.
Florida Bar No.: 984930
Email: criedi@Lehtinen-Schultz.com
Email:sdavis@Lehtinen-Schultz.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of May, 2026, I electronically filed the foregoing Notice of Appearance with the Clerk of the Court using the E-Filing Portal. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties that have registered with the CM/ECF E-Filing Portal.

By: Claudio Riedi
CLAUDIO RIEDI, ESQ.
Florida Bar No.: 984930

18