UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION


CASE NO.: 26-cv-21355-JAL


GISELA CASTILLA RODRIGUEZ,


     Plaintiff,

vs.


**ROSIE CORDERO-STUTZ**, *in her official*
*capacity as Sheriff of Miami-Dade County*, *Florida;*
**RICHARD DEL TORO**, *in his official capacity as*
* Sheriff of St. Lucie County, Florida;* **CITY OF**
**WEST MIAMI, FLORIDA; CITY OF MIAMI**
**BEACH, FLORIDA**; and **CITY OF NORTH**
**MIAMI BEACH, FLORIDA,**


     Defendants.

_____/


**DEFENDANT CITY OF MIAMI BEACH'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S PRELIMINARY INJUNCTION**
**AND INCORPORATED MEMORANDUM OF LAW**

Defendant, CITY OF MIAMI BEACH, FLORIDA (the "City"), by and through undersigned counsel, hereby files this Response in Opposition to Plaintiff's Motion for Preliminary Injunction (ECF No. 32) (the "Motion"), and states as follows:

## SUMMARY OF THE ARGUMENT

Paintiff seeks the extraordinary remedy of a federal preliminary injunction against the City of Miami Beach based not on any actual enforcement action directed at her, but on speculation that she might someday be cited under section 320.061, Florida Statutes. That request must fail.

Plaintiff has never been stopped, warned, cited, arrested, or otherwise subjected to enforcement by the City in connection with her plain white dealer-issued, removable license plate frame. *See* Pl. Declaration, Exhibit A (ECF No. 32-1). Yet she asks this Court to enjoin enforcement of a duly enacted state criminal statute based on a hypothetical future injury that is entirely avoidable: if Plaintiff wishes to eliminate any perceived risk, she need only remove the frame until Septmebr 30, 2026. The frame is secured by only two screws and can be removed at any time, within moments, and at no cost or burden.



1. Plaintiff's license plate frame. *See* Pl. Declaration, Exhibit A (ECF No. 32-1).

Plaintiff cannot satisfy any of the requirements for preliminary injunctive relief. She cannot show a substantial likelihood of success on the merits because, as set forth in the City's Motion to Dismiss (ECF. No. 36), she lacks standing, her facial vagueness challenge fails, and she cannot establish municipal liability under *Monell*. She likewise cannot establish irreparable harm, as her alleged injury rests entirely on speculation, and the only purported 'hardship' would consist of

1

removing the dealer-installed frame. The policy balance is also evident. She has never been arrested and she will avoid being arrested if she takes off the frame. This alone demonstrates that the minimal burden of complying with the statute is far outweighed by the public interest in maintaining the status quo.

Federal courts do not lightly enjoin enforcement of duly enacted state criminal statutes, particularly based on hypothetical future enforcement scenarios and in the absence of a clear constitutional violation. For all these reasons, the Motion should be denied.

## **FACTS**

Plaintiff brought this action under 42 U.S.C. § 1983 and the Declaratory Judgment Act challenging the constitutionality of section 320.061, Florida Statutes, as amended effective October 1, 2025. *See* Am. Compl. (ECF No. 27) ¶¶ 1–2.

Section 320.061 provides, in relevant part:

> [A] person may not apply or attach a substance, reflective matter, illuminated device, spray, coating, covering, or other material onto or around any license plate which interferes with the legibility, angular visibility, or detectability of any feature or detail on the license plate or interferes with the ability to record any feature or detail on the license plate.

§ 320.061(1), Fla. Stat.

Plaintiff alleges that her vehicle bears a standard dealer-issued decorative license plate frame that covers the words "Sunshine State" appearing at the bottom of the plate but does not obscure the alphanumeric plate identifier or registration decal. Am. Compl. ¶¶ 1, 17. Plaintiff's frame is a plain white standard dealer issued frame, not "a custom or aftermarket modification." *See* Plaintiff's Declaration, at ¶ 6 (ECF No. 32-1).

Plaintiff does not allege that the City has ever cited her, stopped her, warned her, arrested her, or otherwise enforced section 320.061 against her. Instead, Plaintiff relies principally on

generalized allegations regarding statewide enforcement activity, alleged citation data compiled by her counsel, and examples of enforcement activity by agencies other than the City. *See* Am. Compl. at ¶¶ 41–69; Declaration of Charles E. Whorton (ECF No. 32-2).

This lawsuit was filed on February 27, 2026, the First Amended Complaint was filed on April 28, 2026. On April 21, 2026, the Governor of Florida signed the bill into law and codified it in Chapter 2026-39, Laws of Florida. Chapter 2026-39, effective October 1, 2026, amends § 320.061, Fla. Stat. to implement the very changes Plaintiff seeks through this lawsuit. According to the Legislature's policy decision, the statute will apply only when the license plate number or validation sticker is obscured or otherwise illegible. Additionally, the Legislature explicitly approved the use of frames that do not cover any of these components of the license plate.

This statute has been in effect since 1953. The language specifically questioned by Plaintiff was added in 2007, when a violation of the statute was elevated to a second-degree misdemeanor. In 2010, the offense was reduced to a civil infraction, until October 2025, when the Legislature reinstated the misdemeanor penalty (the current classification, which will remain in place until September 30, 2026).

Plaintiff relies heavily on generalized citation data to suggest widespread arbitrary enforcement by various agencies. As to the City of Miami Beach, however, Plaintiff identifies only a single specific citation, Citation No. ANE5IWE, as purported evidence of unconstitutional enforcement. *See* Motion at 5, 12. But Plaintiff does not present the full factual context surrounding that incident. The cited individual was not issued that citation in isolation; rather, the stop also resulted in additional citations, including driving with a suspended license, failure to provide proof of insurance, and failure to update address information. *See* Exhibit 1 All Citations. Nor was the individual arrested in connection with the section 320.061 citation. *See* Exhibit 2 (Citation No.

3

ANE5IWE). Plaintiff's attempt to isolate that single citation and characterize it as evidence of arbitrary enforcement is therefore misleading. Further, the same individual had previously been cited on March 17 for failure to provide proof of insurance, further distinguishing that encounter from Plaintiff's own circumstances and undermining any attempt to analogize the incident to Plaintiff's purely speculative fear of enforcement. *See* Exhibit 3 (Driver's Citation History).

Plaintiff now seeks preliminary injunctive relief prohibiting enforcement of section 320.061 based on her contention that the statute is facially void for vagueness under the Fourteenth Amendment. *See* Motion at 19-20. In particular, Plaintiff requests that all Defendants be prohibited from enforcing the statute to its fullest extent and that they allow the use of license plate frames that do not obscure the alphanumeric designation or registration decal. *Id.*

The City has separately moved to dismiss Plaintiff's claims, both on jurisdictional and substantive grounds. (ECF No. 36).

**LEGAL STANDARD**

A temporary injunction "is an extraordinary and drastic remedy not to be granted unless the movant **clearly established** the burden of persuasion as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (emphasis added) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir.1998) (citing *Texas v. Seatrain Int'l, S.A.,* 518 F.2d 175, 179 (5th Cir.1975) (grant of preliminary injunction "is the exception rather than the rule," and plaintiff must clearly carry the burden of persuasion)).

When a preliminary injunction goes beyond the *status quo* and seeks to force one party to act, it becomes **a mandatory or affirmative injunction** and the **burden** placed on the moving party is **increased**, especially when the injunction is requested at the preliminary stages. *K.G. ex rel. Garrido v. Dudek*, 839 F. Supp. 2d 1254, 1260 (S.D. Fla. 2011) (emphasis added); *Powers v.*

*Sec'y, Fla. Dep't of Corrs.*, 691 F. App'x 581, 583 (11th Cir. 2017) (holding that mandatory preliminary relief, is particularly disfavored, and should not be issued unless the facts and the law clearly favor the moving party); *Oscar Ins. Co. of Fla. v. Blue Cross & Blue Shield of Fla., Inc.,* 360 F. Supp. 3d 1278, 1284 (M.D. Fla. 2019).

In actions between private individuals, injunctive relief is to be granted "only in a clear and plain case," but the bar is even higher when a private plaintiff seeks to enjoin the act of a governmental entity, as "government has traditionally been granted widest latitude in dispatch of its own internal affairs." *Rizzo v. Goode*, 423 U.S. 362, 378–79 (1976).

"A district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel*, 234 F.3d at 1176. Plaintiff thus carries the heightened burden of persuasion to establish ***all*** four elements; failure to establish any single prong is fatal, and injunctive relief must be denied. *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1178 (11th Cir. 2009).

Plaintiff fails to carry the heightened burden on the first, second, third and fourth elements, so the Court should deny its motion.

## **ARGUMENT**

### I. **PLAINTIFF LACKS STANDING TO OBTAIN PRELIMINARY INJUNCTIVE RELIEF AGAINST THE CITY**

Before the Court may consider the merits of Plaintiff's request for extraordinary mandatory relief, Plaintiff must establish Article III standing against the City. She cannot.

Standing is always "an indispensable part of the plaintiff's case." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Plaintiff must show (1) that it suffered an injury-in-fact that is (2) traceable to the defendant and that (3) can likely be redressed by a favorable ruling. *See Id.* at 560. "The first prong, an injury in fact, requires that the plaintiff face an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."" *Computer & Commc'ns Indus. Ass'n v. Uthmeier*, No. 4:24CV438-MW/MAF, 2025 WL 893403, at *2 (N.D. Fla. Mar. 13, 2025) (quoting *Lujan*, 504 U.S. at 560). This is the "irreducible constitutional minimum" required for standing under Article III of the Constitution. *Id.* "And **where a plaintiff moves for a preliminary injunction, the district court ... should normally evaluate standing 'under the heightened standard for evaluating a motion for summary judgment.'**" *Computer & Commc'ns Indus.,* No. 4:24CV438-MW/MAF, 2025 WL 893403, at *2 (quoting *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 255 (6th Cir. 2018) (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 912 (D.C. Cir. 2015)); *see also Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011). Thus, a plaintiff cannot "rest on such mere allegations as would be appropriate at the pleading stage []." *Id.* (citing *Cacchillo*, 638 F.3d at 404 (quoting *Lujan*, 504 U.S. at 561)) (internal alterations omitted); *see also Church of Scientology Flag Serv. Org. v. City of Clearwater*, 777 F.2d 598, 608 (11th Cir. 1985).

"Standing is not 'an ingenious academic exercise in the conceivable' ... [but] requires ... a factual showing of perceptible harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 499, 129 S. Ct. 1142, 1152, 173 L. Ed. 2d 1 (2009) (internal quotations omitted). In fact, the Supreme Court rejected a probabilistic foundation of standing. *See Computer & Commc'ns Indus.,* No. 4:24CV438-MW/MAF, 2025 WL 893403, at *4 (denying associational standing where the plaintiff failed to demonstrate that at least one member faced a concrete and imminent injury, and

rejecting the contention that standing for preliminary injunctive relief could rest solely on the fact that the challenged law targeted social media platforms and the association's membership included major entities to which the law would likely apply).

Here, Plaintiff fails to establish the threshold jurisdictional prerequisite of standing, much less the heightened showing required for preliminary injunctive relief. Plaintiff has not alleged a concrete and imminent injury; to the contrary, her own allegations undermine any claim of an immediate threat of enforcement. Plaintiff admits that she has continuously operated her vehicle with the same license plate frame she contends violates section 320.061, Florida Statutes, yet she does not allege that she has ever been cited, stopped, warned, arrested, or otherwise subjected to enforcement in connection with that conduct. That history strongly undercuts any assertion that a threat of prosecution is "credible," "imminent," or "certainly impending," and instead demonstrates, at most, a speculative fear of possible future enforcement. Such conjectural injury is insufficient to establish Article III standing.

Plaintiff also does not allege with specificity that she will drive within Miami Beach between now and September 30, 2026. Although she states that she travels throughout the State, including Miami beach, for her children's dance competitions, she identifies no upcoming event in the City, referring only to a June competition in Orange County. *See* Am. Compl. ¶ 21. Additionally, an internet search for upcoming dance competitions for teenagers reveals no events in Miami Beach scheduled between June 1 and September 30.

Miami Beach is a barrier island, not an area motorists pass through incidentally; entering the City generally requires an intentional decision to do so. Plaintiff does not identify any imminent or planned travel to the City that would make enforcement by City officers likely. Plaintiff's

allegations regarding her general driving habits in Miami-Dade County do not establish a concrete, imminent threat of enforcement by the City of Miami Beach.

Plaintiff also seeks relief that extends beyond her own circumstances. She requests an injunction that would benefit unidentified, similarly situated motorists statewide and would require multiple agencies to enforce the statute in a manner inconsistent with its plain language.

Yet Plaintiff does not attempt to satisfy the requirements for third-party standing, including any showing of a sufficiently close relationship with those third parties or any hindrance preventing them from asserting their own rights. As set forth more fully in the City's Motion to Dismiss, Plaintiff cannot bootstrap standing for absent third parties simply by requesting overbroad relief.

Accordingly, because Plaintiff has failed to establish standing as to her own claims, and independently failed to establish any basis for third-party standing, the Motion must be denied for lack of jurisdiction.

## II.    PLAINTIFF FAILED TO TIMELY COMPLY WITH FED. R. CIV P. 5.1[1]

When a party challenges the constitutionality of a state or federal statute, there are additional and specific service and certification requirements. *King v. Lumpkin*, No. 1:11-CV-0549-WSD, 2012 WL 12888676, at *5–6 (N.D. Ga. Feb. 13, 2012). Federal Rule of Civil Procedure Rule 5.1(a) requires that the party: file a notice of constitutional question and serve the notice on the Attorney General for the State of Florida. In addition to that the court must, under 28 U.S.C. § 2403, certify to the appropriate attorney general that a statute has been questioned. Fed. R. Civ P. 5.1 (c).

Plaintiff should have promptly provided notice to the Attorney General of the State of

---

[1] Reference is made to the City's Motion to Dismiss for an in depth analysis.

Florida by filing the notice of constitutional question and by serving it on the Attorney General. Plaintiff filed her original Complaint on February 27, 2026. Plaintiff only in her Preliminary Injunction, filed on May 8th, 2026, certifies compliance with these requirements. "A Rule 5.1 notice is timely if it is filed **as soon as practicable** after the constitutional question as first raised in actual reliance on the questioned statute. **Thirty days** is the benchmark for a Rule 5.1 notice."" *VIP Prods. LLC v. Jack Daniel's Props. Inc.*, No. CV-14-02057-PHX-SMM, 2024 WL 6966674, at *1 (D. Ariz. Apr. 10, 2024) (emphases added).

The notice, as certified by the Plaintiff, but no proof of which has been attached, was served on the Attorney General seventy-one days after the question of constitutionality was presented. This is not timely, and this Court should refrain from issuing any relief, in particular this mandatory preliminary injunction to allow the Attorney General to intervene if necessary. *Cf. King*, No. 1:11-CV-0549-WSD, 2012 WL 12888676, at *8 (holding that a stay of the proceedings was an adequate remedy to the failure to comply with Rule 5.1).

### III.   PLAINTIFF CANNOT ESTABLISH SHE IS ENTITLED TO PRELIMINARY MANDATORY INJUNCTIVE RELIEF
#### A.   PLAINTIFF CANNOT ESTABLISH A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

"[T]he most common failure" of motions seeking injunctive relief "is not showing a substantial likelihood of success on the merits." *ACLU of Fla.*, 557 F.3d at 1178 (collecting cases). "If plaintiff cannot "establish a likelihood of success on the merits," this Court "need not consider the remaining conditions prerequisite to injunctive relief."" *Fla. Decides Healthcare, Inc. v. Byrd*, 790 F. Supp. 3d 1335, 1345 (N.D. Fla. 2025) (quoting *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002).

### i.   **Plaintiff Lacks Standing**

As fully set forth above and in the City's Motion to Dismiss, Plaintiff lacks standing to bring his preliminary injunction, as she lacks standing to bring this lawsuit.[2]

Plaintiff asks this Court to infer imminent injury from generalized allegations that some law enforcement agencies have issued citations to unidentified third parties statewide. Plaintiff herself has never been cited, warned, stopped, arrested or ticketed under section 320.061, Fla. Stat. That is insufficient also to establish a credible threat of prosecution, as required under the law. Plaintiff's allegations regarding her general driving habits in Miami-Dade County do not establish a concrete, imminent threat of enforcement by the City of Miami Beach.

Indeed, Plaintiff also lacks standing to bring this preliminary injunction that would force the City to enforce the current version of the statute in a manner not consistent with the language of the statute itself and towards all drivers. As stated in the City's Motion to dismiss, Plaintiff fails to satisfy the requirements to establish third party standing. *Cf. Campbell v. Louisiana*, 523 U.S. 392, 397, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998).

Plaintiff fails to establish standing to bring this lawsuit, rendering her likelihood of success on the merits nonexistent.

### ii.   **Plaintiff Has Not Demonstrated a Basis for Municipal Liability Under** ***Monell***[3]

Even setting aside Plaintiff's jurisdictional defects, her request for preliminary relief independently fails because she has not established a likelihood of success on her claims against the City as a municipal defendant.

---

[2] Reference is made to the arguments set forth by the City in its Motion to Dismiss, which provide an in-depth analysis that, for the purposes of this Response, is necessarily abbreviated.

[3] Reference is made to the City's Motion to Dismiss for a more complete analysis of the arguments presented here.

It is well-settled that a municipality, like the City, may not be held vicariously liable for the acts of its employees based on respondeat superior under Section 1983. Plaintiff must allege facts demonstrating she suffered a deprivation of her rights pursuant to a policy or custom authorized by a City final policymaker, which was the moving force behind the deprivation. *See Monell*, 436 U.S. at 694.

Municipal liability is plainly part of the likelihood-of-success-on-the-merits inquiry at the preliminary-injunction stage. *Swain v. Junior*, 961 F.3d 1276 (11th Cir. 2020)(citing *Church v. City of Huntsville*, 30 F.3d 1332, 1347 (11th Cir. 1994) ("the plaintiffs have failed to establish the existence of a municipal policy or a pervasive practice that could serve as a predicate to municipal liability under section 1983, and therefore, they have not shown a substantial likelihood of success on the merits."). The "[r]equirement that, in order for civil rights plaintiffs to successfully sue municipal entity under § 1983, they must show that their injury was caused by [a] municipal policy, custom, usage, or practice is **equally applicable**, irrespective of whether the remedy sought is money damages or prospective relief such as injunction or declaratory judgment." *Los Angeles Cnty., Cal. v. Humphries,* 562 U.S. 29, 131 S. Ct. 447, 178 L. Ed. 2d 460 (2010) (emphasis added).

Plaintiff fails to satisfy these requirements.

### 1. Plaintiff did not Establish a Constitutional Violation

Plaintiff's *Monell* claim will fail at the outset because she has not alleged any constitutional violation. In fact, she has never been warned, arrested, cited, ticketed by the City for driving with her frame.

### 2. Plaintiff Identifies No Official Municipal Policy, Pattern or Custom Directing Unconstitutional Enforcement

Plaintiff does not identify any City ordinance, written policy, training directive, official enforcement memorandum, or policymaker instruction directing officers to enforce section

11

320.061 in an unconstitutional manner. There is no allegation that the City adopted a policy instructing officers to cite motorists whose conduct plainly falls outside the statutory prohibition. Plaintiff relies also on the assertion that City officers issued citations under section 320.061, Fla. Stat., and makes reference to two specific incidents, both of which do not involve the City. However, citation volume, isolated incidents, even multiple incidents, are insufficient absent evidence of a pattern so obvious and entrenched that policymakers can be said to have adopted it. *Cf. Brooks v. Scheib*, 813 F.2d 1191 (11th Cir. 1987) (holding that an unofficial custom or practice be shown through **pleaded facts** demonstrating prior investigated incidents with findings of wrongdoing, as uninvestigated or unaddressed complaints are insufficient. Conclusory assertions, devoid of ultimate facts, do not suffice to establish an unofficial custom or practice) (emphasis added). Plaintiff's reliance on raw citation numbers says nothing about: the underlying facts of each citation; whether the cited conduct actually violated the statute; whether officers exercised lawful discretion based on case-specific circumstances; whether any policymaker reviewed or approved those actions; or whether any alleged constitutional violation occurred at all. Bare citation counts are not municipal policy, nor widespread practice or pattern.

In fact, Plaintiff relies on Citation No. ANE5IWE issued by the City. Plaintiff cannot meet that burden by pointing to a single factually distinct traffic stop involving a motorist who was not cited solely under section 320.061, but who was also stopped for and cited in connection with multiple unrelated traffic violations, including driving with a suspended license, failure to update address information, and failure to provide proof of insurance. *See* Exhibit 1. The circumstances of that encounter plainly reflect an individualized enforcement event, not evidence of any municipal policy or entrenched unconstitutional practice.

### 3.   Plaintiff Does Not Identify a Final Policymaker

Under *Monell* a plaintiff must demonstrate that the custom or practice was effectuated "through the repeated acts of a final policymaker for the [municipality]." *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003). Plaintiff does not identify any City policymaker who allegedly promulgated such a policy. This absence is dispositive.

Because Plaintiff fails to establish all the required elements under *Monell*, she cannot demonstrate a substantial likelihood of success against the City under 42 U.S.C. § 1983.

### iii.   Plaintiff's Facial Void-For-Vagueness Challenge Fails[4]

Even if Plaintiff could overcome the threshold defects discussed above, her Motion fails substantively because she cannot demonstrate a substantial likelihood of success on the merits of her constitutional challenge. Plaintiff seeks extraordinary preliminary relief based on a facial challenge to a duly enacted criminal statute. A facial challenge asserts that a law "***always*** operates unconstitutionally," *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009) (emphasis in original), *United States v. Salerno*, 481 U.S. 739, 745 (1987) (holding that a law is facially unconstitutional **only if "no set of circumstances exists"** under which the law would be valid) (emphasis added), and will succeed only if the law "could ***never*** be applied in a constitutional manner." *DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1262 (11th Cir. 2007) (emphasis added). A facial challenge does not require application to a particular set of facts. *Harris*, 564 F.3d at 1308. "The fact that [a legislative act] might operate unconstitutionally under some conceivable set of circumstances is **insufficient** to render it wholly invalid…." *Id.* (emphasis added). This "heavy burden" makes such an attack "the most difficult challenge to mount successfully" against an enactment. *Id.* Plaintiff cannot meet that standard.

---

[4] Reference is made to the City's Motion to Dismiss for a more in-depth analysis.

There is no requirement, however, that statutes define every factual situation that may arise. *Kolender v. Lawson*, 461 U.S. 352, 357–58, 103 S. Ct. 1855, 1858, 75 L. Ed. 2d 903 (1983). But as long as it can be applied constitutionally to one instance, then a facial constitutionality challenge fails. *Cf. DA Mortg., Inc.*, 486 F.3d at 1262. Indeed, the current version of section 320.061, Fla Stat. unquestionably has plainly constitutional applications.

For example, the statute clearly reaches conduct such as applying opaque material that obscures the alphanumeric identifier (unquestionably a feature); attaching a device that blocks the registration decal; applying any material that would impair the law enforcement possibility of identifying the issuing state of the license plate. At minimum, those applications fall comfortably within the statute's core prohibition. That fact, by itself, forecloses a conclusion that the statute is unconstitutionally vague.

Plaintiff's argument that purported differences in enforcement across jurisdictions demonstrate unconstitutional vagueness, overstates both the law and the record. Section 320.061, Fla. Stat. does provide sufficient guidance to law enforcement agencies. *Cf. Kolender*, 461 U.S. at 357–58. Differences in enforcement discretion do not establish unconstitutional vagueness. Indeed, virtually every law involving officer judgment permits some variation in enforcement without becoming constitutionally defective.

Statutory history further undermines Plaintiff's attempt to portray the 2026 amendment as a legislative concession that section 320.061 was constitutionally defective. The statute itself has existed in some form since 1953. The specific language Plaintiff now challenges, prohibiting interference with "any feature or detail" of a license plate, was introduced in 2007, when the Legislature amended the statute and classified violations as criminal misdemeanors. That same operative language remained in effect until 2010, when the Legislature modified only the penalty

14

structure, reclassifying violations as civil infractions rather than criminal offenses. From 2010 until October 2025, the operative language Plaintiff challenges remained unchanged while the violation was treated as a noncriminal infraction. In October 2025, the Legislature again altered only the penalty, restoring misdemeanor treatment without materially changing the challenged statutory language. Against that backdrop, Plaintiff cannot plausibly argue that the 2026 amendment reflects some newfound legislative recognition of constitutional infirmity in language that has existed for nearly two decades, and within a statutory framework that has existed for many years.

Moreover, the Legislature's decision to make the amendment prospective rather than immediately effective undermines Plaintiff's theory of urgent constitutional emergency. Had the Legislature concluded that immediate suspension of the existing statute was constitutionally necessary, it could have made the amendment effective immediately. It did not, it was a mere policy decision. Plaintiff's attempt to characterize the amendment as a formal concession of constitutional invalidity is therefore misplaced.

For all the foregoing reasons Plaintiff did not meet her heavy burden to show that she is likely to succeed on the merits.

### B.  PLAINTIFF CANNOT ESTABLISH IRREPARABLE HARM

To establish an irreparable injury, the plaintiff must show that he will suffer an injury that cannot be adequately compensated if, at some later point in time, he prevails on the merits. *United States v. Jefferson County,* 720 F.2d 1511, 1520 (11th Cir.1983). Irreparable harm is the "*sine qua non* of injunctive relief." *Siegel,* 234 F.3d at 1176 (quoting *Ne. Fla. Chapter of Ass'n of Gen. Contracts v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)). "Even where the movant satisfies all the remaining factors necessary to obtain injunctive relief, the failure to prove

irreparable harm renders preliminary injunctive relief improper." *Oscar Ins. Co. of Fla.,* 360 F. Supp. 3d at 1284 (quoting *City of Jacksonville*, 896 F.2d at 1285).

Plaintiff's Motion independently fails because she cannot demonstrate the imminent, irreparable injury required to justify extraordinary equitable relief. As discussed above, Plaintiff has never been cited, stopped, warned, arrested, or prosecuted under section 320.061 by the City.

Her asserted injury depends entirely on speculation that she will drive into the City, a City officer will observe her vehicle, the officer will conclude her plate frame violates the statute, the officer will elect to initiate enforcement; and Plaintiff will thereby suffer criminal process-related consequences. That attenuated chain of contingencies does not constitute imminent irreparable harm.

Additionally, Plaintiff's reliance on *Elrod v. Burns*, 427 U.S. 347 (1976) is misplaced. *Elrod* concerns First Amendment harms. In that case public employees who alleged that they were discharged or threatened with discharge solely because of their partisan political affiliation or non-affiliation stated a valid claim for deprivation of constitutional rights secured by the First and Fourteenth Amendments. *Id.* at 396.

This case bears no resemblance to *Elrod*. Plaintiff has not asserted any First Amendment claim whatsoever, but rather a due process vagueness challenge. Nor has Plaintiff suffered any actual deprivation remotely comparable to termination of employment or a direct threat thereof. By Plaintiff's own allegations, she has continued operating her vehicle with the same license plate frame for an extended period without ever being stopped, warned, cited, arrested, or otherwise subjected to enforcement.

Moreover, the conduct at issue does not implicate political, expressive or associational rights akin to those protected in *Elrod*. Plaintiff's license plate frame is merely a standard plain

white dealership-issued frame that was installed by the automobile dealer, not a message created, selected, or modified by Plaintiff to convey any viewpoint or association. *See* Pl.'s Declaration at ¶ 6. Plaintiff does not allege any affiliation with the dealership, nor any intent to communicate a protected message through the frame. Under these circumstances, *Elrod*'s presumption of irreparable harm arising from actual infringement of core First Amendment freedoms has no application here.

Further, Plaintiff's alleged injury is readily avoidable. Plaintiff contends her concern arises from her continued use of a particular decorative license plate frame. If Plaintiff genuinely believed imminent criminal exposure existed, she could eliminate the alleged risk immediately by removing or replacing the frame pending adjudication. An easily avoidable, contingent injury does not constitute irreparable harm warranting extraordinary equitable intervention. In particular, there is no cost of complying with the statute, either economically or in terms of burden. Compliance would simply require removing the frame by unscrewing two screws, at most requiring a screwdriver. Because Plaintiff cannot establish actual and imminent irreparable harm, the Motion must be denied.

### C. THE BALANCE OF HARMS AND PUBLIC INTEREST FAVOR DENIAL OF PRELIMINARY MANDATORY RELIEF

The remaining equitable factors likewise weigh against Plaintiff. The third and fourth prongs, namely the balance-of-harms and public-interest inquiries "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435, 129 S. Ct. 1749, 1762, 173 L. Ed. 2d 550 (2009). Both factors favor denial here.

Section 320.061 is a duly enacted Florida statute. Federal courts do not lightly enjoin enforcement of presumptively valid state criminal laws. The public possesses a significant interest in orderly enforcement of laws enacted through the legislative process, particularly where no clear

constitutional violation has been established. Plaintiff's requested injunction would interfere with ordinary law enforcement functions and judicially alter the effective scope of a state criminal statute before full adjudication on the merits. She seeks anticipatory federal intervention based on speculative future harm and generalized disagreement with how a statute may be interpreted.

The public interest also disfavors Plaintiff's requested remedy because it would require judicial acceleration of legislative change. Plaintiff effectively asks this Court to impose the operative terms of a future statutory amendment before the Legislature's chosen effective date. That request raises serious separation-of-powers concerns. Whatever policy judgments informed the Legislature's decision to amend section 320.061 prospectively, those judgments belong to the legislative branch, not this Court. The public interest is not served by judicial substitution of a different statutory regime at the preliminary injunction stage.

Even if Plaintiff had shown constitutional infirmity (which she has not) the remedy she seeks is improper. Plaintiff asks this Court to effectively rewrite section 320.061 until September 30, 2026, by judicially imposing the substantive contours of a future legislative amendment before that amendment takes effect. That is not preservation of the status quo. Plaintiff's requested "carve-out" would require this Court to replace the operative statutory text with a narrower judicial construction that the Legislature chose not to make effective until a future date. That is a mandatory preliminary injunction that is disfavored at the preliminary stages and that would require that Plaintiff meet an even higher burden, which she has not.

Conclusively, the balance of harms strongly favors the public interest. Agencies that are not parties to this lawsuit should not be left uncertain as to whether a preliminary injunction would apply to them, creating widespread confusion in enforcement, precisely the situation Plaintiff claims to seek to avoid by filing this action and requesting preliminary relief. This is especially

true where, on the other side of the scale, Plaintiff's asserted hardship consists only of removing a white plain dealer-issued frame, with which she claims no affiliation, by unscrewing two screws, and reinstalling it, if she wishes, after October 1, 2026.

The balance of harms and the public interest weigh strongly against the issuance of such relief; accordingly, the preliminary injunction should be denied.

## IV. IN THE ALTERNATIVE, ANY PRELIMINARY RELIEF MUST BE NARROWLY TAILORED AND CONDITIONED ON APPROPRIATE SECURITY

Should the Court determine that some form of preliminary relief is warranted, which the City respectfully submits it should not, any relief must be narrowly tailored to Plaintiff's specific alleged injury. Plaintiff lacks standing to seek sweeping relief affecting unidentified third parties or generalized statewide enforcement. "It is an elementary principle that a court cannot adjudicate directly upon a person's right without having him either actually or constructively before it. This principle is fundamental." *Trump v. CASA, Inc.*, 606 U.S. 831, 844, 145 S. Ct. 2540, 2552, 222 L. Ed. 2d 930 (2025). Any injunction must be limited to the minimum relief necessary to redress Plaintiff's own alleged "injury."

### CONCLUSION

Plaintiff seeks extraordinary federal injunctive relief based on speculative future injury, a deficient constitutional theory, and an improper request that this Court effectively rewrite Florida law before the Legislature's chosen effective date. She has not demonstrated a likelihood of success on the merits. She has not shown irreparable harm. And the balance of equities and public interest weigh decisively against preliminary intervention. Plaintiff failed to meet the heightened burden of persuasion required under the law when a mandatory injunction is sought against a governmental entity.

19

For all of these reasons, Defendant CITY OF MIAMI BEACH respectfully requests that this Court deny Plaintiff's Motion for Preliminary Injunction in its entirety, together with such further relief as the Court deems just and proper.

Respectfully submitted,


RICARDO DOPICO, CITY ATTORNEY
CITY OF MIAMI BEACH
1700 CONVENTION CENTER DRIVE
4th FLOOR-LEGAL DEPARTMENT
MIAMI BEACH, FLORIDA 33139
TEL: (305) 673-7470
FAX: (305) 673-7002

By: /s/*Henry J. Hunnefeld*

HENRY J. HUNNEFELD
Deputy City Attorney
henryhunnefeld@miamibeachfl.gov
Florida Bar No. 343811
CARLA POMPA
Litigation Fellow
carlapompa@miamibeachfl.gov
Florida Bar No. 1069945

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22th day of May, 2026, I electronically filed the foregoing *Response to Preliminary Injunction* with the Clerk of the Court using CM/ECF, which in turn will automatically generate a Notice of Electronic Filing to all parties in the case who are registered users of the CM/ECF system.


By: /s/*Henry J. Hunnefeld*
HENRY J. HUNNEFELD


21